IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIPLA LTD. and CIPLA USA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-044 (LPS) |
| | ) | |
| AMGEN INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

## AMGEN'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CIPLA LTD. AND CIPLA USA INC.'S COMPLAINT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Adam H. Offenhartz
Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

M. Sean Royall
Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 571-2900

Original Filing Date: February 14, 2019
Redacted Filing Date: March 13, 2019

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II.   SUMMARY OF ARGUMENT ...................................................................................... 1

III.  STATEMENT OF FACTS ............................................................................................. 2

IV.   ARGUMENT ................................................................................................................. 4

   A.   Cipla's Antitrust Claims Fail Due to Lack of Standing and Antitrust
      Injury ............................................................................................................................. 5

   B.   Cipla Has Not Adequately Pled a Claim Under Section 1 of the Sherman
      Act ................................................................................................................................. 9

      1.   Cipla Has Not Adequately Pled That the Amgen-Teva Settlement
         Agreement Violates the Antitrust Laws. ........................................................... 9

      2.   A Unilateral Pre-Litigation Letter Is Not Actionable Under Sherman
         Act Section 1. .................................................................................................. 11

      3.   Cipla Has Not Adequately Pled a Relevant Market. ................................. 12

   C.   Cipla Has Not Pled Any Cause of Action Based on Patent Misuse. .................................. 14

   D.   Cipla's California State Law Claims Fail for the Same Reasons as the
      Federal Claims. ........................................................................................................... 16

   E.   Cipla's Delaware Contract Claim Should Be Dismissed. ................................................ 18

V.   CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2660 Woodley Rd. Joint Venture v ITT Sheraton Corp.*,
369 F.3d 732 (3d Cir. 2004).................................................................................9

*A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.*,
263 F.3d 239 (3d Cir. 2001)...............................................................................12

*Am. Sales Co. v. AstraZeneca AB*,
2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011)......................................................13

*Amgen Inc. v. Amneal Pharm. LLC*,
328 F. Supp. 3d 373 (D. Del. 2018).....................................................................3

*Animal Science Prods, Inc. v. China Minmetals Corp.*,
34 F. Supp. 3d 465 (D.N.J. 2014) ........................................................................8

*Aryeh v. Canon Business Solutions, Inc.*,
55 Cal. 4th 1185 (2013) ....................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................4

*Assoc. Gen. Contractors of Ca., Inc. v. Ca. State Council of Carpenters*,
459 U.S. 519 (1983)........................................................................................8, 9

*Atlantic Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990)............................................................................................6

*B. Braun Med. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997).....................................................................14, 15

*B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*,
909 F. Supp. 162 (S.D.N.Y. 1995).....................................................................13

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007)................................................................................4

*Barton & Pittinos*,
118 F.3d at 181 ..................................................................................................8

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
813 F. Supp. 2d 569 (S.D.N.Y. 2011).................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................4

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)................................................................................13

*Brulotte v. Thys Co.*,
    379 U.S. 29 (1964)..................................................................................15

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)..............................................................................5, 6

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011)..................................................................12

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988)..............................................................................16

*Cel–Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (Cal. 1999)..............................................................17, 18

*City of Pittsburgh v W. Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998)....................................................................5

*Click Corp. of Am. v. Redco Foods, Inc.*,
    424 F. Supp. 2d 753 (D.N.J. 2006).......................................................19

*Cordance Corp. v. Amazon.com, Inc.*,
    727 F. Supp. 2d 310 (D. Del. 2010).....................................................14

*Dang v. San Francisco Forty Niners*,
    964 F. Supp. 2d 1097 (N.D. Cal. 2013)............................................17, 18

*FTC v. Actavis, Inc.*,
    570 U.S. 136 (2013)...................................................................... 
*passim*

*Gatt Commc'ns, Inc. v. PMS Assocs. LLC*,
    711 F.3d 68 (2d Cir. 2013)......................................................................7

*Goldman v. Gen. Accident Ins. Co. of Am.*,
    2007 WL 2781935 (D.N.J. May 24, 2007)...........................................11

*Hedges v. Musco*,
    204 F.3d 109 (3d Cir. 2000)..................................................................16

*Hemstreet v. Spiegel*,
    851 F.2d 348 (Fed. Cir. 1988)...............................................................10

*Hospira, Inc. v. Sandoz Inc.*,
    2014 WL 794589 (D.N.J. Feb. 27, 2014)........................................11, 16

*In re Cipro Cases I & II*,
    61 Cal. 4th 116 (2015) ...................................................................................................17

*In re Lamictal Direct Purchaser Antitrust Litig.*,
    18 F. Supp. 3d 560 (D.N.J. 2014), *rev'd on other grounds, sub nom. King*
    *Drug Co. of Florence, Inc. v. Smithkline Beecham Corp.*, 791 F.3d 388 (3d
    Cir. 2015) ...............................................................................................................10, 11

*In re Lipitor Antitrust Litig.*,
    868 F.3d 231 (3d Cir. 2017)...........................................................................................10

*In re Wellbutrin XL Antitrust Litig.*,
    133 F. Supp. 3d 734 (E.D. Pa. 2015) ............................................................................10

*Kaiser Found. v. Abbott Labs.*,
    2009 WL 3877513 (C.D. Cal. Oct. 8, 2009)..................................................................14

*Knowles Elec., LLC v. Am. Audio Component Inc.*,
    2017 WL 3620808 (N.D. Ill. Aug. 23, 2017) ...............................................................10

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
    844 F. Supp. 2d 519 (D. Del. 2012)................................................................................3

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).....................................................................................................7, 8

*Mylan Pharm. v. Warner Chilcott Pub. Ltd. Co.*,
    838 F.3d 421 (3d Cir. 2016)...........................................................................................13

*Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*,
    795 F.3d 1124 (9th Cir. 2015) .......................................................................................17

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)..................................................................................1, 3, 7

*Phila. Taxi Ass'n., Inc v Uber Tech., Inc.*,
    886 F.3d 332 (3d Cir. 2018)..............................................................................................5

*Princo Corp. v. Int'l Trade Comm'n*,
    616 F.3d 1318 (Fed. Cir. 2010)......................................................................................15

*Rochester Drug Co-op., Inc. v. Braintree Labs.*,
    712 F. Supp. 2d 308 (D. Del. 2010)...............................................................................12

*Schuylkill Energy Resources, Inc. v Pa. Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997)..............................................................................................6

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ................................................................................12

*Stearns v. Select Comfort Retail Corp.*,
  No. 08–2746, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ....................................18

*Sweet Street Deserts, Inc. v. Chudleigh's Ltd.*,
  2013 WL 1389760 (E.D. Pa. Apr. 4, 2013) ...........................................................12

*Tunis Bros. Co. v. Ford Motor Co.*,
  952 F.2d 715 (3d Cir. 1991).................................................................................13

*Turner v. J.P. Morgan Chase & Co.*,
  No. 14-CV-7148, 2015 WL 12826480 (D.N.J. Jan. 23, 2015)..................................5

*United States v. Brown Univ.*,
  5 F.3d 658 (3d Cir. 1993) ...................................................................................12

*United States v. CIBA Geigy Corp.*,
  508 F. Supp. 1118 (D.N.J. 1976) .........................................................................14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969)............................................................................................15

**Rules and Statutes**

28 U.S.C. §§ 1331 and 1337 .........................................................................................16

Federal R. Civ. P. 12(b)(6)......................................................................................1, 4, 19

## I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Cipla Ltd. and Cipla USA, Inc. (collectively, "Cipla") filed their complaint on January 8, 2019. D.I. 2. Amgen hereby moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) because Cipla has failed to state a claim upon which relief can be granted.

## II.     SUMMARY OF ARGUMENT

Cipla's supposed antitrust claims (under the Sherman Act and California law) are merely contract claims in disguise. Cipla has no standing to assert antitrust claims because any alleged injuries it suffered derive from the operation of its contract with Amgen, not from any reduction in competition. Cipla bases its antitrust claims on the reduction in competition it alleges took place between two of Cipla's competitors—Amgen and Teva—when Teva exited the market pursuant to the Amgen-Teva patent settlement agreement. But Cipla does not allege injuries stemming from allegedly "anticompetitive effects." Indeed, a competitor like Cipla would typically *benefit* when its competitors compete less aggressively.

Cipla's claimed injury here—its inability to enter the market—instead results from a provision in its contract (settlement agreement) with Amgen. █████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Accordingly, Cipla's only alleged injury is a contractual injury, not an "antitrust injury." Binding precedent from the Supreme Court holds that antitrust claims should be dismissed where the plaintiff has not pled "antitrust injury," which is a prerequisite to antitrust standing.

Moreover, even if Cipla did have standing to assert its antitrust claims, Cipla fails to state a claim under either federal or California law. Cipla's antitrust challenge to the Amgen-Teva patent settlement fails because the Supreme Court's decision in *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013),

blesses settlements of patent infringement litigation that involve an earlier entry date and no "reverse payment" from the patentee to the alleged infringer. Patentees are not prohibited from entering into otherwise lawful settlements of patent litigation merely because the generic manufacturer won in the district court and the case is on appeal, and no authority suggests that it would be patent misuse to do so. Moreover, Amgen's statement at the end of a letter to Cipla that it would enforce its legal rights if Cipla breached its settlement agreement cannot be actionable because unilateral conduct cannot be challenged under Section 1 of the Sherman Act and because it is protected by the *Noerr-Pennington* doctrine. Finally, Cipla's bare-bones complaint fails to plead a plausible "relevant market."

Finally, Cipla's declaratory relief claim—in which Cipla seeks a declaration that it has an active license to Amgen's United States Patent No. 9,375,405 (the "'405 patent") under its settlement agreement with Amgen—fails as a matter of law because Cipla does not plead the facts necessary to establish that the license conditions in the agreement are satisfied.

Accordingly, Cipla's complaint should be dismissed in its entirety.

## III.    STATEMENT OF FACTS

Amgen is the assignee of the '405 patent, which claims pharmaceutical compositions that include the active ingredient cinacalcet hydrochloride, along with inactive ingredients, for the treatment of various diseases, including hyperparathyroidism and hypercalcemia. Cinacalcet hydrochloride is the active ingredient in Sensipar®, a medication marketed and sold by Amgen that is indicated for the treatment of secondary hyperparathyroidism and hypercalcemia in certain patients. The FDA's official publication of approved drugs (the "Orange Book") lists the '405 patent in connection with Sensipar®. Beginning in 2016, Cipla and other generic drug manufacturers (including Teva's subsidiary, Watson) filed Abbreviated New Drug Applications ("ANDAs") seeking approval to manufacture and sell generic cinacalcet hydrochloride products. Amgen sued each of those manufacturers for infringement of the '405 patent.

On February 26, 2018, Amgen and Cipla entered into a settlement agreement resolving Amgen's claims against Cipla.  As is common in patent infringement litigation between branded and generic pharmaceutical manufacturers, the parties settled on a "compromise" entry date permitting Cipla to enter the market prior to expiration of the patent at issue. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

On July 27, 2018, the District Court issued a ruling finding that the '405 patent was infringed by one defendant, but was not infringed by three generic manufacturers—Amneal Pharmaceuticals LLC, Piramal Healthcare UK Ltd., and Watson Laboratories, Inc. (a division of Teva, hereinafter referred to as "Teva").  *Amgen Inc. v. Amneal Pharm. LLC*, 328 F. Supp. 3d 373, 399 (D. Del. 2018).

---

[1]  The Amgen-Cipla agreement is attached as Exhibit A to the Declaration of Ashley E. Johnson accompanying this motion.  The Court may consider the Amgen-Cipla agreement in deciding Amgen's motion to dismiss because it is "undisputedly authentic," "incorporated into the complaint by reference," and Cipla's claims are "based on" it.  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 524 (D. Del. 2012).

Amgen has appealed that judgment.  While that appeal is pending, any marketing of a generic product by Amneal, Piramal, or Teva would be considered an "at risk" launch, because if Amgen wins the appeal, the sales made by the generic manufacturer during the pendency of the appeal would be infringing and entitle Amgen to damages.

On December 27, 2018, Teva commenced an at-risk launch and began selling generic cinacalcet hydrochloride without authorization from Amgen.  Compl. ¶ 10.  Six days later, on January 2, 2019, Amgen and Teva entered into a settlement agreement resolving Amgen's still-pending infringement claims against Teva.  *Id.* ¶ 15.  Pursuant to that agreement, Teva ceased sales of generic cinacalcet hydrochloride.  ████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████  Amgen-Cipla Agreement (Ex. A)█

████████████████████████████████████████████████████

████████████████████████████████████████████

On January 8, 2019, Cipla filed this suit, alleging federal and California antitrust claims based on the Amgen-Teva agreement, and seeking a declaratory judgment that it is now licensed under the Amgen-Cipla agreement (allegedly due to Teva's December 27 launch).

## IV.    ARGUMENT

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions

disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Additionally, even if plausibly pled, a complaint must be dismissed if the facts do not state a "legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### A.     Cipla's Antitrust Claims Fail Due to Lack of Standing and Antitrust Injury.

Count 2 of Cipla's complaint is essentially a contract claim in the guise of a federal antitrust claim. Cipla's concern here is *not* any limitation on competition resulting from Amgen and Teva's settlement, or the supposedly higher prices for consumers that resulted. Instead, Cipla alleges harm as a result of how these market events impact *the provisions of Cipla's contract with Amgen*. Compl. ¶¶ 23–29. In particular, Cipla seeks to avoid a provision of its contract with Amgen █

█████████████████████████████████████████████████████████████████████████████

Cipla thus asserts a purely contractual interest; it does not assert that it has any direct competitive interest in Teva entering the market. Quite the contrary—the ideal situation for Cipla would be if Teva and other generics stayed out of the market so Cipla could enter alone.

It is well established that this type of "contractual harm" does not entitle a party like Cipla—however real its "injury"—to assert an antitrust claim. Antitrust standing is a prudential doctrine that "is distinct from Article III standing" and is a "threshold requirement" for an antitrust plaintiff. *Phila. Taxi Ass'n., Inc v Uber Tech., Inc.*, 886 F.3d 332, 343 (3d Cir. 2018). The antitrust standing doctrine ensures that the special remedies provided to antitrust plaintiffs, including treble damages and joint and several liability, are not extended to parties who suffer other types of injuries from the challenged conduct that do not derive directly from harm to competition. *See, e.g.*, *City of Pittsburgh v W. Penn Power Co.*, 147 F.3d 256, 264 (3d Cir. 1998).

To satisfy this "threshold" antitrust standing requirement, a private plaintiff asserting antitrust claims "must prove antitrust injury, which is to say injury of the type the antitrust laws were

intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a *competition-reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 344 (1990) (emphasis added). Other types of injuries—even those that result directly from the alleged antitrust violation—do not constitute "antitrust injury."

Cipla's complaint fails to plead antitrust injury arising from the Amgen-Teva agreement because Cipla pleads no injury that results from any "competition-reducing" aspect of that agreement. *Id.* Cipla alleges that the Amgen-Teva settlement agreement harmed it only because Cipla seeks to claim a limited contractual right to launch its generic product early at-risk, but the Amgen-Teva settlement agreement prevented it from invoking that provision. Cipla's supposed "injury" thus flows not from the effect of Teva's exit on *competition* in the market, but from Cipla's contractual agreement ███████████████████████████████████████████████████ ████████████████████████████████████ That is not antitrust injury. *Brunswick*, 429 U.S. 487–88.

The absence or presence of competition in the market is not, in and of itself, what matters to Cipla here; Cipla stands to benefit competitively by the exit of one of its competitors. Indeed, if Cipla were permitted to enter the market now by reason of its contract with Amgen, Cipla would have *benefited* from the Amgen-Teva settlement, which resulted in Teva's exit. To the extent that Teva's exit injured Cipla here, it is only because of the interpretation and operation of the contractual language that Cipla and Amgen selected for their contract. That is not an injury that derives from a lack of competition or an injury "of the type the antitrust laws were designed to prevent." *Schuylkill Energy Resources, Inc. v Pa. Power & Light Co.*, 113 F.3d 405, 418 (3d Cir. 1997); *see also, e.g.,*

*Gatt Commc'ns, Inc. v. PMS Assocs. LLC*, 711 F.3d 68, 77 (2d Cir. 2013) (termination of plaintiff's dealership may have resulted from violation of the antitrust laws, but plaintiff lacked antitrust injury because its injuries did not flow from anticompetitive consequences of the antitrust violation, i.e., higher consumer prices).

The fact pattern of this case—a party challenging an agreement that supposedly reduced competition between two of its competitors—is well-trodden ground in the antitrust case law, and invariably results in a dismissal for lack of standing. As the Supreme Court reasoned in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, antitrust plaintiffs cannot "recover damages for any conspiracy by [its competitors] to charge higher than competitive prices"—even if "[s]uch conduct would . . . violate the Sherman Act"—because, "as [defendants'] competitors, [plaintiffs] stand to gain from any conspiracy to raise the market price." 475 U.S. 574, 582–83 (1986). "[F]or the same reason, [plaintiffs] cannot recover for a conspiracy to impose nonprice restraints that have the effect of either raising market price or limiting output," as "[s]uch restrictions, though harmful to competition, actually *benefit* competitors by making supracompetitive pricing more attractive." *Id.*; *see also Alta. Gas Chems. Ltd. v. E.I. Dupont De nemours and Co.*, 826 F.2d 1235, 1243 (3d Cir. 1987) ("It is curious that [plaintiff] would assert a loss by conduct of [defendant] which, if [plaintiff] is to be credited, reduced the number of suppliers in the marketplace. If that action helps [defendant] as a producer, it inevitably aids [plaintiff] as well as every other producer.").

Cipla makes the same logical mistake here. Its alleged injuries do not arise from the lessening of competition between Amgen and Teva. It alleges that the "intent of the Amgen-Teva Agreement" is to restrain competition between them so that Amgen can charge "artificially high prices for pharmaceutical products comprising cinacalcet hydrochloride." Compl. ¶ 18. But as the Supreme Court has noted, higher prices benefit, rather than harm, competitors, who thus have no

standing to challenge such conduct. *Matsushita*, 475 U.S. at 582–83. Cipla likewise has no standing to assert antitrust claims relating to these supposed anticompetitive effects.

Cipla will perhaps suggest that competition is also being harmed in the market due to Cipla's own exclusion from the market—and that this is an "injury to competition" sufficient to invoke the antitrust laws. But Cipla's inability to enter the market as a result of the bargained-for terms of its contract cannot possibly be enough to assert "antitrust injury." Such an allegation would turn every dispute over the *interpretation* of a patent settlement agreement into an antitrust dispute. Moreover, as explained above, even if Cipla makes this additional allegation, it cannot salvage Cipla's antitrust claim because Cipla was still not itself injured by any reduction in competition. It was, instead, injured by the indirect effects of the settlement agreement on the operation of Amgen's contract with Cipla.

Finally, even if Cipla were assumed to have suffered antitrust injury as a result of the Amgen-Teva agreement, it would still lack standing to challenge that agreement because its injury is, at most, indirect. "[S]tanding analysis is employed to search for the most effective plaintiff from among those who have suffered loss." *Alberta Gas Chem.*, 826 F.2d at 1240; *accord Animal Science Prods, Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 499–500 (D.N.J. 2014) (the Third Circuit "recognize[es] the overarching goal of selecting the most appropriate plaintiff from a pool of injured parties"). A plaintiff, like Cipla, that alleges only indirect injury—if any—is not the most effective plaintiff to bring a claim. *See Assoc. Gen. Contractors of Ca., Inc. v. Ca. State Council of Carpenters*, 459 U.S. 519, 540–41 (1983) ("*AGC*"); *Barton & Pittinos*, 118 F.3d at 181 (citing "the existence of more direct victims of the alleged antitrust violations" as one of the relevant antitrust standing factors). To the extent the Amgen-Teva agreement, as Cipla alleges, created "artificially high prices for pharmaceutical products," Compl. ¶ 18, consumers—not pharmaceutical competitors

in the same alleged market—are the "direct victims of the conspiracy," *AGC*, 459 U.S. at 542 n.47, and "suffered a more direct and more appropriate antitrust injury," even if the alleged conspiracy had some arguable and indirect effect on competitors like Cipla, *2660 Woodley Rd. Joint Venture v ITT Sheraton Corp.*, 369 F.3d 732, 742 (3d Cir. 2004).

**B.      Cipla Has Not Adequately Pled a Claim Under Section 1 of the Sherman Act.**

Even if Cipla did have standing to assert its Sherman Act claim—which it does not—its skeletal pleading falls far short of stating a plausible claim.  Cipla arguably alleges two sources of purported antitrust injury: (i) Amgen's entry into the Amgen-Teva agreement, and (ii) "Amgen's overt threats" to sue under the Amgen-Cipla agreement should Cipla engage in an at-risk launch. Compl. ¶¶ 31, 39.  None of this conduct is actionable under Section 1 of the Sherman Act.  And even if it were, Cipla's bare-bones allegations are not sufficient to plead a plausible "relevant market," as required under Section 1.  The Sherman Act claim should therefore be dismissed.

**1.      Cipla Has Not Adequately Pled That the Amgen-Teva Settlement Agreement Violates the Antitrust Laws.**

Cipla alleges that it suffered antitrust harm "by reason of the Amgen-Teva Agreement," Compl. ¶ 39, which settled patent litigation.  Cipla seems to be alleging that because Amgen, as patentee, settled its infringement action against Teva, a claimed infringer and unlawful competitor, under terms that temporarily kept Teva out of the market, that "exclude[d] competition" in violation of the Sherman Act.  Compl. ¶ 37.  But because a valid patent provides a patentee with a lawful right to exclude, courts have not allowed antitrust plaintiffs to challenge settlements of patent litigation based on such bare-bones allegations.  Instead, the Supreme Court has clearly set forth the requirements for such a challenge—and Cipla's complaint manifestly fails to meet them.

Lawful settlements of pharmaceutical patent litigation very frequently involve an agreement "allowing the generic manufacturer to enter the patentee's market prior to the patent's expiration,

without the patentee paying the challenger to stay out prior to that point." *FTC v. Actavis, Inc.*, 570 U.S. 136, 158 (2013).   Under the Supreme Court's seminal decision in *Actavis*, such a patent settlement only becomes potentially unlawful where the branded pharmaceutical company has provided a "large and unjustified" payment to the generic manufacturer, raising an inference that the generic manufacturer has agreed to delay its entry not out of respect for the patents, but because of the payment.  *Id*. at 158.  "Because [such a] settlement requires the patentee to pay the alleged infringer, rather than the other way around, this kind of settlement agreement is often called a 'reverse payment' settlement agreement." *Id*. at 140–41.  While acknowledging the potential harms of a reverse payment settlement, the Supreme Court required caution in the invalidation of settlements of infringement cases because of the "general legal policy favoring the settlement of disputes."  *Id.* at 153; *see also Knowles Elec., LLC v. Am. Audio Component Inc.*, 2017 WL 3620808, at *7 (N.D. Ill. Aug. 23, 2017) (recognizing public policy interest in "the encouragement of settlement of litigation and the need to enforce such settlements in order to encourage parties to enter them") (quoting *Hemstreet v. Spiegel*, 851 F.2d 348, 350 (Fed. Cir. 1988).

Accordingly, post-*Actavis*, the Third Circuit has explained that, "to survive a motion to dismiss . . . 'plaintiffs [challenging a patent settlement] must allege facts sufficient to support the legal conclusion that the settlement at issue involves a large and unjustified reverse payment under *Actavis*.'"  *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 251–52 (3d Cir. 2017).  As one court put it, "*Actavis* requires scrutiny only of patent settlements that contain reverse payments." *In re Lamictal Direct Purchaser Antitrust Litig.*, 18 F. Supp. 3d 560, 567 (D.N.J. 2014), *rev'd on other grounds*, *sub nom. King Drug Co. of Florence, Inc. v. Smithkline Beecham Corp.*, 791 F.3d 388 (3d Cir. 2015); *see also In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734, 752 (E.D. Pa. 2015) (pharmaceutical patent settlements that lack a reverse payment "are not anticompetitive because the

strength of the patent dictates the entry date").

Cipla does not allege any reverse payment from Amgen to Teva, much less a "large" and "unjustified" payment. Its conclusory allegations of the "intent" and "effect" of the Amgen-Teva agreement, and of "misuse" of Amgen's patent, have no bearing on whether the settlement entailed "an unusual, unexplained transfer of value from the patent holder to the alleged infringer that cannot be adequately justified." *King Drug*, 791 F.3d at 409. The mere fact that the District Court had already issued a ruling on Amgen's infringement claims is of no moment—the parties to a case on appeal are entitled to settle their litigation while on appeal, just as they are entitled to do so prior to the appeal. *See, e.g.*, *Hospira, Inc. v. Sandoz Inc.*, 2014 WL 794589, at *7 (D.N.J. Feb. 27, 2014) (finding settlement agreement of patent litigation where alleged infringer won in district court to be unobjectionable); *Goldman v. Gen. Accident Ins. Co. of Am.*, 2007 WL 2781935, at *1 (D.N.J. May 24, 2007). Moreover, Teva's entry and settlement have no effect on competition because the other two parties to the District Court ruling are continuing with the appeal— ███████████████████

█████████████████████████████████████████████████████████████

███████████████████████ Cipla's antitrust challenge to the Amgen-Teva agreement, accordingly, fails to satisfy the threshold requirements of *Actavis*, and must be dismissed.

### 2. A Unilateral Pre-Litigation Letter Is Not Actionable Under Sherman Act Section 1.

Cipla also alleges it was injured by Amgen advising Cipla that it would "seek all remedies available under the Cipla Agreement and under applicable law" unless Cipla confirmed that it "has not and will not engage in an at risk launch." Compl. ¶¶ 31, 39. But of course a unilateral decision to send a letter stating the writer's rights is not a basis for a Section 1 claim. To state a Section 1 claim, an antitrust plaintiff must plead "(1) 'that the defendant was a party to a contract, combination . . . or conspiracy' and (2) 'that the conspiracy to which the defendant was a party imposed an

unreasonable restraint on trade.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). "Unilateral action, regardless of the motivation, is not a violation of Section 1." *Id.*

Moreover, any claims purportedly based on Amgen's pre-litigation letter are deficient under the *Noerr-Pennington* doctrine. Rooted in the First Amendment and fears about the threat of liability chilling speech, the *Noerr-Pennington* doctrine "immunize[s]" "private parties . . . against liability stemming from antitrust injuries flowing from valid petitioning," including "action incidental to litigation such as prelitigation threat letters." *A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.*, 263 F.3d 239, 251–52 (3d Cir. 2001). The pre-suit letter here by Amgen, stating that Amgen would bring suit to enforce its legal rights, is thus fully immunized from antitrust liability. *See, e.g.*, *Sweet St. Deserts, Inc. v. Chudleigh's Ltd.*, 2013 WL 1389760, at *6 (E.D. Pa. Apr. 4, 2013) ("[C]ourts have almost universally held, in the antitrust context, that presuit demand letters are immunized under *Noerr-Pennington*."); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936–37 (9th Cir. 2006) (similar).[2] Any antitrust claim based on that pre-litigation letter therefore fails.

### 3.      Cipla Has Not Adequately Pled a Relevant Market.

Cipla's antitrust claim should also be dismissed for the independent reason that it fails to adequately plead a relevant market in which competition is allegedly restrained. To plead a violation of Section 1, Cipla must plead more than the existence of an agreement; it must plead that the "conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burtch*, 662 F.3d at 221. An "unreasonable restraint on trade" requires alleging that "the alleged combination or agreement produced adverse, anti-competitive effects within the relevant product and geographic markets." *United States v. Brown Univ.*, 5 F.3d 658, 668 (3d Cir. 1993).

---

[2] Cipla does not plead that Amgen's letter was a "sham." *See Rochester Drug Co-op., Inc. v. Braintree Labs.*, 712 F. Supp. 2d 308, 316 (D. Del. 2010) (*Noerr-Pennington* subject to a "'sham litigation' exception," proved by showing that the lawsuit is "objectively baseless" and "conceals an attempt to interfere directly with the business relationships of a competitor").

The complaint here fails to adequately allege sufficient facts to support a cognizable "relevant market."   The definition of a product market is "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).  Reasonable interchangeability means "one product is roughly equivalent to another for the use to which it is put."  *Mylan Pharm. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 436 (3d Cir. 2016).  And "while there might be some degree of preference for . . . one [product] over the other, either would work effectively."  *Id.*  Cross elasticity of demand exists where "the rise in the price of a good within a relevant product market would tend to create a greater demand for other like goods in that market."  *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1991).

Cipla dispenses with all these concepts to assert summarily that "[p]harmaceutical products comprising cinacalcet hydrochloride constitute a relevant market for purposes of 15 U.S.C. § 1," Compl. ¶ 34, and that "[p]harmaceutical products comprising cinacalcet hydrochloride have pharmacological properties which differentiate them from other drugs for treating hyperparathyroidism . . . and enable sellers of such products to earn supra-competitive profits on their sale."  Compl. ¶ 13.  Such a pleading is deficient for numerous reasons.  First, "[m]erely asserting that a commodity is in some way unique is insufficient to plead a relevant market."  *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171 (S.D.N.Y. 1995).  And to the extent that Cipla alleges that cinacalcet hydrochloride products are not interchangeable with other drugs for treating hyperparathyroidism, that single unsupported assertion is a legal conclusion insufficient to withstand a motion to dismiss.  *See Am. Sales Co. v. AstraZeneca AB*, 2011 WL 1465786, at *3 (S.D.N.Y. Apr. 14, 2011) ("To the extent that plaintiff asserts no products are interchangeable with Prilosec OTC, it is a legal conclusion unsupported by allegations describing

13

Prilosec OTC or the competitive landscape of heartburn-treatment products.").

Moreover, courts have long recognized that markets limited to a particular drug or class of drugs are not well-defined without facts to render them plausible.[3]  For example, in *Bayer Schering Pharma AG v. Sandoz, Inc.*, Sandoz alleged a relevant market limited to certain oral contraceptives also prescribed to treat premenstrual dysphoric disorder.  813 F. Supp. 2d 569, 576 (S.D.N.Y. 2011).  The court dismissed the complaint because Sandoz failed to allege facts showing "there is no combination of drugs that can serve as a functional substitute."  *Id.* at 577.  Although Sandoz alleged the compound in question was "unique" relative to other birth control pills, the court applied the well-recognized principle that "uniqueness" does not suffice.  *Id.* at 576.  Cipla's failure to plead non-conclusory facts supporting its alleged relevant market similarly requires dismissal.

### C.      Cipla Has Not Pled Any Cause of Action Based on Patent Misuse.

Cipla's attempt to shoehorn its challenge to the Amgen-Teva agreement into the doctrine of patent misuse is equally unavailing.  Although patent misuse is not a cause of action in and of itself (and Cipla has not attempted to plead an independent misuse claim), Cipla has repeatedly referred to the concept of patent misuse as relevant to this action.  *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427-28 (Fed. Cir. 1997) (patent misuse is a "defense" arising from the "equitable doctrine of unclean hands"); *Cordance Corp. v. Amazon.com, Inc.*, 727 F. Supp. 2d 310, 333 (D. Del. 2010) ("Patent misuse is an affirmative defense.").  In its complaint, Cipla pled patent misuse as part of its antitrust claim (Compl. ¶¶ 37–38), but it has recently attempted to recharacterize patent misuse as a component of its declaratory relief claim or its claim under Cal. Bus. & Prof. Code

---

[3]  *See, e.g.*, *Kaiser Found. v. Abbott Labs.*, 2009 WL 3877513, at *8 (C.D. Cal. Oct. 8, 2009) (rejecting market limited to Hytrin and its generic copies because it "excluded other alpha-blockers"); *United States v. CIBA Geigy Corp.*, 508 F. Supp. 1118, 1155 (D.N.J. 1976) (rejecting market limited to hydrochlorothiazide ("HCT") because "CIBA's HCT products compete in a market composed of all products indicated for the treatment of hypertension").

§ 17200 (D.I. 44, at 4).  Of course, it is the allegations of the complaint that must suffice to state a claim.

Regardless of Cipla's theory of why it has a claim premised on "patent misuse," however, the Amgen-Teva agreement does not constitute patent misuse as a matter of law.  Patent misuse "is a judge-made doctrine that is in derogation of statutory patent rights against infringement," and accordingly the Federal Circuit "has not applied the doctrine of patent misuse expansively." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1321 (Fed. Cir. 2010).  Patent misuse occurs where the patentholder has "impermissibly broadened the 'physical or temporal scope' of the patent." *B. Braun Med.*, 124 F.3d at 1426.  The typical patent misuse case involves a patentee's requirement that a licensee pay royalties on a product that *plainly* falls outside the scope of the patent, either because the royalties are being paid "on a percentage-of-sales royalty, regardless of use" of the patented technology, or because royalties are paid before and *after* the patent expires.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 139 (1969); *Brulotte v. Thys Co.*, 379 U.S. 29, 33 (1964).  In other words, the "narrow" doctrine of patent misuse "is about . . . 'patent leverage,' i.e., the use of the patent power to impose overbroad conditions on the use of the patent." *Princo*, 616 F.3d at 1331.  Patent misuse cases often involve tying, in which the "patentee leverage[s] its patent . . . by insisting that its licensees purchase unpatented goods," or licenses that require the payment of licensing fees even "after the expiration of the licensed patent," which "thus ha[s] the effect of extending the life of the patent beyond the statutory period." *Id.* at 1327, 1333.

Cipla does not plead any remotely comparable set of facts.  Cipla has not alleged "tying" nor the abuse of "patent leverage" to force Teva to pay royalties on goods that are unambiguously outside the scope of the patent.  Instead, the facts alleged by Cipla show merely that Amgen and Teva had a good faith disagreement about the scope of Amgen's patent, and that while the scope of

that patent was uncertain due to the case being subject to an appeal, they settled that good faith dispute with an agreement that "allow[ed] the generic manufacturer to enter the patentee's market prior to the patent's expiration." *Actavis*, 570 U.S. at 158.  That is not patent misuse.

The decision in *Hospira, Inc. v. Sandoz Inc.* reflects this reasoning.  In that case, a generic manufacturer was sued for infringement and obtained a district court judgment in its favor that the patent at issue was invalid.  2014 WL 794589, at *1 (D.N.J. Feb. 27, 2014).  While the case was on appeal before the Federal Circuit, the parties reached a settlement.  *Id.*  The district court, in examining a challenge to the settlement, stated that it "sees no reason to squelch a settlement agreement reached by the parties to this action while the dispute at issue is pending at the appellate level."  *Id.* at *4.  As the *Hospira* court reasoned, a district court conclusion is neither final nor dispositive of the issue of infringement where "appellate proceedings . . . remain pending before the Federal Circuit."  *Id.*[4]  The same reasoning holds true here.

### D.  Cipla's California State Law Claims Fail for the Same Reasons as the Federal Claims.

Cipla brings its third and fourth claims for relief under California's Cartwright Act (§ 16720) and Unfair Competition Law (§ 17200) ("UCL"), respectively.  Compl. ¶¶ 42–49.  Each of these claims is based on the same factual allegations as the Sherman Act claim, and simply relabels the cause of action as a California state law violation.  Neither states a claim for relief.[5]

---

[4]  Of course, a substantial percentage of patent cases are reversed on appeal.  *See, e.g.,* PWC, 2018 Patent Litigation Study (May 2018), *at* http://www.ipwatchdog.com/wp-content/uploads/2018/09/2018-pwc-patent-litigation-study.pdf.

[5]  Cipla's state-law claims fail on the merits.  In addition, if the Court dismisses Cipla's Sherman Act claim, the Court also has discretion to dismiss the remainder of the case without reaching the merits, as the parties are not diverse and the remaining claims are state-law claims for which the Court has only supplemental jurisdiction.  *See* Compl. ¶ 5 (citing 28 U.S.C. §§ 1331 and 1337 as the only sources of original jurisdiction); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (same).

Because "the analysis under the Cartwright Act . . . is identical to that under the Sherman Act," Cipla's Cartwright Act antitrust claim fails for the same reasons as its Sherman Act claims. *Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*, 795 F.3d 1124, 1131 n.5 (9th Cir. 2015) (affirming dismissal of Cartwright Act antitrust claims because the allegations failed to state a claim under the Sherman Act); *see also Dang v. S.F. Forty Niners*, 964 F. Supp. 2d 1097, 1103 (N.D. Cal. 2013) (the court's "analysis under the Cartwright Act 'mirrors the analysis under federal law.'").[6]   Accordingly, Cipla's Cartwright Act claims should be dismissed for the same reason its federal antitrust claims should be dismissed.

The California Supreme Court's recent decision in *In re Cipro Cases I & II* specifically construed the Cartwright Act in connection with antitrust challenges to patent settlements.  61 Cal. 4th 116 (2015).  That case explained that both "the Cartwright Act and Sherman Act carry forward the common law understanding that 'only unreasonable restraints of trade are prohibited.'"  *Id.* at 146.  Recognizing the important federal interest in patent law uniformity, *Cipro* followed the Supreme Court's decision in *FTC v. Actavis* and recognized that for a patent settlement delaying generic entry to be unlawful, a reverse payment is required.  *Id.* at 151–52 ("[A]bsent payment, any delay in entry may be attributed to the effective strength of the challenged patent, rather than the settlement agreement.").  Cipla has pled no such "reverse payment" and pleads no alternative theory of an "unreasonable restraint[] of trade."

Plaintiff's claim under California's UCL fares no better.  California's UCL provides equitable relief for business acts or practices that are "unlawful, unfair or fraudulent."  Cal. Bus. Prof. Code. § 17200; *id.* § 17203; *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

---

[6]  The Cartwright Act is not always coextensive with the Sherman Act—for example, with respect to when a claim accrues for purposes of the statute of limitations, *see Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013)—but with respect to the substance of a plaintiff's antitrust allegations, the same analysis applies.  *See, e.g.*, *Name.Space*, 795 F.3d at 1131 n.5.

163, 180 (Cal. 1999).  Here, Cipla's UCL claim is based on exactly the same allegations that form the basis of its Sherman Act and Cartwright Act claims.  Compl. ¶ 46.  Thus, Cipla's claim of "unlawful" practices under the UCL fails for the same reasons its Sherman Act and Cartwright Act claims fail—the acts alleged simply are not unlawful.  Likewise, the California Supreme Court has explained that, for purposes of the UCL, "'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law."  *Cel-Tech*,  20 Cal. 4th at 187.  Because Cipla's allegations do not make out any such violation, they also fail to state a claim for "unfair" business practices under the UCL.  *See Dang*, 964 F. Supp. 2d at 1103 (where plaintiff's UCL claim is "based on the same allegedly unlawful anticompetitive activity" as its Sherman Act and Cartwright Act claims, "the Court will apply the standard antitrust violation analysis to all of Plaintiff's causes of action.").  Nor has Cipla alleged fraud.[7]

In a recent filing, Cipla suggested that pleading "patent misuse" establishes a claim under the UCL.  D.I. 44 at 4.  That is wrong.  The sole case cited by Cipla for that proposition, *Cel-Tech*, does not even mention "patent misuse."  Moreover, even if patent misuse itself could violate the UCL, Cipla has not pled it, as explained above, *supra* Section IV-C.

### E.     Cipla's Delaware Contract Claim Should Be Dismissed.

Count 1 of Cipla's complaint seeks declaratory judgment that, "under the Amgen-Cipla Agreement, Cipla is currently licensed by Amgen to sell the Cipla [Generic] Product."  Compl. ¶ 32.  But Cipla's allegations, even if taken as true, fail to establish entitlement to that relief.

Cipla alleges that the Amgen-Cipla agreement grants Cipla a license to sell Cipla's generic

---

[7]  To the extent Cipla intended to plead some allegedly unfair or unlawful business act *other* than the alleged antitrust violations, the pleadings are too conclusory to state a claim.  *See Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *17 (N.D. Cal. June 5, 2009).

cinacalcet hydrochloride product, ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████   Accordingly, Cipla fails adequately to

allege entitlement to a declaration that it is currently licensed.  *See, e.g.*, *Click Corp. of Am. v. Redco*

*Foods, Inc.*, 424 F. Supp. 2d 753, 765 (D.N.J. 2006) (claim for declaratory judgment of ownership of

a trademark subject to dismissal under Rule 12(b)(6) where plain terms of license agreement showed

no ownership interest).

As set out in the Amgen-Cipla agreement, ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████

        ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████



Because Cipla does not plead any facts to suggest that Cipla is licensed under the Amgen-Cipla agreement, Cipla's claim for declaratory judgment that "Cipla is currently licensed by Amgen" should be dismissed.  Compl. ¶ 32.

## V.    CONCLUSION

Amgen respectfully requests that the Court dismiss Cipla's complaint with prejudice.

---

[8]   Although Cipla alleges that the district court opinion was a "final judgment" of non-infringement with respect to the Teva product in the district court, Compl. ¶¶ 8–9, ████████████████████
████████████████████████████████████████

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

Adam H. Offenhartz
Eric J. Stock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

M. Sean Royall
Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201-6912
(214) 571-2900

February 14, 2019

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 13, 2019, upon the following in the manner indicated:

Sue L. Robinson, Esquire                                    *VIA ELECTRONIC MAIL*
Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

James W. Dabney, Esquire                                    *VIA ELECTRONIC MAIL*
Patrice P. Jean, Esquire
Dina Hoffer, Esquire
Deanne K. Cevasco, Esquire
David E. Lansky, Esquire
Lynn M. Russo, Esquire
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY  10004
*Attorneys for Plaintiffs*

*/s/ Brian P. Egan*

_____
Brian P. Egan (#6227)