## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CIPLA LTD. and CIPLA USA, INC.,   )
  )
       Plaintiffs,   )   C.A. No. 19-44-LPS
  )
    v.   )   **JURY TRIAL DEMANDED**
  )
AMGEN INC. and TEVA PHARMACEUTI-   )   **FILED UNDER SEAL**
CALS USA, INC.,   )
  )
       Defendants.   )

## FIRST AMENDED COMPLAINT

## NATURE OF THIS ACTION

This action arises from a conspiracy to suppress competition in the sale of pharmaceutical products comprising cinacalcet hydrochloride ("Cinacalcet Products").  Defendants have acted in concert to restrict supplies of, and to maintain artificially high prices for, Cinacalcet Products sold in United States commerce, and to share in monopoly profits that would have been lost to competition if Defendants had not colluded with one another as they did and if Defendants had not intentionally misled Cipla with false press releases and other false communications.

Expedited discovery ordered by this Court on January 25, 2019, shows that Amgen, Inc. ("Amgen") and Teva Pharmaceuticals USA, Inc. ("Teva") have agreed to ███████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████████████████, but Amgen and Teva have both falsely stated the contrary in press releases and other public communications for the purpose, and with the effect, of deceiving and misleading Cipla, regulators, courts, competitors, and the public.

Defendants' fraudulent scheme was exposed when, as a result of expedited discovery ordered in this case, Cipla learned that (i) Amgen and Teva had publicly misrepresented the terms of a written agreement between them dated January 2, 2019 (the "January 2 Agreement"); (ii) Amgen and Teva had both acted to mislead and deceive Cipla into not selling Cinacalcet Products that Cipla was in fact licensed to sell; and (iii) Amgen and Teva had  misused the '405 Patent as a cover for what was, in reality, a naked agreement to restrict output of Cinacalcet Products and maintain artificially high prices on Cinacalcet Products sold in United States commerce, in clear violation of 15 U.S.C. § 1 and California state statutory law..

## PARTIES AND JURISDICTION

1.      Plaintiff Cipla Ltd. is a corporation organized and existing under the laws of India, having its principal place of business at Cipla House, Peninsula Business Park, Ganpatrao Kadam Marg, Lower Parel, Mumbai – 400013, Maharashtra, India.

2.      Plaintiff Cipla USA, Inc. is a corporation organized and existing under the laws of Delaware, having its principal place of business at 1560 Sawgrass Corporate Pkwy., Suite 130, Sunrise, FL 33323.

3.      Defendant Amgen Inc. ("Amgen") is a corporation organized and existing under the laws of Delaware, having its principal place of business at One Amgen Center Drive, Thousand Oaks, California 91320-1799.

4.      Defendant Teva Pharmaceuticals USA, Inc. ("Teva") is a corporation organized

and existing under the laws of Delaware, is a Delaware corporation, having its principal place of business at l090 Horsham Road, North Wales, Pennsylvania19454

5.      This action arises under the Sherman Act, 15 U.S.C. §§ 1 et seq., the Clayton Act, 15 U.S.C. §§ 12 et seq., the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 et seq., the Unfair Practices Act, Cal. Bus. & Prof. Code §§ 17200 et seq., and Delaware state law.

6.      The Court has subject matter jurisdiction to hear this action under at least 15 U.S.C. § 22 and 28 U.S.C. §§ 1331, 1337, 1367, 2201, and 2202.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment With Respect to Amgen-Cipla Agreement)

7.      Paragraphs 1-6, above, are re-alleged and incorporated by reference as if set forth in full.

8.      Cipla and Amgen are parties to a Litigation Settlement Agreement dated February 26, 2018 (the "Amgen-Cipla Agreement"), a copy of which is reproduced in Exhibit 1 hereto.

9.      



10.      

11.      

12.      On or about December 28, 2018, Teva initiated 

13.      Under the final decision in *Amgen Inc. v. Amneal Pharmaceuticals LLC*, 328 F.

Supp. 2d 373 (D. Del. 2018), the Teva Products are outside the scope of the '405 Patent.

14.     By not later than December 29, 2018, Amgen had actual knowledge of ███ ████████████████████████ Teva's sales of the quantities of Teva Products identified in Exhibit 2 hereto.

15.     

16.     Amgen did not seek any ███████████████████████████ ██████████████████

17.     On or about January 2, 2019, Amgen and Teva entered into the "Litigation Settlement Agreement" reproduced in Exhibit 3 hereto (the "January 2 Agreement").

18.     On or about January 2, 2019, Amgen issued the public statement reproduced in Exhibit 4 hereto, which asserts in part: "Teva has agreed to stop selling its generic product until its license date in mid-year 2021 or sooner depending on certain occurrences."

19.     On or about January 2, 2019, Teva issued the public statement reproduced in Exhibit 5 hereto, which asserts in part: "Teva has agreed to stop selling its generic product until its license date in mid-year 2021, or earlier under certain circumstances."

20.     On or about January 4, 2019, Amgen sent Cipla the letter reproduced in Exhibit 6 hereto, which stated in part: "the Watson/Teva and Amgen Press Releases . . . make clear that the parties have entered into an agreement in which Watson has agreed to cease selling its product.

Those press releases provide sufficient details to confirm that Watson has agreed to cease selling its Generic Cinacalcet Product immediately."

21.     The Amgen and Teva statements quoted in paragraphs 18-20, above, were false, were known to be false when made, and were made with intent to mislead regulators, competitors including Cipla, courts, and the public with respect to the actual terms of the January 2 Agreement and the nature and character of Amgen's and Teva's unlawful, naked scheme to restrain trade and commerce in Cinacalcet Products.

22.     Contrary to the statements quoted in paragraphs 18-20, above, ██████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████████

23.     Contrary to the statements quoted in paragraph 18-20, above, ██████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

24.     Cipla relied to its detriment on the false statements identified in paragraphs 18-20, above, and did not start selling Cinacalcet Products ████████████████████████
█████████████████████████████████████████

25.     Following the *Amneal* decision, ██████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████-

5

26. ███████████████████████████████████████████████████

███████████████████████

27. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

28. Contrary to what Amgen stated in Exhibit 6 hereto, █████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████

29. Under ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████

30. As of February 25, 2019, the court in the *Amneal* action had not issued the collu-

sive Consent Judgment purporting to reverse its judgment in that action ████████████

████████████████████████████████████████████████████████████

█████████████████████

31. ███████████████████████████████████████████████████

████████████████████████████████.

32. Teva's "█████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████.

33.     Teva's ████████████████████████████████████

████████████████████████████████████████████

34.     The January 2 Agreement ██████████████████████████

████████████████████████████████████████████.

35.     The January 2 Agreement ██████████████████████████

████████████

36.     In addition to ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

37.     ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████.

38.     Under ██████████████████████████████████

████████████████████████████████████████████

████████.

39.     In a letter dated January 4, 2019 (Exhibit 6 hereto), Amgen told Cipla:  "Please
confirm immediately that Cipla has not and will not engage in an at risk launch based on Wat-
son's At Risk Launch.   Otherwise Amgen will seek all remedies available under the Cipla
Agreement and under applicable law, including injunctive relief, breach of contract, treble dam-

ages, and sanctions."

40.     An actual controversy exists between Cipla and at least Amgen ███████████████

████████████████████████████████████████████████████████

████████████████████████████████

## SECOND CLAIM FOR RELIEF
### (Violation of 15 U.S.C. § 1)

41.     Paragraphs 1-40, above, are realleged and incorporated by reference as if set forth in full.

42.     At all times since December 28, 2018, Amgen and Teva have been direct horizontal competitors in the sale of Cinacalcet Products in United States commerce.

43.     Cinacalcet Products have pharmacological properties which differentiate them from other drugs for treating hyperparathyroidism (HPT) and enable sellers of such products to earn supra-competitive profits on their sale.

44.     There are no other drugs that are reasonably interchangeable with Cinacalcet Products for the treatment of HPT.

45.     The next closest substitute to Cincalcet Products for the treatment of HPT currently approved by FDA for sale in the United States is an intravenous drug sold by Amgen under the trade name PARSABIV™, the active ingredient of which is a compound called etelcalcetide on which Amgen holds a patent.

46.     Between 2004, when FDA approved Amgen's NDA for its branded Cinacalcet Product, SENSIPAR®, and 2018, Amgen was the sole seller of Cinacalcet Products for the treatment of HPT in the United States.

47.     Between 2012 and 2018, Amgen steadily increased the price of Cinacalcet Products as shown in Exhibit 7 hereto.

48. Over the period from 2004 through 2018, SENSIPAR® has been one of Amgen's five top-selling drugs with annual sales in the United States of more than $1 billion in 2018.

49. ████████████████████████████████████████████████████

████████████████████

50. As shown by Amgen's ability to raise prices and earn supracompetitive profits on SENSIPAR® over a 14-year period from 2004 through 2018, without attracting any successful entry by any other close substitute in oral dosage form before Teva launched its generic substitute in December 2018, Cinacalcet Products constitute a "relevant market" for purposes of antitrust and patent misuse analysis.

51. As shown by Amgen's persistent ability to raise prices and earn supracompetitive profits on sales of Cinacalcet Products between 2012 and 2018, without attracting any successful entry by any other close substitute in oral dosage form before Teva launched its generic substitute in December 2018, Amgen and now Teva have "market power" with respect to Cinacalcet Products at all relevant times up to and including the date of the filing of this complaint.

52. Beginning at a time currently unknown to Cipla, but not later than January 2, 2019, Amgen and Teva entered into a contract, combination, and conspiracy to suppress competition in the sale of Cinacalcet Products and to deceive and mislead regulators, competitors, courts, and the public with respect to nature and character of Defendants' unlawful actions.

53. Beginning and a time currently unknown to Cipla, but not later than January 2, 2019, Amgen and Teva entered into a contract, combination, and conspiracy to restrict supplies of, and to maintain artificially high prices for, Cinacalcet Products sold in United States commerce, and to share in monopoly profits that would have been lost to competition if Defendants had not colluded with one another as they did and if Defendants had not intentionally misled

Plaintiffs with false press releases and other false public communications

54.     In furtherance of the conspiracy identified in paragraphs 52-53, above, Amgen and Teva entered into the January 2 Agreement, issued the false public statements identified in paragraphs 18-20, above, and took the further acts alleged below, including filing a motion with the court in C.A. No. 16-853-MSG (the "'853 Action") on January 9, 2019, which falsely described the January 2 Agreement and sought an "indicative ruling" that the court would issue a collusive judgment, a collusive judgment purporting to declare, falsely, that the Teva Products embodied the claimed invention of U.S. Patent No. 9,375,405 (the "'405 Patent").

55.     The purpose of the January 2 Agreement was to restrain and eliminate competition between Amgen and Teva in the sale of Cinacalcet Products in United States.

56.     The purpose of the January 2 Agreement was to restrict the supply of Cinacalcet Products sold in United States commerce.

57.     The purpose of the January 2 Agreement was to maintain artificially high prices for Cinacalcet Products sold in United States commerce.

58.     The effect of the January 2 Agreement was to restrain and eliminate competition between Amgen and Teva in the sale of Cinacalcet Products in United States commerce.

59.     The effect of the January 2 Agreement was to restrict the supply of Cinacalcet Products sold in United States commerce.

60.     The effect of the January 2 Agreement was to maintain artificially high prices for Cinacalcet Products sold in United States commerce.

61.     The January 2 Agreement has operated to restrain trade or commerce in the sale of Cinacalcet Products in United States commerce, and to maintain exorbitant prices for such products at levels even higher than the 2017 levels listed in Exhibit 7 hereto.

62.     By engaging in the conduct identified in paragraphs 1-61, above, Amgen and Teva acted in concert to restrain trade by restricting supply of Cinacalcet Products in order to maintain artificially high prices as compared with what the prices would have been had supply not been restricted as a result of the January 2 Agreement

63.     By engaging in the conduct identified in paragraphs 1-61, above, Amgen and Teva acted in concert to restrain trade by deceiving and deterring Cipla and other manufacturers holding FDA-approved ANDAs for generic Cinacalcet Products from entering into competition with them in the sale of Cinacalcet Products and to misuse the '405 Patent to exclude the sale of Cinacalcet Products falling outside the scope of the patent.

64.     By engaging in the conduct identified in paragraphs 1-61, above, Amgen and Teva entered into a contract, combination, and conspiracy in restraint of trade or commerce in direct violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and that is therefore either per se or presumptively unlawful under that section.

65.     The '405 Patent is currently unenforceable by reason of the patent misuse identified in paragraphs 63-64, above.

66.     Cipla has been injured in its business and property, and is threatened with injury to its business and property, by reason of the January 2 Agreement and by reason of Amgen's and Teva's conduct identified in paragraphs 1-65, above.

67.     Amgen and Teva specifically intended to exclude Cipla from entering the market for Cinacalcet Products, and acted in concert to mislead and deceive Cipla into not entering that market for a period of several weeks.

68.     Cipla holds a FDA-approved ANDA for the sale of its generic Cinacalcet Product in United States commerce, and prior to receiving the deceptive letter from Amgen reproduced in

11

Exhibit 5 hereto, Cipla ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ Amgen with its threat of further litigation.

69.     Cipla has ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

70.     Cipla, therefore, has and is continuing to suffer antitrust injury to its business and

property for purposes of 15 U.S.C. §§ 15 and 26.

71.     Amgen and Teva are liable to Cipla, jointly and severally, for treble damages, in-

junctive relief, and declaratory relief under 15 U.S.C. § 15 and 26.

**THIRD CLAIM FOR RELIEF**
**(Violation of Cal. Bus. & Prof. Code § 16720)**

72.     Paragraphs 1-71, above, are re-alleged and incorporated by reference as if set

forth in full.

73.     The January 2 Agreement constitutes a trust within the meaning of Cal. Bus. &

Prof. Code § 16720.

74.     Cipla has been injured in its business and property, and is threatened with injury

to its business and property, by reason of Amgen's and Teva's conduct alleged in paragraphs 1-

76, above.

75.     Amgen and Teva are liable to Cipla, jointly and severally, for treble damages, in-

junctive relief, and declaratory relief under Cal. Bus. & Prof. Code § 16720.

**FOURTH CLAIM FOR RELIEF**
**(Violation of Cal. Bus. & Prof. Code § 17200)**

76.     Paragraphs 1-75, above, are realleged and incorporated by reference as if set forth

in full.

77.     Amgen and Teva have engaged in unfair, unlawful, or fraudulent business acts or practices within the meaning of Cal. Bus. & Prof. Code § 17200, including patent misuse.

78.     Cipla has been injured in its business and property, and is threatened with injury to its business and property, by reason of Amgen's and Teva's conduct alleged in paragraphs 1-80, above.

79.     Amgen and Teva are liable to Cipla, jointly and severally, for injunctive relief under Cal. Bus. & Prof. Code § 17200, including relief against patent misuse.

### FIFTH CLAIM FOR RELIEF
### (Fraud)

80.     Paragraphs 1-79, above, are re-alleged and incorporated by reference as if set forth in full.

81.     The conduct of Amgen and Cipla constitutes fraud.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

a.      Declare, adjudge, and decree that Cipla is currently licensed to sell Cinacalcet Products under the Amgen-Cipla Agreement;

b.      Declare, adjudge, and decree that the '405 Patent is unenforceable against Cipla or any Cipla Cinacalcet Product by reason of patent misuse by Amgen;

c.      Issue preliminary and permanent injunctions against Amgen interfering with Cipla's marketing and sale of Cipla Products;

d.      Declare, adjudge, and decree that Amgen and Teva are liable to Cipla, jointly and severally, for violation the Sherman Act, 15 U.S.C. § 1;

e.      Declare, adjudge, and decree that Amgen and Teva are liable to Cipla, jointly and severally, for violation of Cal. Bus. & Prof. Code § 16720;

f.      Declare, adjudge, and decree that Amgen and Teva are liable to Cipla for unfair, unlawful, or fraudulent business acts or practices within the mean-

ing of Cal. Bus. & Prof. Code § 17200;

g.    Declare, adjudge, and decree that Amgen and Teva are liable to Cipla, jointly and severally, for fraud under common law;

h.    Award Cipla compensatory damages as provided by law;

i.    Award Cipla treble damages as provided by law;

j.    Award Cipla punitive damages as provided by law;

k.    Award Cipla is reasonable attorneys' fees incurred in prosecuting this action;

l.    Award Cipla pre-judgment interest and costs; and

m.    Award Cipla such other and further relief as the Court may deem just and proper.

Dated: February 25, 2019        Respectfully submitted,

Of Counsel:        FARNAN LLP

| | |
|---|---|
| James W. Dabney | /s/   Michael J. Farnan |
| Patrice P. Jean | Sue L. Robinson (Bar No. 100658) |
| Dina Hoffer | Brian E. Farnan (Bar No. 4089) |
| Deanne K. Cevasco | Michael J. Farnan (Bar No. 5165) |
| David E. Lansky | 919 North Market Street |
| Lynn M. Russo | 12th Floor |
| HUGHES HUBBARD & REED LLP | Wilmington, DE  19801 |
| One Battery Park Plaza | (302) 777-0300 (Telephone) |
| New York, NY 10004 | (302) 777-0301 (Facsimile) |
| (212) 837-6803 | srobinson@farnanlaw.com |
| james.dabney@hugheshubbard.com | bfarnan@farnanlaw.com |
| patrice.jean@hugheshubbard.com | mfarnan@farnanlaw.com |
| dina.hoffer@hugheshubbard.com | |
| deanne.cevasco@hugheshubbard.com | *Attorneys for Plaintiffs* |
| david.lansky@hugheshubbard.com | |
| lynn.russo@hugheshubbard.com | |

# EXHIBIT 1

REDACTED

# EXHIBIT 2

REDACTED

# EXHIBIT 3

REDACTED

# EXHIBIT 4

INVESTORS↗   MEDIA   PARTNERS   CAREERS↗

ABOUT                SCIENCE          **AMGEN**®          PRODUCTS          RESPONSIBILITY

# FEATURED NEWS

HOME  /  MEDIA  /  FEATURED NEWS  /
RESOLUTION ANNOUNCED FOR ONGOING DISPUTE OVER TEVA'S GENERIC CINACALCET PRODUCT

# Resolution Announced for Ongoing Dispute Over Teva's Generic Cinacalcet Product

Amgen announced today that it has resolved its ongoing dispute with Teva (and its affiliates Watson and Barr) over Teva's generic cinacalcet product.  Amgen and Teva have been involved in patent infringement litigation, and Teva recently received approval for its generic product in the United States and launched the product.  By virtue of the settlement, the litigation between the parties will be ended and Teva has agreed to stop selling its generic product until its license date in mid-year 2021 or sooner depending on certain occurrences.  Teva has agreed to pay Amgen an undisclosed amount as part of the settlement.  That amount and other terms of the settlement remain confidential.

Amgen remains committed to supplying all the needs of patients in the United States with Sensipar®. Although most generic companies have settled the patent litigation, Amgen will continue to pursue its claims against the few remaining companies which have not settled.

## About

Overview
The Amgen Difference ↗
Quick Facts
Mission and Values
Leadership
Awards and Accolades
How We Operate
Amgen History ↗

## Science

Overview
Research and Development Strategy
Pipeline ↗
Scientific Advisory Boards
Amgen Science ↗
Clinical Trials
Manufacturing
Biosimilars ↗

## Products

Overview
Medical Information ↗
Global Patient Safety
Counterfeit Drug Statement
Safety Data Sheets

# EXHIBIT 5



Print Page  |  Close Window

# News Release

## TEVA AND AMGEN RESOLVE ONGOING DISPUTE OVER TEVA'S GENERIC CINACALET HCL PRODUCT

PARSIPPANY, N.J.--(BUSINESS WIRE)--Jan. 2, 2019-- Teva Pharmaceutical Industries Ltd., (NYSE and TASE: TEVA) announced today that it has resolved its ongoing dispute with Amgen over Teva's generic cinacalcet HCl product. Teva and Amgen have been involved in patent infringement litigation, and Teva recently received approval for, and launched its generic product in the US.

By virtue of the settlement, the litigation between the parties will be ended and Teva has agreed to stop selling its generic product until its license date in mid-year 2021, or earlier under certain circumstances. Teva will pay Amgen an undisclosed amount as part of the settlement. That amount and other terms of the settlement remain confidential.

Cinacalcet is a calcium-sensing receptor agonist indicated for secondary hyperparathyroidism (HPT) in adult patients with chronic kidney disease on dialysis. It is also used for the treatment of hypercalcemia in adult patients with parathyroid carcinoma and severe hypercalcemia in adult patients with primary HPT who are unable to undergo parathyroidectomy.

### About Cinacalcet Hydrochloride Tablets

Cinacalcet hydrochloride tablets are indicated for the treatment of secondary hyperparathyroidism (HPT) in adult patients with chronic kidney disease (CKD) on dialysis. Important Limitations of Use: cinacalcet hydrochloride tablets are NOT indicated for use in patients with CKD who are not on dialysis because of an increased risk of hypocalcemia.

Cinacalcet hydrochloride tablets are indicated for the treatment of hypercalcemia in adult patients with Parathyroid Carcinoma.

Cinacalcet hydrochloride tablets are indicated for the treatment of severe hypercalcemia in adult patients with primary HPT who are unable to undergo parathyroidectomy.

IMPORTANT SAFETY INFORMATION

**Contraindications:** Cinacalcet treatment initiation is contraindicated if serum calcium is less than the lower limit of the normal range.

**Hypocalcemia:** Cinacalcet lowers serum calcium and can lead to hypocalcemia. Significant lowering of serum calcium can cause paresthesias, myalgias, muscle spasms, tetany, seizures, QT interval prolongation and ventricular arrhythmia. Life threatening events and fatal outcomes associated with hypocalcemia have been reported in patients treated with cinacalcet, including in pediatric patients. The safety and effectiveness of cinacalcet have not been established in pediatric patients.

Decreases in serum calcium can prolong the QT interval, potentially resulting in ventricular arrhythmia. Cases of QT prolongation and ventricular arrhythmia have been reported in patients treated with cinacalcet. Patients with conditions that predispose to QT interval prolongation and ventricular arrhythmia may be at increased risk for QT interval prolongation and ventricular arrhythmias if they develop hypocalcemia due to cinacalcet. Closely monitor corrected serum calcium and QT interval in patients, at risk, receiving cinacalcet.

In clinical studies, seizures were observed in cinacalcet-treated patients. While the basis for the reported seizure rate is not clear, the threshold for seizures is lowered by significant reductions in serum calcium levels. Monitor serum calcium levels in patients with seizure disorders receiving cinacalcet.

Concurrent administration of cinacalcet with calcium-lowering drugs including other calcium-sensing receptor agonists could result in severe hypocalcemia. Closely monitor serum calcium in patients receiving cinacalcet and concomitant therapies known to lower serum calcium levels.

<u>Patients with secondary HPT with CKD on dialysis</u>: Serum calcium and serum phosphorus should be measured within 1 week and intact parathyroid hormone (iPTH) should be measured 1 to 4 weeks after initiation or dose adjustment of cinacalcet. Once the maintenance dose has been established, serum calcium should be measured approximately monthly.

<u>Patients with primary HPT or parathyroid carcinoma</u>: Serum calcium should be measured within 1 week after initiation or dose adjustment of cinacalcet. Once maintenance dose levels have been established, serum calcium should be measured every 2 months.

**Upper Gastrointestinal Bleeding:** Cases of gastrointestinal bleeding, mostly upper gastrointestinal bleeding, have occurred in patients using calcimimetics, including cinacalcet, from postmarketing and clinical trial sources. The exact cause of GI bleeding in these patients is unknown.

Patients with risk factors for upper GI bleeding (such as known gastritis, esophagitis, ulcers or severe vomiting) may be at increased risk for GI bleeding when receiving cinacalcet treatment. Monitor patients for worsening of common GI adverse reactions of nausea and vomiting associated with cinacalcet and for signs and symptoms of GI bleeding and ulcerations during cinacalcet therapy. Promptly evaluate and treat any suspected GI bleeding.

**Hypotension, Worsening Heart Failure and/or Arrhythmias:** In postmarketing safety surveillance, isolated, idiosyncratic cases of hypotension, worsening heart failure, and/or arrhythmia have been reported in patients with impaired cardiac function, in which a causal relationship to cinacalcet could not be completely excluded and which may be mediated by reductions in serum calcium levels.

**Adynamic Bone Disease:** Adynamic bone disease may develop if iPTH levels are suppressed below 100 pg/mL.

**Drug Interactions with Strong CYP3A4 Inhibitors:** Cinacalcet is partially metabolized by CYP3A4. Dose adjustment of cinacalcet may be required if a patient initiates or discontinues therapy with a strong CYP3A4 inhibitor (e.g., ketoconazole, itraconazole). The iPTH and serum calcium concentrations should be closely monitored in these patients.

**Drug Interactions with CYP2D6 Substrates:** Cinacalcet is a strong inhibitor of CYP2D6. Dose adjustments may be required for concomitant medications that are predominantly metabolized by CYP2D6 (e.g., desipramine, metoprolol, and carvedilol) and particularly those with a narrow therapeutic index (e.g., flecainide and most tricyclic antidepressants).

**Common Adverse Reactions:** The most common adverse reactions (i.e., incidence ≥25%) associated with cinacalcet were nausea and vomiting.

Please see accompanying Full Prescribing Information.

For more information, please see accompanying Full Prescribing Information, including Boxed Warning. A copy may be requested from Teva US Medical Information at 888-4-TEVA-USA (888-838-2872) or druginfo@tevapharm.com, or Teva's Public Relations or Investor Relations contacts.

## About Teva

Teva Pharmaceutical Industries Ltd. (NYSE and TASE: TEVA) is a global leader in generic medicines, with innovative treatments in select areas, including CNS, pain and respiratory. We deliver high-quality generic products and medicines in nearly every therapeutic area to address unmet patient needs. We have an established presence in generics, specialty, OTC and API, building on more than a century-old legacy, with a fully integrated R&D function, strong operational base and global infrastructure and scale. We strive to act in a socially and environmentally responsible way. Headquartered in Israel, with production and research facilities around the globe, we employ 45,000 professionals, committed to improving the lives of millions of patients. Learn more at www.tevapharm.com.

## Cautionary Note Regarding Forward-Looking Statements

This press release contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995 regarding Teva's generic version of Sensipar[®1], which are based on management's current beliefs and expectations and are subject to substantial risks and uncertainties, both known and unknown, that could cause our future results, performance or achievements to differ significantly from that expressed or implied by such forward-looking statements. Important factors that could cause or contribute to such differences include risks relating to:

- The uncertainty of the commercial success of our generic version of cinacalcet HCl.

- our ability to successfully compete in the marketplace, including: that we are substantially dependent on our generic products; competition for our specialty products, especially COPAXONE®, our leading medicine, which faces competition from existing and potential additional generic versions and orally-administered alternatives; competition from companies with greater resources and capabilities; efforts of pharmaceutical companies to limit the use of generics including through legislation and regulations; consolidation of our customer base and commercial alliances among our customers; the increase in the number of competitors targeting generic opportunities and seeking U.S. market exclusivity for generic versions of significant products; price erosion relating to our products, both from competing products and increased regulation; delays in launches of new products and our ability to achieve expected results from investments in our product pipeline; our ability to take advantage of high-value opportunities; the difficulty and expense of obtaining licenses to proprietary technologies; and the effectiveness of our patents and other measures to protect our intellectual property rights;

- our substantially increased indebtedness and significantly decreased cash on hand, which may limit our ability to incur additional indebtedness, engage in additional transactions or make new investments, and may result in a further downgrade of our credit ratings; and our inability to raise debt or borrow funds in amounts or on terms that are favorable to us;

- our business and operations in general, including: failure to effectively execute the restructuring plan announced in December 2017; uncertainties related to, and failure to achieve, the potential benefits and success of our new senior management team and

organizational structure; harm to our pipeline of future products due to the ongoing review of our R&D programs; our ability to develop and commercialize additional pharmaceutical products; potential additional adverse consequences following our resolution with the U.S. government of our FCPA investigation; compliance with sanctions and other trade control laws; manufacturing or quality control problems, which may damage our reputation for quality production and require costly remediation; interruptions in our supply chain; disruptions of our or third party information technology systems or breaches of our data security; the failure to recruit or retain key personnel; variations in intellectual property laws that may adversely affect our ability to manufacture our products; challenges associated with conducting business globally, including adverse effects of political or economic instability, major hostilities or terrorism; significant sales to a limited number of customers in our U.S. market; our ability to successfully bid for suitable acquisition targets or licensing opportunities, or to consummate and integrate acquisitions; and our prospects and opportunities for growth if we sell assets;

- compliance, regulatory and litigation matters, including: costs and delays resulting from the extensive governmental regulation to which we are subject; the effects of reforms in healthcare regulation and reductions in pharmaceutical pricing, reimbursement and coverage; governmental investigations into sales and marketing practices; potential liability for patent infringement; product liability claims; increased government scrutiny of our patent settlement agreements; failure to comply with complex Medicare and Medicaid reporting and payment obligations; and environmental risks;

- other financial and economic risks, including: our exposure to currency fluctuations and restrictions as well as credit risks; potential impairments of our intangible assets; potential significant increases in tax liabilities; and the effect on our overall effective tax rate of the termination or expiration of governmental programs or tax benefits, or of a change in our business;

- and other factors discussed in our Annual Report on Form 10-K for the year ended December 31, 2017, including in the section captioned "Risk Factors," and in our other filings with the U.S. Securities and Exchange Commission, which are available at www.sec.gov and www.tevapharm.com. Forward-looking statements speak only as of the date on which they are made, and we assume no obligation to update or revise any forward-looking statements or other information contained herein, whether as a result of new information, future events or otherwise. You are cautioned not to put undue reliance on these forward-looking statements.

[1] Sensipar® is a registered trademark of Amgen, Inc.

View source version on businesswire.com:
https://www.businesswire.com/news/home/20190102005667/en/

Source: Teva Pharmaceutical Industries Ltd.

IR Contacts
United States
Kevin C. Mannix
(215) 591-8912

Israel
Ran Meir
(215) 591-3033

PR Contacts
**United States**
Kelley Dougherty
(973) 658-0237

Elizabeth DeLuca
(267) 468-4329

**Israel**
Yonatan Beker
972 (54) 888 5898

# EXHIBIT 6

# VENABLE | Fitzpatrick

VENABLE LLP | 1290 AVENUE OF THE AMERICAS
20TH FLOOR | NEW YORK, NY 10104
T +1 212.218.2100  F +1 212.218.2200 Venable.com

January 4, 2019

**CONFIDENTIAL**

Joshua I. Rothman

**T 212-218-2275**
**F 212.218.2200**
JRothman@venable.com

<u>**VIA EMAIL**</u>

Anil Patel
K&L Gates LLP
100 Main St., Suite 2550
Houston, TX 77002
713-815-7300
anil.patel@klgates.com

Re:     **Reply to January 3, 2019 Letter Regarding Litigation Settlement Agreement
between Amgen Inc. and Cipla Limited and Cipla USA, Inc.**

Dear Anil,

This is in response to your letter of January 3 ("Cipla's Letter") concerning the Litigation
Settlement Agreement dated February 26, 2018 between Amgen and Cipla ("Cipla Agreement").
Amgen disputes the allegations in your letter. As shown below, Amgen is in full compliance
with the Cipla Agreement and Cipla is not permitted to launch its Generic Cinacalcet Product
based on Watson's At Risk Launch.

As you know, Watson Launched its Generic Cinacalcet Product on December 27, 2018.[1] ███████

████████████████████████████████████████████████████ Therefore, █████

████████████████████████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

_____

█████████████████████████████          ████  █████████████

█████████████████████████████████

# VENABLE | Fitzpatrick

[REDACTED] In Cipla's Letter you assert that we "provide no details." [REDACTED]

We note that the Cipla Letter references publicly available information but fails to refer to both the Watson/Teva and Amgen Press Releases that make clear that the parties have entered into an agreement in which Watson has agreed to cease selling its product.[3] Those press releases provide sufficient details to confirm that Watson has agreed to cease selling its Generic Cinacalcet Product immediately.

As mentioned above, Watson's At Risk Launch on December 27, 2018 was not authorized and Amgen did not "allow" Watson to introduce a significant amount of product into the market. On the contrary, Amgen entered into a Settlement Agreement with Watson three business days after the launch of the product, thereby preventing Watson from continuing to sell its Generic Cinacalcet Product.

Cipla asks if Watson is required to take affirmative steps of removing Watson's product from the market. [REDACTED]

As for Cipla's second and third points, Amgen did not preauthorize Watson's launch. In fact, Amgen had no indication before December 27 that Watson's ANDA was ready to be approved and was not aware of Watson's launch, or possible launch until we received Cipla's letter suggesting a launch had occurred. This was demonstrated by our request for the evidence Cipla had to support its assertion that a launch had occurred. Based on the information we subsequently obtained, Amgen fully complied with the notice provisions of the Cipla Agreement.

Finally, Cipla's purported concerns over the validity and enforceability of the Watson Agreement have no merit. The Watson Agreement is valid and enforceable and, as with all

---

[2] Even if Cipla had already engaged in an at risk launch, [REDACTED]

---

[3] Watson/Teva's press release is available at https://www.businesswire.com/news/home/20190102005667/en/Teva-Amgen-Resolve-Ongoing-Dispute-Teva%E2%80%99s-Generic. Amgen's statement is available at https://wwwext.amgen.com/media/featured-news/2019/01/amgen-announced-today-that-it-has-resolved-its-ongoing-dispute-with-teva/.

# VENABLE | Fitzpatrick

agreements entered into between a brand and generic company, the Watson Agreement will be submitted to the government for review.

We decline to provide Cipla with the confidential Watson Agreement and invite Cipla's attention to the press releases from both Amgen and Watson/Teva as support for the fact that Watson has agreed to immediately cease selling its Generic Cinacalcet Product.

Please confirm immediately that Cipla has not and will not engage in an at risk launch based on Watson's At Risk Launch.  Otherwise, Amgen will seek all remedies available under the Cipla Agreement and under applicable law, including injunctive relief, breach of contract, treble damages, and sanctions.

Sincerely,

Joshua Rothman

cc (via email): Peter Giunta; Elizabeth J. Weiskopf; Michael Freno; Harold Storey; Jenna Bruce

# EXHIBIT 7

**30mg**

| Package Price | Effective |
|---|---|
| $806.70 | 1/12/2017 |
| $747.00 | 7/14/2016 |
| $691.50 | 1/14/2016 |
| $640.20 | 10/1/2015 |
| $592.80 | 5/1/2015 |
| $549.00 | 11/14/2014 |
| $518.10 | 6/6/2014 |
| $503.10 | 1/2/2014 |
| $465.90 | 7/19/2013 |
| $443.70 | 1/11/2013 |
| $427.80 | 7/12/2012 |

**60mg**

| Package Price | Effective |
|---|---|
| $1,613.40 | 1/12/2017 |
| $1,494.00 | 7/14/2016 |
| $1,383.00 | 1/14/2016 |
| $1,280.40 | 10/1/2015 |
| $1,185.60 | 5/1/2015 |
| $1,098.00 | 11/14/2014 |
| $1,036.20 | 6/6/2014 |
| $1,006.20 | 1/2/2014 |
| $931.80 | 7/19/2013 |
| $887.40 | 1/11/2013 |
| $855.60 | 7/12/2012 |

**90mg**

| Package Price | Effective |
|---|---|
| $2,420.10 | 1/12/2017 |
| $2,241.00 | 7/14/2016 |
| $2,074.50 | 1/14/2016 |
| $1,920.60 | 10/1/2015 |
| $1,778.40 | 5/1/2015 |
| $1,647.00 | 11/14/2014 |
| $1,554.30 | 6/6/2014 |
| $1,509.30 | 1/2/2014 |
| $1,397.70 | 7/19/2013 |
| $1,331.10 | 1/11/2013 |
| $1,283.40 | 7/12/2012 |