IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIPLA LTD. and CIPLA USA, INC.,

                    Plaintiff,

    vs.

AMGEN INC.,

                    Defendant.

Civil Action No. 19-44-LPS

**CONFIDENTIAL FILED UNDER SEAL**

## DECLARATION OF DAVID E. LANSKY

I, David E. Lansky, hereby declare as follows:

1.      My name is David E. Lansky. I am an associate of the firm Hughes Hubbard & Reed LLP, counsel for the Plaintiffs in the above-entitled action. I have personal knowledge of the matters stated in this declaration.

2.      Attached as Exhibit 1 is a true and correct copy of a document as produced by Amgen bearing Bates Number AM10788-0000001462.

3.      Attached as Exhibit 2 is a true and correct copy of a document as produced by Amgen bearing Bates Numbers AM10788-000000001-AM10788-0000000041.

4.      Attached as Exhibit 3 is a true and correct copy of a news report downloaded on February 25, 2019 from https://www.amgen.com/media/featured-news/2019/01/amgen-announced-today-that-it-has-resolved-its-ongoing-dispute-with-teva/ entitled "Resolution Announced for Ongoing Dispute Over Teva's Generic Cinacalcet Product."

5.      Attached as Exhibit 4 is a true and correct copy of a news release downloaded on January 9, 2019 from http://news.tevausa.com/phoenix.zhtml?c=251945&p=irol-newsArticle_print&ID=238194 entitled "Teva and Amgen Resolve Ongoing Dispute Over Teva's Generic Cinacalcet HCl Product."

6.      Attached as Exhibit 5 is a true and correct copy of a letter from Joshua Rothman to Anil Patel, dated January 4, 2019.

7.      Attached as Exhibit 6 is a true and correct copy of the Litigation Settlement Agreement, dated February 26, 2018, between Amgen Inc., Cipla Limited, and Cipla USA, Inc.

8.      Attached as Exhibit 7 are excerpts from the Form 10-K, accessed from the United States Securities and Exchange Commission website, for the fiscal year ended December 31, 2018 for Amgen Inc.

9.      Attached as Exhibit 8 are excerpts from the Form 10-K, accessed from the United States Securities and Exchange Commission website, for the fiscal year ended December 31, 2018 for Teva Pharmaceutical Industries Limited.


I, David E. Lansky, declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 25, 2019, in New York, New York.

David E. Lansky

# EXHIBIT 1

REDACTED

# EXHIBIT 2

REDACTED

# EXHIBIT 3

← → ⊕ | A https://www.amgen.com/media/featured-new 🔍 ▼ 🔒 ⟳ | A Resolution Announced for ... × | 🗋 | ⌂ ☆ ⚙

✕ 🔁Convert ▾ 🔲Select

🔍     INVESTORS ⬀    MEDIA    PARTNERS    CAREERS ⬀     🌐 ⊞

**ABOUT**     **SCIENCE**     **AMGEN**®     **PRODUCTS**     **RESPONSIBILITY**

# FEATURED NEWS

HOME /   MEDIA /   FEATURED NEWS /

RESOLUTION ANNOUNCED FOR ONGOING DISPUTE OVER TEVA'S GENERIC CINACALCET PRODUCT

## Resolution Announced for Ongoing Dispute Over Teva's Generic Cinacalcet Product

Amgen announced today that it has resolved its ongoing dispute with Teva (and its affiliates Watson and Barr) over Teva's generic cinacalcet product. Amgen and Teva have been involved in patent infringement litigation, and Teva recently received approval for its generic product in the United States and launched the product. By virtue of the settlement, the litigation between the parties will be ended and Teva has agreed to stop selling its generic product until its license date in mid-year 2021 or sooner depending on certain occurrences. Teva has agreed to pay Amgen an undisclosed amount as part of the settlement. That amount and other terms of the settlement remain confidential.

Amgen remains committed to supplying all the needs of patients in the United States with Sensipar®. Although most generic companies have settled the patent litigation, Amgen will continue to pursue its claims against the few remaining companies which have not settled.

| About | Science | Products |
|---|---|---|
| Overview | Overview | Overview |
| The Amgen Difference ⬀ | Research and Development Strategy | Medical Information ⬀ |
| Quick Facts | Pipeline ⬀ | Global Patient Safety |
| Mission and Values | Scientific Advisory Boards | Counterfeit Drug Statement |
| Leadership | Amgen Science ⬀ | Safety Data Sheets |
| Awards and Accolades | Clinical Trials | |
| How We Operate | Manufacturing | |
| Amgen History ⬀ | Biosimilars ⬀ | |

DOPLINPROM

# EXHIBIT 4



Print Page | Close Window

# News Release

## TEVA AND AMGEN RESOLVE ONGOING DISPUTE OVER TEVA'S GENERIC CINACALET HCL PRODUCT

PARSIPPANY, N.J.--(BUSINESS WIRE)--Jan. 2, 2019-- Teva Pharmaceutical Industries Ltd., (NYSE and TASE: TEVA) announced today that it has resolved its ongoing dispute with Amgen over Teva's generic cinacalcet HCl product. Teva and Amgen have been involved in patent infringement litigation, and Teva recently received approval for, and launched its generic product in the US.

By virtue of the settlement, the litigation between the parties will be ended and Teva has agreed to stop selling its generic product until its license date in mid-year 2021, or earlier under certain circumstances. Teva will pay Amgen an undisclosed amount as part of the settlement. That amount and other terms of the settlement remain confidential.

Cinacalcet is a calcium-sensing receptor agonist indicated for secondary hyperparathyroidism (HPT) in adult patients with chronic kidney disease on dialysis. It is also used for the treatment of hypercalcemia in adult patients with parathyroid carcinoma and severe hypercalcemia in adult patients with primary HPT who are unable to undergo parathyroidectomy.

### About Cinacalcet Hydrochloride Tablets

Cinacalcet hydrochloride tablets are indicated for the treatment of secondary hyperparathyroidism (HPT) in adult patients with chronic kidney disease (CKD) on dialysis. Important Limitations of Use: cinacalcet hydrochloride tablets are NOT indicated for use in patients with CKD who are not on dialysis because of an increased risk of hypocalcemia.

Cinacalcet hydrochloride tablets are indicated for the treatment of hypercalcemia in adult patients with Parathyroid Carcinoma.

Cinacalcet hydrochloride tablets are indicated for the treatment of severe hypercalcemia in adult patients with primary HPT who are unable to undergo parathyroidectomy.

### IMPORTANT SAFETY INFORMATION

**Contraindications:** Cinacalcet treatment initiation is contraindicated if serum calcium is less than the lower limit of the normal range.

**Hypocalcemia:** Cinacalcet lowers serum calcium and can lead to hypocalcemia. Significant lowering of serum calcium can cause paresthesias, myalgias, muscle spasms, tetany, seizures, QT interval prolongation and ventricular arrhythmia. Life threatening events and fatal outcomes associated with hypocalcemia have been reported in patients treated with cinacalcet, including in pediatric patients. The safety and effectiveness of cinacalcet have not been established in pediatric patients.

Decreases in serum calcium can prolong the QT interval, potentially resulting in ventricular arrhythmia. Cases of QT prolongation and ventricular arrhythmia have been reported in patients treated with cinacalcet. Patients with conditions that predispose to QT interval prolongation and ventricular arrhythmia may be at increased risk for QT interval prolongation and ventricular arrhythmias if they develop hypocalcemia due to cinacalcet. Closely monitor corrected serum calcium and QT interval in patients, at risk, receiving cinacalcet.

In clinical studies, seizures were observed in cinacalcet-treated patients. While the basis for the reported seizure rate is not clear, the threshold for seizures is lowered by significant reductions in serum calcium levels. Monitor serum calcium levels in patients with seizure disorders receiving cinacalcet.

Concurrent administration of cinacalcet with calcium-lowering drugs including other calcium-sensing receptor agonists could result in severe hypocalcemia. Closely monitor serum calcium in patients receiving cinacalcet and concomitant therapies known to lower serum calcium levels.

Patients with secondary HPT with CKD on dialysis: Serum calcium and serum phosphorus should be measured within 1 week and intact parathyroid hormone (iPTH) should be measured 1 to 4 weeks after initiation or dose adjustment of cinacalcet. Once the maintenance dose has been established, serum calcium should be measured approximately monthly.

Patients with primary HPT or parathyroid carcinoma: Serum calcium should be measured within 1 week after initiation or dose adjustment of cinacalcet. Once maintenance dose levels have been established, serum calcium should be measured every 2 months.

**Upper Gastrointestinal Bleeding:** Cases of gastrointestinal bleeding, mostly upper gastrointestinal bleeding, have occurred in patients using calcimimetics, including cinacalcet, from postmarketing and clinical trial sources. The exact cause of GI bleeding in these patients is unknown.

Patients with risk factors for upper GI bleeding (such as known gastritis, esophagitis, ulcers or severe vomiting) may be at increased risk for GI bleeding when receiving cinacalcet treatment. Monitor patients for worsening of common GI adverse reactions of nausea and vomiting associated with cinacalcet and for signs and symptoms of GI bleeding and ulcerations during cinacalcet therapy. Promptly evaluate and treat any suspected GI bleeding.

**Hypotension, Worsening Heart Failure and/or Arrhythmias:** In postmarketing safety surveillance, isolated, idiosyncratic cases of hypotension, worsening heart failure, and/or arrhythmia have been reported in patients with impaired cardiac function, in which a causal relationship to cinacalcet could not be completely excluded and which may be mediated by reductions in serum calcium levels.

**Adynamic Bone Disease:** Adynamic bone disease may develop if iPTH levels are suppressed below 100 pg/mL.

**Drug Interactions with Strong CYP3A4 Inhibitors:** Cinacalcet is partially metabolized by CYP3A4. Dose adjustment of cinacalcet may be required if a patient initiates or discontinues therapy with a strong CYP3A4 inhibitor (e.g., ketoconazole, itraconazole). The iPTH and serum calcium concentrations should be closely monitored in these patients.

**Drug Interactions with CYP2D6 Substrates:** Cinacalcet is a strong inhibitor of CYP2D6. Dose adjustments may be required for concomitant medications that are predominantly metabolized by CYP2D6 (e.g., desipramine, metoprolol, and carvedilol) and particularly those with a narrow therapeutic index (e.g., flecainide and most tricyclic antidepressants).

**Common Adverse Reactions:** The most common adverse reactions (i.e., incidence ≥25%) associated with cinacalcet were nausea and vomiting.

Please see accompanying Full Prescribing Information.

For more information, please see accompanying Full Prescribing Information, including Boxed Warning. A copy may be requested from Teva US Medical Information at 888-4-TEVA-USA (888-838-2872) or druginfo@tevapharm.com, or Teva's Public Relations or Investor Relations contacts.

## About Teva

Teva Pharmaceutical Industries Ltd. (NYSE and TASE: TEVA) is a global leader in generic medicines, with innovative treatments in select areas, including CNS, pain and respiratory. We deliver high-quality generic products and medicines in nearly every therapeutic area to address unmet patient needs. We have an established presence in generics, specialty, OTC and API, building on more than a century-old legacy, with a fully integrated R&D function, strong operational base and global infrastructure and scale. We strive to act in a socially and environmentally responsible way. Headquartered in Israel, with production and research facilities around the globe, we employ 45,000 professionals, committed to improving the lives of millions of patients. Learn more at www.tevapharm.com.

Cautionary Note Regarding Forward-Looking Statements

This press release contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995 regarding Teva's generic version of Sensipar[®1], which are based on management's current beliefs and expectations and are subject to substantial risks and uncertainties, both known and unknown, that could cause our future results, performance or achievements to differ significantly from that expressed or implied by such forward-looking statements. Important factors that could cause or contribute to such differences include risks relating to:

- The uncertainty of the commercial success of our generic version of cinacalcet HCl.

- our ability to successfully compete in the marketplace, including: that we are substantially dependent on our generic products; competition for our specialty products, especially COPAXONE®, our leading medicine, which faces competition from existing and potential additional generic versions and orally-administered alternatives; competition from companies with greater resources and capabilities; efforts of pharmaceutical companies to limit the use of generics including through legislation and regulations; consolidation of our customer base and commercial alliances among our customers; the increase in the number of competitors targeting generic opportunities and seeking U.S. market exclusivity for generic versions of significant products; price erosion relating to our products, both from competing products and increased regulation; delays in launches of new products and our ability to achieve expected results from investments in our product pipeline; our ability to take advantage of high-value opportunities; the difficulty and expense of obtaining licenses to proprietary technologies; and the effectiveness of our patents and other measures to protect our intellectual property rights;

- our substantially increased indebtedness and significantly decreased cash on hand, which may limit our ability to incur additional indebtedness, engage in additional transactions or make new investments, and may result in a further downgrade of our credit ratings; and our inability to raise debt or borrow funds in amounts or on terms that are favorable to us;

- our business and operations in general, including: failure to effectively execute the restructuring plan announced in December 2017; uncertainties related to, and failure to achieve, the potential benefits and success of our new senior management team and

organizational structure; harm to our pipeline of future products due to the ongoing review of our R&D programs; our ability to develop and commercialize additional pharmaceutical products; potential additional adverse consequences following our resolution with the U.S. government of our FCPA investigation; compliance with sanctions and other trade control laws; manufacturing or quality control problems, which may damage our reputation for quality production and require costly remediation; interruptions in our supply chain; disruptions of our or third party information technology systems or breaches of our data security; the failure to recruit or retain key personnel; variations in intellectual property laws that may adversely affect our ability to manufacture our products; challenges associated with conducting business globally, including adverse effects of political or economic instability, major hostilities or terrorism; significant sales to a limited number of customers in our U.S. market; our ability to successfully bid for suitable acquisition targets or licensing opportunities, or to consummate and integrate acquisitions; and our prospects and opportunities for growth if we sell assets;

- compliance, regulatory and litigation matters, including: costs and delays resulting from the extensive governmental regulation to which we are subject; the effects of reforms in healthcare regulation and reductions in pharmaceutical pricing, reimbursement and coverage; governmental investigations into sales and marketing practices; potential liability for patent infringement; product liability claims; increased government scrutiny of our patent settlement agreements; failure to comply with complex Medicare and Medicaid reporting and payment obligations; and environmental risks;

- other financial and economic risks, including: our exposure to currency fluctuations and restrictions as well as credit risks; potential impairments of our intangible assets; potential significant increases in tax liabilities; and the effect on our overall effective tax rate of the termination or expiration of governmental programs or tax benefits, or of a change in our business;

- and other factors discussed in our Annual Report on Form 10-K for the year ended December 31, 2017, including in the section captioned "Risk Factors," and in our other filings with the U.S. Securities and Exchange Commission, which are available at www.sec.gov and www.tevapharm.com. Forward-looking statements speak only as of the date on which they are made, and we assume no obligation to update or revise any forward-looking statements or other information contained herein, whether as a result of new information, future events or otherwise. You are cautioned not to put undue reliance on these forward-looking statements.

[1] Sensipar® is a registered trademark of Amgen, Inc.

View source version on businesswire.com:
https://www.businesswire.com/news/home/20190102005667/en/

Source: Teva Pharmaceutical Industries Ltd.

IR Contacts
United States
Kevin C. Mannix
(215) 591-8912

Israel
Ran Meir
(215) 591-3033

Case 1:19-cv-00044-LPS   Document 145   Filed 03/13/19   Page 14 of 34 PageID #: 4144

PR Contacts
United States
Kelley Dougherty
(973) 658-0237

Elizabeth DeLuca
(267) 468-4329

Israel
Yonatan Beker
972 (54) 888 5898

# EXHIBIT 5

# VENABLE | Fitzpatrick

VENABLE LLP | 1290 AVENUE OF THE AMERICAS
20TH FLOOR | NEW YORK, NY 10104
T +1 212.218.2100  F +1 212.218.2200  Venable.com

January 4, 2019

**CONFIDENTIAL**

<u>**VIA EMAIL**</u>

Joshua I. Rothman

**T 212-218-2275**
**F 212.218.2200**
JRothman@venable.com

Anil Patel
K&L Gates LLP
100 Main St., Suite 2550
Houston, TX 77002
713-815-7300
anil.patel@klgates.com

Re:   **Reply to January 3, 2019 Letter Regarding Litigation Settlement Agreement
        between Amgen Inc. and Cipla Limited and Cipla USA, Inc.**

Dear Anil,

This is in response to your letter of January 3 ("Cipla's Letter") concerning the Litigation
Settlement Agreement dated February 26, 2018 between Amgen and Cipla ("Cipla Agreement").
Amgen disputes the allegations in your letter.  As shown below, Amgen is in full compliance
with the Cipla Agreement and Cipla is not permitted to launch its Generic Cinacalcet Product
based on Watson's At Risk Launch.

As you know, Watson Launched its Generic Cinacalcet Product on December 27, 2018.[1]

Therefore,

# VENABLE | Fitzpatrick

██████████████████████████████████████████████

████████                    ████  In Cipla's Letter you assert that we
"provide no details." ████
██████████████████████████████████████████ .

We note that the Cipla Letter references publicly available information but fails to refer to both the Watson/Teva and Amgen Press Releases that make clear that the parties have entered into an agreement in which Watson has agreed to cease selling its product.[3]  Those press releases provide sufficient details to confirm that Watson has agreed to cease selling its Generic Cinacalcet Product immediately.

As mentioned above, Watson's At Risk Launch on December 27, 2018 was not authorized and Amgen did not "allow" Watson to introduce a significant amount of product into the market.  On the contrary, Amgen entered into a Settlement Agreement with Watson three business days after the launch of the product, thereby preventing Watson from continuing to sell its Generic Cinacalcet Product.

Cipla asks if Watson is required to take affirmative steps of removing Watson's product from the market. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████

As for Cipla's second and third points, Amgen did not preauthorize Watson's launch.  In fact, Amgen had no indication before December 27 that Watson's ANDA was ready to be approved and was not aware of Watson's launch, or possible launch until we received Cipla's letter suggesting a launch had occurred.  This was demonstrated by our request for the evidence Cipla had to support its assertion that a launch had occurred.  Based on the information we subsequently obtained, Amgen fully complied with the notice provisions of the Cipla Agreement.

Finally, Cipla's purported concerns over the validity and enforceability of the Watson Agreement have no merit.  The Watson Agreement is valid and enforceable and, as with all

---

[2] Even if Cipla had already engaged in an at risk launch, ██████████████████████
████████████

---

[3] Watson/Teva's press release is available at https://www.businesswire.com/news/home/20190102005667/en/Teva-Amgen-Resolve-Ongoing-Dispute-Teva%E2%80%99s-Generic.  Amgen's statement is available at https://wwwext.amgen.com/media/featured-news/2019/01/amgen-announced-today-that-it-has-resolved-its-ongoing-dispute-with-teva/.

# VENABLE | Fitzpatrick

agreements entered into between a brand and generic company, the Watson Agreement will be submitted to the government for review.

We decline to provide Cipla with the confidential Watson Agreement and invite Cipla's attention to the press releases from both Amgen and Watson/Teva as support for the fact that Watson has agreed to immediately cease selling its Generic Cinacalcet Product.

Please confirm immediately that Cipla has not and will not engage in an at risk launch based on Watson's At Risk Launch.  Otherwise, Amgen will seek all remedies available under the Cipla Agreement and under applicable law, including injunctive relief, breach of contract, treble damages, and sanctions.

Sincerely,

Joshua Rothman

cc (via email): Peter Giunta; Elizabeth J. Weiskopf; Michael Freno; Harold Storey; Jenna Bruce

# EXHIBIT 6

REDACTED

# EXHIBIT 7

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# Form 10-K

**(Mark One)**

☒  **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2018

or

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Commission file number 001-37702

# Amgen Inc.

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **95-3540776** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **One Amgen Center Drive,** | **91320-1799** |
| **Thousand Oaks, California** | (Zip Code) |
| (Address of principal executive offices) | |

**(805) 447-1000**
(Registrant's telephone number, including area code)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common stock, $0.0001 par value | The NASDAQ Global Select Market |

**Securities registered pursuant to Section 12(g) of the Act: None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or Section 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files).   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | Accelerated filer | Non-accelerated filer | | |
|---|---|---|---|---|
| ☒ | ☐ | ☐ | Smaller reporting company ☐ | Emerging growth company ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act)   Yes ☐   No ☒

The approximate aggregate market value of voting and non-voting stock held by non-affiliates of the registrant was $119,629,312,769 as of June 30, 2018.[(A)]

(A)   Excludes 884,143 shares of common stock held by directors and executive officers, and any stockholders whose ownership exceeds ten percent of the shares outstanding, at June 30, 2018. Exclusion of shares held by any person should not be construed to indicate that such person possesses the power, directly or indirectly, to direct or cause the direction of the management or policies of the registrant, or that such person is controlled by or under common control with the registrant.

**622,278,034**
(Number of shares of common stock outstanding as of February 7, 2019)

### DOCUMENTS INCORPORATED BY REFERENCE

Specified portions of the registrant's Proxy Statement with respect to the 2019 Annual Meeting of Stockholders to be held May 21, 2019, are incorporated by reference into Part III of this annual report.

**INDEX**

| | | Page No. |
|---|---|---|
| **PART I** | | 1 |
| Item 1. | BUSINESS | 1 |
| | Significant Developments | 1 |
| | Marketing, Distribution and Selected Marketed Products | 3 |
| | Reimbursement | 9 |
| | Manufacturing, Distribution and Raw Materials | 11 |
| | Government Regulation | 12 |
| | Research and Development and Selected Product Candidates | 15 |
| | Business Relationships | 19 |
| | Human Resources | 20 |
| | Executive Officers of the Registrant | 21 |
| | Geographic Area Financial Information | 22 |
| | Investor Information | 22 |
| Item 1A. | RISK FACTORS | 22 |
| Item 1B. | UNRESOLVED STAFF COMMENTS | 38 |
| Item 2. | PROPERTIES | 39 |
| Item 3. | LEGAL PROCEEDINGS | 39 |
| Item 4. | MINE SAFETY DISCLOSURES | 39 |
| **PART II** | | 40 |
| Item 5. | MARKET FOR REGISTRANT'S COMMON EQUITY, RELATED STOCKHOLDER MATTERS AND ISSUER PURCHASES OF EQUITY SECURITIES | 40 |
| Item 6. | SELECTED FINANCIAL DATA | 42 |
| Item 7. | MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS | 43 |
| Item 7A. | QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK | 60 |
| Item 8. | FINANCIAL STATEMENTS AND SUPPLEMENTARY DATA | 62 |
| Item 9. | CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE | 62 |
| Item 9A. | CONTROLS AND PROCEDURES | 62 |
| Item 9B. | OTHER INFORMATION | 64 |
| **PART III** | | 65 |
| Item 10. | DIRECTORS, EXECUTIVE OFFICERS AND CORPORATE GOVERNANCE | 65 |
| Item 11. | EXECUTIVE COMPENSATION | 65 |
| Item 12. | SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS | 66 |
| Item 13. | CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS AND DIRECTOR INDEPENDENCE | 67 |
| Item 14. | PRINCIPAL ACCOUNTING FEES AND SERVICES | 67 |
| **PART IV** | | 68 |
| Item 15. | EXHIBITS, FINANCIAL STATEMENT SCHEDULES | 68 |
| Item 16. | FORM 10-K SUMMARY | 72 |
| SIGNATURES | | 73 |

i

Aranesp® faces competition from a long-acting product. Aranesp® also faces competition from a biosimilar version of EPOGEN®, which was approved in the second quarter of 2018 and launched in the fourth quarter of 2018. Other biosimilar versions of EPOGEN® may also receive approval. In 2019, we expect sales in the United States to decline at a faster rate than 2018 due to short- and long- acting competition.

*XGEVA®*

Total XGEVA® sales by geographic region were as follows (dollar amounts in millions):

| | Year ended December 31, 2018 | Change | Year ended December 31, 2017 | Change | Year ended December 31, 2016 |
|---|---|---|---|---|---|
| XGEVA® — U.S. | $ 1,338 | 16% | $ 1,157 | 4% | $ 1,115 |
| XGEVA® — ROW | 448 | 7% | 418 | 1% | 414 |
| Total XGEVA® | $ 1,786 | 13% | $ 1,575 | 3% | $ 1,529 |

The increases in global XGEVA® sales for 2018 and 2017 were driven primarily by higher unit demand.

*Sensipar®/Mimpara®*

Total Sensipar®/Mimpara® sales by geographic region were as follows (dollar amounts in millions):

| | Year ended December 31, 2018 | Change | Year ended December 31, 2017 | Change | Year ended December 31, 2016 |
|---|---|---|---|---|---|
| Sensipar® — U.S. | $ 1,436 | 5 % | $ 1,374 | 11% | $ 1,240 |
| Sensipar®/Mimpara® — ROW | 338 | (2)% | 344 | 1% | 342 |
| Total Sensipar®/Mimpara® | $ 1,774 | 3 % | $ 1,718 | 9% | $ 1,582 |

The increase in global Sensipar®/Mimpara® sales for 2018 was driven primarily by an increase in net selling price in the United States, offset partially by lower unit demand.

The increase in global Sensipar®/Mimpara® sales for 2017 was driven primarily by an increase in net selling price in the United States and, to a lesser extent, higher unit demand.

Our U.S. composition of matter patent related to Sensipar®, a small molecule, expired in March 2018. We are involved in patent litigation with a number of companies seeking to market generic versions of Sensipar®, one of which began selling its generic version in late December 2018 until reaching a settlement agreement with us in early January 2019. In a separate litigation, we have been sued by the manufacturer of another approved generic version of Sensipar® who is contending that provisions of its own settlement agreement with Amgen have been triggered by the first manufacturer's at-risk launch, giving this second manufacturer a right to market its own generic version under its settlement agreement. See Part IV—Note 20, Contingencies and commitments, to the Consolidated Financial Statements.

In 2019, we expect Sensipar® sales will be lower than 2018 due to the temporary generic market entry, continued adoption of Parsabiv® and higher purchases in 2018 due to the reimbursement change from Medicare Part D to Part B. Further, generic competitors may enter the market at risk at any time.

*EPOGEN®*

Total EPOGEN® sales were as follows (dollar amounts in millions):

| | Year ended December 31, 2018 | Change | Year ended December 31, 2017 | Change | Year ended December 31, 2016 |
|---|---|---|---|---|---|
| EPOGEN® — U.S. | $ 1,010 | (8)% | $ 1,096 | (15)% | $ 1,282 |

The decrease in EPOGEN® sales for 2018 was driven primarily by a decline in net selling price due to contractual terms negotiated with DaVita (see Part I, Item I. Business—Business Relationships). In 2019, we expect a more significant decline in net selling price.

**20. Contingencies and commitments**

*Contingencies*

In the ordinary course of business, we are involved in various legal proceedings, government investigations and other matters that are complex in nature and have outcomes that are difficult to predict. See Part I, Item 1A. Risk Factors—*Our business may be affected by litigation and government investigations.* We describe our legal proceedings and other matters that are significant or that we believe could become significant in this footnote.

We record accruals for loss contingencies to the extent that we conclude it is probable that a liability has been incurred and the amount of the related loss can be reasonably estimated. We evaluate, on a quarterly basis, developments in legal proceedings and other matters that could cause an increase or decrease in the amount of the liability that has been accrued previously.

Our legal proceedings involve various aspects of our business and a variety of claims, some of which present novel factual allegations and/or unique legal theories. In each of the matters described in this filing in which we could incur a liability, our opponents seek an award of a not-yet-quantified amount of damages or an amount that is not material. In addition, a number of the matters pending against us are at very early stages of the legal process, which in complex proceedings of the sort we face often extend for several years. As a result, none of the matters described in this filing in which we could incur a liability have progressed sufficiently through discovery and/or the development of important factual information and legal issues to enable us to estimate a range of possible loss, if any, or such amounts are not material. In addition, while some of the matters described in this filing do not present circumstances in which we could incur a liability (such as some matters involving our claims that others have infringed our patents and in which such others have not asserted counterclaims against us), such matters nevertheless have the potential to significantly impact our business. While it is not possible to accurately predict or determine the eventual outcomes of these matters, an adverse determination in one or more of these matters currently pending could have a material adverse effect on our consolidated results of operations, financial position or cash flows.

Certain recent developments concerning our legal proceedings and other matters are discussed below:

*Sensipar® (cinacalcet) Abbreviated New Drug Application (ANDA) Patent Litigation*

*Amgen Inc. v. Aurobindo Pharma Ltd. et al.*

Beginning in September 2016, Amgen filed 14 separate lawsuits in the U.S. District Court for the District of Delaware (the Delaware District Court) for infringement of our U.S. Patent No. 9,375,405 (the '405 Patent) against a number of manufacturers of purported generic versions of our Sensipar® product. In February 2017, the Delaware District Court consolidated these 14 lawsuits into a single case, *Amgen Inc. v. Aurobindo Pharma Ltd. et al.* The '405 Patent is entitled "Rapid Dissolution Formulation of a Calcium Receptor-Active Compound" and expires in 2026. All defendants responding to the complaint denied infringement and sought judgment that the '405 Patent is invalid and/or not infringed. Between September and November of 2017, Amgen filed, and the Delaware District Court signed, stipulated dismissals of the lawsuit against Micro Labs Ltd. and Micro Labs USA, Inc., and the lawsuit against Apotex Inc. and Apotex Corp. (collectively, Apotex), as well as consent judgments filed by Amgen and each of (1) Sun Pharma Global FZE, Sun Pharmaceutical Industries, Ltd. and Sun Pharmaceutical Industries, Inc. (collectively, Sun), (2) Ajanta Pharma Limited and Ajanta Pharma USA, Inc., (3) Hetero USA Inc., Hetero Labs Ltd. and Hetero Labs Ltd. Unit V and (4) Breckenridge Pharmaceutical, Inc. (Breckenridge). Each consent judgment stipulated to an entry of judgment of infringement and validity of the '405 Patent and an injunction prohibiting the manufacture, use, sale, offer to sell, importation of, or distribution into the United States of the respective defendant's cinacalcet product during the term of the '405 Patent unless specifically authorized pursuant to the confidential settlement agreement.

In June 2017, Amgen filed four additional lawsuits in the Delaware District Court for infringement of the '405 Patent against additional defendants. These defendants also responded to the complaint denying infringement and seeking a declaration of noninfringement and invalidity of the '405 Patent. One of these lawsuits was subsequently consolidated into *Amgen Inc. v. Aurobindo Pharma Ltd. et al.* and the remaining three of these lawsuits were consolidated into a separate single case, *Amgen Inc. v. Alkem et al.* (see below).

On March 5, 2018, the Delaware District Court commenced trial on the infringement claims and defenses in the *Amgen Inc. v. Aurobindo Pharma Ltd. et al.* consolidated lawsuit against the defendants that remained in the lawsuit, collectively consisting of (1) Aurobindo Pharma Ltd. and Aurobindo Pharma USA, Inc. (collectively, Aurobindo), (2) Watson Laboratories, Inc. and Actavis Pharma, Inc. (collectively, Watson), (3) Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals of New York, LLC and Amneal Pharmaceuticals Co. India Private Limited, (4) Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd. (collectively, Zydus) and (5) Piramal Healthcare UK Limited (Piramal).

Just prior to trial, the Delaware District Court signed consent judgments filed by Amgen and each of Cipla Limited and Cipla USA, Inc. (collectively, Cipla) and Strides Pharma Global PTE Limited and Strides Pharma, Inc. (collectively, Strides), and in

March 2018 the Delaware District Court signed a consent judgment filed by Amgen and Aurobindo. In each consent judgment, the parties stipulated to an entry of judgment of infringement and validity of the '405 Patent and an injunction prohibiting the manufacture, use, sale, offer to sell, importation of, or distribution into the United States of the applicable defendant's cinacalcet product during the term of the '405 Patent unless specifically authorized pursuant to the applicable confidential settlement agreement. Just prior to trial, the Delaware District Court also entered orders dismissing each of Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. (collectively, Dr. Reddy's), and Mylan Pharmaceuticals Inc. and Mylan Inc. (collectively, Mylan), on stipulations between Amgen and such parties, respectively, subject to the terms of confidential settlement agreements.

On July 27, 2018, the Delaware District Court issued a trial order finding on the infringement claims and defenses in the *Amgen Inc. v. Aurobindo Pharma Ltd. et al.* consolidated lawsuit that Zydus infringes the '405 Patent and that Amneal Pharmaceuticals LLC and Amneal Pharmaceuticals of New York, LLC (collectively, Amneal), Piramal and Watson do not infringe the '405 Patent. On August 24, 2018, the Delaware District Court issued an order dismissing, without prejudice, the invalidity counterclaims of Amneal, Piramal and Watson and entered judgment of noninfringement of the '405 Patent in favor of Amneal, Piramal and Watson. On September 20, 2018, Amgen filed a notice of appeal to the Federal Circuit Court. On October 9, 2018, the Delaware District Court dismissed, without prejudice, the invalidity counterclaims of Zydus and entered judgment of infringement of the '405 Patent by Zydus in favor of Amgen, including an order that the effective date of the U.S. Food and Drug Administration (FDA) approval of Zydus' generic version of Sensipar® shall be no earlier than the expiry date of our '405 Patent. On October 11, 2018, Zydus filed a notice of appeal to the U.S. Court of Appeals for the Federal Circuit (the Federal Circuit Court) and on October 24, 2018, the Federal Circuit Court consolidated the appeals of Zydus and Amgen.

In December 2018, the FDA approved Watson's generic version of Sensipar® and Watson's parent company, Teva Pharmaceutical Industries Ltd. (Teva), began selling its product at-risk notwithstanding that the appeals were pending at the Federal Circuit Court. On January 2, 2019, Amgen, Watson and Teva entered into a settlement agreement in which Teva agreed to stop selling its generic product until the mid-year 2021, or earlier under certain circumstances, and to pay Amgen an undisclosed amount. On January 9, 2019, Watson and Amgen filed a motion asking the Delaware District Court to vacate its final judgment of noninfringement as to Watson and to enter a proposed consent judgment of infringement and validity of the '405 Patent and an injunction prohibiting the making, having made, using, selling, offering to sell, or distributing Watson's cinacalcet product in the United States, or importing Watson's cinacalcet product into the United States, consistent with the confidential settlement agreement. On January 11, 2019, the Federal Circuit Court stayed the pending appeal as to Watson in order for the Delaware District Court to rule on the motion of Watson and Amgen. On January 18, 2019 and January 23, 2019, respectively, Cipla and Sun filed oppositions to the motion of Watson and Amgen.

On January 8, 2019, Cipla filed a separate lawsuit in the Delaware District Court against Amgen seeking a declaration that provisions of its settlement agreement with Amgen have been triggered by Teva's at-risk launch of Watson's generic version of Sensipar ®, giving Cipla a right to market its own generic version under its settlement agreement. Cipla's complaint also alleges antitrust violations by Amgen. The portions of the complaint covering Cipla's settlement agreement were filed with the court under seal and remain confidential.

*Amgen Inc. v. Alkem et al.*

As stated above, Amgen filed four lawsuits in June 2017 for infringement of the '405 Patent. In December 2017, the lawsuits filed against (1) Alkem Laboratories Ltd. (Alkem), (2) Lupin Ltd. and Lupin Pharmaceuticals, Inc. (collectively, Lupin) and (3) Macleods Pharmaceuticals Ltd. and Macleods Pharma USA, Inc. (collectively, Macleods) were consolidated into a separate single case, *Amgen Inc. v. Alkem et al.* In each of those three lawsuits, all defendants responded to the complaint denying infringement and seeking a declaration of noninfringement and invalidity of the '405 Patent; Macleods' response also included a counterclaim alleging sham litigation in violation of the Sherman Antitrust Act, which Amgen has denied and which the Delaware District Court stayed pending resolution of the patent claims.

In March 2018, the Delaware District Court signed a consent judgment filed by Amgen and Macleods in which the parties stipulated to an entry of judgment of infringement and validity of the '405 Patent and an injunction prohibiting the manufacture, use, sale, offer to sell, importation of, or distribution into the United States of Macleods' cinacalcet product during the term of the '405 Patent unless specifically authorized pursuant to the confidential settlement agreement. In April 2018, the Delaware District Court also entered orders respectively dismissing Lupin and Alkem on stipulations between the parties, subject to the terms of confidential settlement agreements.

*Other Sensipar® ANDA Patent Litigation*

In December 2017, Amgen filed four additional lawsuits in the Delaware District Court for infringement of the '405 Patent against (1) Watson, (2) Teva Pharmaceuticals, USA, Inc., (3) Barr Laboratories, Inc. and (4) Torrent Pharma Inc. and Torrent Pharmaceuticals Ltd. These lawsuits were distinct from the suits consolidated into *Amgen Inc. v. Aurobindo Pharma Ltd. et al.*, and all four additional suits were subsequently dismissed by agreement between Amgen and the respective defendants.

F-43

In June 2018, Amgen filed a lawsuit in the Delaware District Court against Accord Healthcare, Inc. (Accord) and Intas Pharmaceuticals Ltd. (Intas) for infringement of the '405 Patent. Amgen seeks an order making any FDA approval of these defendants' generic version of Sensipar ® effective no earlier than the expiration of the '405 Patent. On September 18, 2018, Accord denied infringement of the '405 Patent and alleged that the patent is invalid. On September 20, 2018, Intas was dismissed from the Delaware District Court lawsuit without prejudice by joint stipulation of the parties. On February 1, 2019, Accord filed a motion for summary judgment of noninfringement. Trial is scheduled to begin June 15, 2020.

On September 7, 2018, Amgen filed a lawsuit in the Delaware District Court for infringement of the '405 Patent against Emcure Pharmaceuticals Ltd., Heritage Pharmaceuticals Inc. and Heritage Pharma Labs Inc. In December 2018, the Delaware District Court entered an order dismissing all defendants on a stipulation between the parties, subject to the terms of a confidential settlement agreement.

*KYPROLIS® (carfilzomib) ANDA Patent Litigation*

Beginning in October 2016, our subsidiary Onyx Therapeutics, Inc. (Onyx Therapeutics), filed four separate lawsuits in the Delaware District Court against: (1) Cipla, (2) Sagent Pharmaceuticals, Inc. (Sagent), (3) Breckenridge and (4) Fresenius Kabi, USA LLC, Fresenius Kabi USA, Inc., Fresenius Pharmaceuticals Holding, Inc. and Fresenius Kabi Oncology Limited, each for infringing U.S. Patent Nos. 7,232,818 (the '818 Patent), 7,417,042 (the '042 Patent), 7,491,704 (the '704 Patent), 7,737,112 (the '112 Patent), 8,129,346 (the '346 Patent), 8,207,125 (the '125 Patent), 8,207,126 (the '126 Patent), 8,207,127 (the '127 Patent) and 8,207,297 (the '297 Patent). By joint stipulation of the parties, Fresenius Pharmaceuticals Holding, Inc. and Fresenius Kabi Oncology Limited were subsequently dismissed from the lawsuit against them. In October and November 2016, Onyx Therapeutics also filed four separate lawsuits in the Delaware District Court against: (1) MSN Laboratories Private Limited and MSN Pharmaceuticals, Inc. (collectively, MSN), (2) Dr. Reddy's, (3) Qilu Pharma, Inc. and Qilu Pharmaceutical Co. Ltd. (collectively, Qilu) and (4) Apotex, each for infringing the '112 Patent; and a separate lawsuit against InnoPharma, Inc. (InnoPharma) for infringement of the '042, '112 and '297 Patents. In April 2017, Onyx Therapeutics filed a separate lawsuit in the Delaware District Court against Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd. for infringement of the '818, '042, '704, '112, '346, '125, '126, '127 and '297 Patents. The Delaware District Court has consolidated these ten lawsuits for purposes of discovery into a single case, *Onyx Therapeutics, Inc. v. Cipla Limited., et al.*

In August 2017, Onyx Therapeutics filed additional lawsuits in the Delaware District Court against InnoPharma for infringement of the '818, '704, '346, '125, '126 and '127 Patents; and against Apotex and Qilu for infringement of the '818, '042, '704, '346, '125, '126, '127 and '297 Patents. On September 14, 2017, the Delaware District Court consolidated these three additional lawsuits for purposes of discovery into the existing consolidated case.

In September 2017, by joint stipulation of the parties, Teva Pharmaceutical Industries Ltd. was dismissed from the suit against it, leaving Teva Pharmaceuticals USA, Inc., as the remaining defendant in that litigation.

In November 2017, Onyx Therapeutics filed a lawsuit in the Delaware District Court against Aurobindo Pharma USA, Inc. (Aurobindo) for infringement of the '818, '042, '704, '112, '346, '125, '126, '127 and '297 Patents. In December 2017, Onyx Therapeutics filed additional lawsuits in the Delaware District Court against Dr. Reddy's for infringement of the '818, '042, '704, '346, '125, '126, '127 and '297 Patents, and against MSN for infringement of the '112 Patent. In January 2018, Onyx Therapeutics filed a lawsuit in the Delaware District Court against Apotex for infringement of the '818, '042, '704, '112, '346, '125, '126, '127 and '297 Patents.

In February 2018, Qilu and Teva Pharmaceuticals USA, Inc. were each dismissed from the applicable lawsuits by joint stipulation of the parties. On February 7, 2018, the Delaware District Court also consolidated for purposes of discovery the lawsuit against Aurobindo into the existing consolidated case, *Onyx Therapeutics, Inc. v. Cipla Limited, et al.* On March 20, 2018, the Delaware District Court entered a stipulation between the parties providing Aurobindo a covenant not to sue on the '818,'704,'346 and '297 Patents.

On February 15, 2018, Onyx Therapeutics filed a lawsuit in the Delaware District Court against Breckenridge for patent infringement, and subsequently amended the complaint on March 9, 2018 to assert infringement of the '042, '112, '125, '126 and '127 Patents. On April 20, 2018, Onyx Therapeutics filed a lawsuit in the Delaware District Court against Cipla for patent infringement of the '042, '112, '125, '126 and '127 Patents.

The lawsuits filed between 2016-2018 are based on ANDAs that seek approval to market generic versions of KYPROLIS® before expiration of the asserted patent or patents. In each lawsuit, Onyx Therapeutics seeks an order of the Delaware District Court making any FDA approval of the respective defendant's ANDA effective no earlier than the expiration of the applicable patents. Responses to the complaints have been filed by all defendants alleging invalidity and, in certain instances, noninfringement of the patents.

F-44

# EXHIBIT 8

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

## FORM 10-K

---

(Mark One)

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2018**

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from              to**

**Commission file number 001-16174**

# TEVA PHARMACEUTICAL INDUSTRIES LIMITED
### (Exact name of registrant as specified in its charter)

---

| **Israel** | **Not Applicable** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**5 Basel Street, Petach Tikva, ISRAEL, 4951033**
**(Address of principal executive offices and Zip Code)**

**+972 (3) 914-8171**
**(Registrant's telephone number, including area code)**

---

**Securities registered pursuant to Section 12(b) of the Act:**

| **American Depositary Shares, each representing one Ordinary Share** | **New York Stock Exchange** |
|---|---|
| (Title of each class) | (Name of each exchange on which registered) |

**Securities registered pursuant to Section 12(g) of the Act:**

**None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files.)   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.   ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

The aggregate market value of the voting common equity held by non-affiliates of the registrant, computed by reference to the closing price at which the American Depositary Shares were last sold on the New York Stock Exchange, as of the last business day of the registrant's most recently completed second fiscal quarter (June 30, 2018), was approximately $20.7 billion. Teva Pharmaceutical Industries Limited has no non-voting common equity. For purpose of this calculation only, this amount excludes ordinary shares and American Depositary Shares held by directors and executive officers and by each person who owns or may be deemed to own 10% or more of the registrant's common equity at June 30, 2018.

As of December 31, 2018, the registrant had 1,089,388,686 ordinary shares outstanding.

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| Introduction and Use of Certain Terms | | 1 |
| Forward-Looking Statements | | 1 |
| **PART I** | | |
| Item 1. | Business | 2 |
| Item 1A. | Risk Factors | 25 |
| Item 1B. | Unresolved Staff Comments | 49 |
| Item 2. | Properties | 49 |
| Item 3. | Legal Proceedings | 50 |
| Item 4. | Mine Safety Disclosures | 50 |
| **PART II** | | |
| Item 5. | Market for the Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 50 |
| Item 6. | Selected Financial Data | 53 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 55 |
| Item 7A. | Quantitative and Qualitative Disclosures about Market Risk | 92 |
| Item 8. | Financial Statements and Supplementary Data | 95 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 179 |
| Item 9A. | Controls And Procedures | 179 |
| Item 9B. | Other Information | 180 |
| **PART III** | | |
| Item 10. | Directors, Executive Officers and Corporate Governance | 180 |
| Item 11. | Executive Compensation | 180 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 180 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 180 |
| Item 14. | Principal Accounting Fees and Services | 181 |
| **PART IV** | | |
| Item 15. | Exhibits, Financial Statement Schedules | 181 |
| Item 16. | Form 10-K Summary | 189 |

Table of Contents

**QVAR** revenues in our North America segment in 2018 decreased by 42% to $182 million, compared to 2017. The decrease in sales in 2018 was mainly due to lower volumes in connection with the launch of QVAR ® RediHaler™ and lower net pricing. QVAR maintained its second-place position in the inhaled corticosteroids category in the United States, with an exit market share of 21.5% in terms of total number of prescriptions during 2018, compared to 35.3% in 2017.

*Comparison of 2017 to 2016* . QVAR revenues in our North America segment in 2017 were $313 million, compared to $409 million in 2016. This decrease was mainly due to net pricing effects.

**AUSTEDO** revenues in our North America segment in 2018 were $204 million. AUSTEDO was approved by the FDA and launched in April 2017 in the United States for the treatment of chorea associated with Huntington disease. In August 2017, the FDA approved AUSTEDO for the treatment of tardive dyskinesia.

**Anda** revenues in our North America segment in 2018 increased by 17% to $1,347 million, compared to 2017, mainly due to higher volumes.

*Comparison of 2017 to 2016* . Anda revenues in our North America segment in 2017 were $1,153 million, compared to $301 million in 2016. This increase was mainly due to the inclusion of Anda's revenues commencing in the fourth quarter of 2016.

### Product Launches and Pipeline

In 2018, we launched the generic version of the following branded products in North America:

| Product Name | Brand Name | Launch Date | Total Annual U.S. Branded Sales at Time of Launch (U.S. $ in millions (IQVIA))* | |
|---|---|---|---|---|
| Estradiol Vaginal Cream, USP, 0.01% | Estrace ® | January | $ | 304 |
| Methylphenidate Hydrochloride Extended-Release Capsules (LA), CII 20 mg, 30 mg & 40 mg | Ritalin LA ® ER | January | $ | 97 |
| Busulfan Injection 6 mg/mL, 60 mg | Busulfex ® | January | $ | 86 |
| Trientine Hydrochloride Capsules, USP 250 mg | Syprine ® | February | $ | 147 |
| Hydrocortisone Butyrate Cream USP, 0.1% (Lipophilic) | Locoid Lipocream ® | February | $ | 6 |
| Minocycline Hydrochloride Extended-Release Tablets, USP 65 mg & 115 mg | Solodyn ® ER | February | $ | 148 |
| Lansoprazole Delayed-Release Orally Disintegrating Tablets 15 mg & 30 mg | Prevacid ® SoluTab™ DR ODT | March | $ | 184 |
| Tiagabine Hydrochloride Tablets 12 mg & 16 mg ** | Gabitril ® | March | $ | 9 |
| Palonosetron Hydrochloride Injection 0.05 mg/mL, 0.25 mg | Aloxi ® | March | $ | 452 |
| Mesalamine Delayed-Release Tablets, USP 1.2 g | Lialda ® DR | March | $ | 1,128 |
| Potassium Citrate Extended-Release Tablets, USP 540 mg, 1080 mg & 1620 mg | Urocit ® -K ER | May | $ | 100 |
| Budesonide Extended-Release Tablets, 9 mg | Uceris ® ER | July | $ | 199 |
| Romidepsin for Injection, 10 mg/vial | Istodax ® | August | $ | 52 |

60

Table of Contents

| Product Name | Brand Name | Launch Date | Total Annual U.S. Branded Sales at Time of Launch (U.S. $ in millions (IQVIA))* |
|---|---|---|---|
| Cisatracurium Besylate Injection, USP 2 mg/mL, 10 mg, 10 mg/mL, 200 mg & 2 mg/mL, 20 mg | Nimbex ® | September | $ 49 |
| Tadalafil Tablets, USP 2.5 mg, 5 mg, 10 mg & 20 mg | Cialis ® | September | $ 1,926 |
| Testosterone topical gel, 10 mg/0.5 gm | Fortesta ® | November | $ 46 |
| Abiraterone acetate tablets, USP 250 mg | Zytiga ® | November | $ 1,290 |
| Azelaic acid gel, 15% | Finacea ® | November | $ 64 |
| Buprenorphine transdermal system, 5 mcg/hour, 10 mcg/hour, 15 mcg/hour & 20 mcg/hour | Butrans ® | November | $ 237 |
| Epinephrine injection, USP (auto-injector), 0.3 mg/0.3 mL | EpiPen ® | November | $ 617 |
| Fluoxetine tablets, USP, 60 mg | — | December | $ 47 |
| Pimecrolimus cream, 1% | Elidel ® | December | $ 217 |
| Cinacalcet hydrochloride tablets, 30mg, 60 mg & 90 mg | Sensipar ® | December | $ 1,746 |

---

\*    The figures presented are for the twelve months ended in the calendar quarter immediately prior to our launch or re-launch.

\*\*   Authorized generic.

Our generic products pipeline in the United States includes, as of December 31, 2018, 297 product applications awaiting FDA approval, including 92 tentative approvals. This total reflects all pending ANDAs, supplements for product line extensions and tentatively approved applications and includes some instances where more than one application was submitted for the same reference product. Excluding overlaps, the branded products underlying these pending applications had U.S. sales for the twelve months ended September 30, 2018 exceeding $114 billion, according to IQVIA. Approximately 70% of pending applications include a paragraph IV patent challenge and we believe we are first to file with respect to 107 of these products, or 132 products including final approvals where launch is pending a settlement agreement or court decision. Collectively, these first to file opportunities represent over $74 billion in U.S. brand sales for the twelve months ended September 30, 2018, according to IQVIA.

IQVIA reported brand sales are one of the many indicators of future potential value of a launch, but equally important are the mix and timing of competition, as well as cost effectiveness. The potential advantages of being the first filer with respect to some of these products may be subject to forfeiture, shared exclusivity or competition from so-called "authorized generics," which may ultimately affect the value derived.

In 2018, we received tentative approvals for generic equivalents of the products listed in the table below, excluding overlapping applications. A "tentative approval" indicates that the FDA has substantially completed its review of an application and final approval is expected once the relevant patent expires, a court decision is reached, a 30-month regulatory stay lapses or a 180-day exclusivity period awarded to another manufacturer either expires or is forfeited.

| Generic Name | Brand Name | Total U.S. Annual Branded Market (U.S. $ in millions (IQVIA))* |
|---|---|---|
| Axitinib tablets, 1 mg & 5 mg | Inlyta ® | $ 120 |
| Azelaic acid foam, 15% | Finacea ® | $ 58 |
| Buprenorphine and naloxone buccal film, 2.1 mg/0.3 mg, 4.2 mg/0.7 mg & 6.3 mg/1 mg | Bunavail ® | $ 19 |

Exhibit 21

The following is a list of subsidiaries of the Company as of December 31, 2018, omitting some subsidiaries which, considered in the aggregate, would not constitute a significant subsidiary.

| Name of Subsidiary | Jurisdiction of Organization |
|---|---|
| Actavis Group PTC ehf. | Iceland |
| Actavis Pharma Holding 4 ehf | Iceland |
| Asaph Farmaceutische Onderneming B.V. | Netherlands |
| Medis ehf. | Iceland |
| Mepha Schweiz AG | Switzerland |
| Merckle GmbH | Germany |
| Norton (Waterford) Limited | Ireland |
| PLIVA HRVATSKA d.o.o. | Croatia |
| Plus Chemicals, branch of Teva Pharmaceuticals International GmbH | Switzerland |
| Ratiopharm GmbH | Germany |
| Teva API B.V. | Netherlands |
| Teva Canada Limited | Canada |
| Teva Capital Services Switzerland GmbH | Switzerland |
| Teva Czech Industries s.r.o | Czech Republic |
| Teva Finance Services II B.V. | Curacao |
| Teva GmbH | Germany |
| Teva Italia S.r.l | Italy |
| Teva Limited Liability Company | Russia |
| TEVA OPERATIONS POLAND | Poland |
| Teva Pharma S.L.U | Spain |
| Teva Pharmaceuticals Europe B.V. | Netherlands |
| Teva Pharmaceuticals USA, Inc. | United States |
| Teva Santé SAS | France |
| Teva Takeda Pharma Ltd. | Japan |
| Teva Takeda Yakuhin Ltd. | Japan |
| Teva UK Limited | United Kingdom |