# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIPLA LTD. and CIPLA USA, INC.,

                    Plaintiffs,

        v.

AMGEN INC. and TEVA PHARMACEUTICALS
USA, INC.,

                    Defendants.

C.A. No. 19-cv-44-LPS

**CONFIDENTIAL FILED UNDER
SEAL**

**PLAINTIFFS' BRIEF IN OPPOSITION TO AMGEN
MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Of Counsel:

James W. Dabney
Patrice P. Jean
Dina Hoffer
Deanne K. Cevasco
David E. Lansky
Lynn M. Russo
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6803
james.dabney@hugheshubbard.com
patrice.jean@hugheshubbard.com
dina.hoffer@hugheshubbard.com
deanne.cevasco@hugheshubbard.com
david.lansky@hugheshubbard.com
lynn.russo@hugheshubbard.com

Dated:  March 21, 2019

Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE  19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..............................................................................................ii

NATURE AND STAGE OF PROCEEDINGS .............................................................. 4

SUMMARY OF ARGUMENT ...................................................................................... 8

STATEMENT OF FACTS ............................................................................................ 11

ARGUMENT ................................................................................................................ 15

I.    AMGEN IS UNLIKELY TO SUCCEED ON ITS PRAYER FOR SPECIFIC PERFORMANCE OF § 7.1(a) OF THE AMGEN-CIPLA AGREEMENT ................... 15

    A.    Substantive Equity Principles Bar Amgen's Claim ............................................... 15

    B.    Uncertainty as to Amgen's Interpretation Is a Bar ............................................... 18

II.    AMGEN HAS FAILED TO SHOW INADEQUACY OF LEGAL REMEDIES ............ 20

III.    THE REQUESTED INJUNCTION WOULD CAUSE IRREPARABLE HARM TO CIPLA .......................................................................................................................... 20

IV.    THE PUBLIC INTEREST ........................................................................................ 21

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)................................................................20

*Cathcart v. Robinson*,
    30 U.S. (5 Pet.) 264 (1831) (Marshall, C.J.)............................................8, 11, 15, 16

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Intern., Inc.*,
    350 F. Supp. 2d 582 (D. Del. 2004)..........................................................20

*Cisneros v. Alpine Ridge Grp.*,
    508 U.S. 10 (1993)..........................................................................9, 18

*Crowell Corp. v. Himont USA, Inc.*,
    Civ. A. No. 86C-11-125, 1994 WL 762663 (Del. Super. Ct. Dec. 8, 1994) ...........20

*Deutsche Bank Nat. Trust Co. v. Tucker*,
    621 F.3d 460 (6th Cir. 2010) ................................................................18

*Edward Katzinger Co. v. Chicago Metallic Mfg. Co.*,
    329 U.S. 394 (1947)..........................................................................16

*Hennessy v. Woolworth*,
    128 U.S. 438 (1888)........................................................................8, 11, 15, 16

*Holland v. Rosen*,
    895 F.3d 272 (3d Cir. 2018)................................................................15

*in FTC v. Actavis, Inc.*,
    570 U.S. 136 (2013)..........................................................................17

*Keystone Driller Co. v. Gen. Excavator Co.*,
    290 U.S. 240 (1933)........................................................................8, 11, 16

*Kimble v. Marvel Entm't, LLC*,
    135 S. Ct. 2401 (2015)......................................................................17

*Lear, Inc. v. Adkins*,
    395 U.S. 653 (1969)..........................................................................16

*Liberty Mar. Corp. v. United States*,
    928 F.2d 413 (D.C. Cir. 1991)..............................................................19

*Mahn v. Harwood*,
    112 U.S. 354 (1884)..........................................................................21

# TABLE OF AUTHORITIES
## Cont'd

**Cases**                                                                    **Page(s)**

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) (per curiam)................................................11

*Nat'l Lockwasher Co. v. George K. Garrett Co.*,
    137 F.2d 255 (3d Cir. 1943)................................................17

*NCAA v. Bd. of Regents of Univ. of Okla.*,
    468 U.S. 85 (1984)................................................11, 21

*Pharmacia and Upjohn Co. v. Mylan Pharms. Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999)................................................16

*Pope Mfg. Co. v. Gormully*,
    144 U.S. 224 (1891)................................................8, 11, 15, 16

*Record Town, Inc. v. Sugarloaf Mills Ltd. P'ship of Georgia*,
    301 Ga. App. 367 (2009)................................................19

*Scott Paper Co. v. Marcalus Mfg. Co.*,
    326 U.S. 249 (1945)................................................22

*U.S. Gypsum Co. v. Nat'l Gypsum Co.*,
    352 U.S. 457 (1957) (Harlan, J.)................................................3, 16, 17, 18

*United States v. Singer Manufacturing Co.*,
    374 U.S. 174 (1963)................................................17

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969)................................................17

## Statutes and Rules

15 U.S.C. § 1................................................5, 16, 17

Fed. R. Civ. P. 8(a)(6)................................................7, 9, 16

Fed. R. Civ. P. 12(b)(6)................................................16

## NATURE AND STAGE OF PROCEEDINGS

This action arises from a conspiracy to suppress competition in the sale of pharmaceutical products comprising cinacalcet hydrochloride ("Cinacalcet Products"). Defendants have acted in concert to restrict supplies of, and to maintain artificially high prices for, Cinacalcet Products sold in United States commerce, and to share in monopoly profits that would have been lost to competition if Defendants had not colluded with one another as they did and if Defendants had not intentionally misled Cipla with false press releases and other false communications.

Expedited discovery ordered by this Court on January 25, 2019, shows that Amgen, Inc. ("Amgen") and Teva Pharmaceutical USA, Inc. ("Teva") have agreed to share ███████████ ███████████ worth of monopoly profits on sales of Cinacalcet Products that Amgen secretly licensed Teva and Teva vendees to sell (the "Teva Products"). Teva agreed to pay Amgen a ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ but Amgen and Teva have both falsely stated the contrary in press releases and other public communications for the purpose, and with the effect, of deceiving and misleading Cipla, regulators, courts, competitors, and the public.

Defendants' fraudulent scheme was exposed when, as a result of expedited discovery ordered in this case, Cipla learned that (i) Amgen and Teva had publicly misrepresented the terms of a written agreement between them dated January 2, 2019 (the "January 2 Agreement"); (ii) Amgen and Teva had both acted to mislead and deceive Cipla into not selling Cinacalcet Prod-

ucts that Cipla was in fact licensed to sell; and (iii) Amgen and Teva had misused the '405 Patent as a cover for what was, in reality, a naked agreement to restrict output of Cinacalcet Products and maintain artificially high prices on Cinacalcet Products sold in United States commerce, in clear violation of 15 U.S.C. § 1 and California state statutory law.

By Order issued February 1, 2019 (D.I. 35), the Court scheduled a hearing on March 8, 2019, to consider Cipla's license and patent misuse defenses to Amgen's then-threatened claims of right to "injunctive relief, breach of contract, treble damages, and sanctions." D.I. 8 Ex. F at 3. Following a further hearing held February 15, 2019 (D.I. 109), the Court rejected Amgen's bid for delay and called for briefing on Cipla's license and patent misuse defenses. D.I. 52. On February 21, 2019, Amgen stipulated that specified Cipla in-house counsel could review the Amgen documents produced in this case. D.I. 67. Amgen attempted, and failed (D.I. 129), to prevent discovery in this action from being used to oppose Amgen's then-pending application for a collusive judgment in C.A. 16-853-MSG (the "'853 Action").

On February 25, 2019, Cipla provided Amgen with formal written notice of its intent to begin selling the pharmaceutical products identified in its FDA-approved Abbreviated New Drug Application No. 208915 ("Cipla Products"). D.I. 79 Ex. 1. Cipla's notice letter stated in part:

> Please be advised that Cipla has decided to begin selling the pharmaceutical products identified in its FDA-approved Abbreviated New Drug Application No. 208915 ("Cipla Products"). Cipla's sales are expected to begin following the court's ruling on whether Amgen has any right to object to pretrial sales of the Cipla Products following the hearing set for March 8, 2019. Should Amgen wish to test, by motion for preliminary injunction, the purported claims threatened in its January 4 Letter, Cipla has no objection to any such motion being heard on March 8 together with Cipla's pending motion for interim declaratory relief.

Concurrently with the above-quoted notice, Cipla filed an amended complaint (D.I. 73) and moved for preliminary declaratory relief. D.I. 74, 75, 76. On February 26, 2019, Amgen filed a letter application (D.I. 77) which argued for indefinite delay in any preliminary ruling on

Cipla's license and patent misuse defenses. Amgen did not seek to bring on any application for preliminary injunction and did not even mention Cipla's February 25 notice letter. *Id*.

On March 1, 2019, having persuaded the Court to put off hearing Cipla's application for preliminary declaratory relief (D.I. 90), Amgen sent Cipla a letter which stated in part: "Cipla's vague statements concerning possible sales, which were tied to the outcome of the March 8th hearing, are meaningless now that the hearing has been converted to a status hearing and the Court has stated that issues previously identified as appropriate for highly accelerated resolution will not be heard at or around the March 8th status hearing." D.I. 103 Ex. B.

By letter dated March 2, 2019 (D.I. 103 Ex. C), Cipla provided Amgen with formal written "notice of its intent to commence selling, immediately, the pharmaceutical products identified in Cipla's FDA-approved Abbreviated New Drug Application No. 208915 ('Cipla Products')." Cipla's notice was made "without prejudice to Cipla's pending claims for monetary, injunctive, and declaratory relief against Amgen, including its rights to relief based on §§ 5.3 and 5.6 of the aforesaid agreement." *Id*.

On March 5, 2019, Amgen filed a letter (D.I. 103) which stated in part: "Amgen is unaware of marketplace evidence suggesting that Cipla has in fact taken steps to prepare to launch; as such, Amgen plans to monitor marketplace events and determine how to respond to any actual launch by Cipla." Amgen put forward extensive argument (*id*. at 2-5) that the Court should not make any preliminary ruling on Cipla's license and patent misuse defenses. Teva similarly opposed any preliminary ruling on Cipla's license and patent misuse defenses. D.I. 100. Amgen and Teva profit handsomely from delaying Cipla's entry. *See* D.I. 75.

On March 6, 2019, Amgen abruptly reversed field and argued that the Court should, after all, make a prompt preliminary ruling on whether Cipla is currently licensed or privileged to sell

the Cipla Products. D.I. 112 at 1. Two days later, on March 8, 2019, Amgen confirmed in open court that it was abandoning the Due Process, Seventh Amendment, and other arguments for delay put forward in D.I. 103:

> THE COURT: Right. So I recognize things have changed in just recent days. The letter briefs were full of concerns on your behalf that were weighing on me, candidly, the due process, we need discovery. This is not amenable to a speedy hearing.
>
> MR. ROYALL: Yes.
>
> THE COURT: What I'm understanding is that all of that, at least most of it, is related to the procedural, let's say, novelty of the plaintiffs sort of driving this boat. And at this point, when we look at your motion Monday, there won't be any dispute that you can -- that this is a normal procedural mechanism in a situation like this. And further, Amgen is prepared to move quickly without any further discovery, no concerns about due process. And I take it, but I want to understand this, the motion to dismiss can sit to the side, too, because it's not directed to count 1.
>
> MR. ROYALL: Yes.
>
> THE COURT: And so what I'm hearing, but help me make sure I've got this right, don't worry about all those things that were legitimate worries just days ago. Things have changed. Resolve count 1 in our compulsory counterclaim as quickly as possible. Is that where we are?
>
> MR. ROYALL: Your Honor, I believe that we have taken a consistent position throughout. You are right a lot of our concerns previously did stem from the procedural irregularity of what was being proposed by Cipla . . . .
>
> THE COURT: But as you stand here, you are confident that you can get that all resolved in time for a hearing on March 26th?
>
> MR. ROYALL: Yes, Your Honor. We believe we can.

March 8, 2019, Hearing Tr. at 37:5-39:11.

On March 11, 2019, Amgen served a paper styled "Amgen Inc.'s Partial Answer and Counterclaims to Cipla's First Amended Complaint." D.I. 120. Amgen's answer did not deny any of the allegations made in paragraphs 42-71, 73-75, 77-79, or 81 of Cipla's First Amended Complaint. Those allegations are, thus, admitted. *See* Fed. R. Civ. P. 8(a)(6). Amgen asserted two counterclaims for alleged breach of Litigation Settlement Agreement dated February 26,

2018 (the "Amgen-Cipla Agreement").  On March 21, 2019, Cipla filed its answer to Amgen's counterclaims.  D.I. 162.  Cipla's answer re-pleaded its previously asserted patent misuse defense and raised an additional defense of unclean hands.

Concurrently with the filing of its answer pleading, Amgen moved for a preliminary injunction for specific performance of § 7.1(a) of the Amgen-Cipla Agreement, which provides in part: █████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ This is Cipla's brief in opposition to Amgen's motion for preliminary injunction.

## SUMMARY OF ARGUMENT

Amgen's motion for preliminary injunction should be denied.  "Specific performance is not of absolute right."  *Hennessy v. Woolworth*, 128 U.S. 438, 442 (1888).  "It rests entirely in judicial discretion," *id.*, and is not rightly ordered where a claimed contractual right is in "doubt," *id.*, or where "there has been concealment, misrepresentation or any unfairness."  *Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 237 (1891) (quoting *Cathcart v. Robinson*, 30 U.S. (5 Pet.) 264, 276 (1831) (Marshall, C.J.)); *accord Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) ("The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently or who by deceit or any unfair means has gained an advantage.").

In this case, Amgen's claimed contractual right to block sales of Cipla Products is very much in "doubt."  *Hennessy*, 128 U.S. at 42.  That "doubt" is underscored by Amgen's misleading, if not outright false, descriptions of the January 2 Agreement in communications with Cipla and with the Court.  In a letter to Cipla dated January 4, 2019, Amgen asserted that the January 2 Agreement obligated Teva ████████████████████████████████████████████

████████████████████████████████████████ D.I. 8 Ex. F at 1), when in fact, the January

2 Agreement does not obligate Teva to cease selling Teva Products unless and until ██████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████ D.I. 73 Ex. 3 § 7.2(a). Amgen made a similarly false

assertion to Judge Goldberg (*see* '853 Action D.I. 427 at 5 ("the agreement between Amgen and

Watson falls squarely within the agreed-upon provisions.")) in an apparent attempt to try and cut

off Cipla's rights under § 5.6 of the Amgen-Cipla Agreement.

Despite Amgen's deceitful conduct, the Court on March 8, 2019, announced Judge Gold-

berg's intention to deny Amgen's motion. March 8 Hearing Tr. at 9:25-10:5. This ruling by

Judge Goldberg reconfirms Cipla's right to sell the Cipla Products under § 5.6 of the Amgen-

Cipla Agreement, which provides in part:



D.I. 73 Ex. 1 § 5.6 (emphasis added); *see Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)

("the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provi-

sions of the 'notwithstanding' section override conflicting provisions of any other section.").

At this stage, moreover, Amgen has not denied any of the following allegations, which

are deemed admitted under Federal Rule of Civil Procedure 8(a)(6):

> 52. Beginning at a time currently unknown to Cipla, but not later than January 2,
> 2019, Amgen and Teva entered into a contract, combination, and conspiracy to
> suppress competition in the sale of Cinacalcet Products and to deceive and mis-
> lead regulators, competitors, courts, and the public with respect to nature and
> character of Defendants' unlawful actions.

53. Beginning and a time currently unknown to Cipla, but not later than January 2, 2019, Amgen and Teva entered into a contract, combination, and conspiracy to restrict supplies of, and to maintain artificially high prices for, Cinacalcet Products sold in United States commerce, and to share in monopoly profits that would have been lost to competition if Defendants had not colluded with one another as they did and if Defendants had not intentionally misled Plaintiffs with false press releases and other false public communications.

54. In furtherance of the conspiracy identified in paragraphs 52-53, above, Amgen and Teva entered into the January 2 Agreement, issued the false public statements identified in paragraphs 18-20, above, and took the further acts alleged below, including filing a motion with the court in C.A. No. 16-853-MSG (the "'853 Action") on January 9, 2019, which falsely described the January 2 Agreement and sought an "indicative ruling" that the court would issue a collusive judgment, a collusive judgment purporting to declare, falsely, that the Teva Products embodied the claimed invention of U.S. Patent No. 9,375,405 (the "'405 Patent").

55. The purpose of the January 2 Agreement was to restrain and eliminate competition between Amgen and Teva in the sale of Cinacalcet Products in United States.

56. The purpose of the January 2 Agreement was to restrict the supply of Cinacalcet Products sold in United States commerce.

57. The purpose of the January 2 Agreement was to maintain artificially high prices for Cinacalcet Products sold in United States commerce.

58. The effect of the January 2 Agreement was to restrain and eliminate competition between Amgen and Teva in the sale of Cinacalcet Products in United States commerce.

59. The effect of the January 2 Agreement was to restrict the supply of Cinacalcet Products sold in United States commerce.

60. The effect of the January 2 Agreement was to maintain artificially high prices for Cinacalcet Products sold in United States commerce.

61. The January 2 Agreement has operated to restrain trade or commerce in the sale of Cinacalcet Products in United States commerce, and to maintain exorbitant prices for such products at levels even higher than the 2017 levels listed in Exhibit 7 hereto.

62. By engaging in the conduct identified in paragraphs 1-61, above, Amgen and Teva acted in concert to restrain trade by restricting supply of Cinacalcet Products in order to maintain artificially high prices as compared with what the prices would have been had supply not been restricted as a result of the January 2 Agreement.

63. By engaging in the conduct identified in paragraphs 1-61, above, Amgen and Teva acted in concert to restrain trade by deceiving and deterring Cipla and other manufacturers holding FDA-approved ANDAs for generic Cinacalcet Products from entering into competition with them in the sale of Cinacalcet Products and to misuse the '405 Patent to exclude the sale of Cinacalcet Products falling outside the scope of the patent.

On the current state of the record, the Court cannot but conclude that Amgen has *admittedly* misused the '405 Patent as false cover for what is, in reality, a naked agreement to restrict output of Cinacalcet Products and maintain artificially high prices on Cinacalcet Products sold in United States commerce. In these circumstances, Amgen bears "a heavy burden of establishing an affirmative defense which competitively justifies this apparent deviation from the operations of a free market." *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 113 (1984).

Yet far from identifying any purported pro-competitive effect of the January 2 Agreement, Amgen made a strategic decision to *admit* the above-quoted allegations of Cipla's First Amended Complaint. Amgen apparently takes the position that patent misuse and violations of federal and state competition laws are no defense to its claim of right to specific performance of a sharply disputed contractual right. In fact, under the principles of equity set out in *Hennessy*, *Pope*, *Cathcart*, and *Keystone Driller*, Amgen's deceptive and illegal conduct plainly bar it from obtaining equitable relief of any kind, much less the "extraordinary and drastic remedy" of a preliminary injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) ("a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)).

## STATEMENT OF FACTS

Cipla and Amgen are parties to a Litigation Settlement Agreement dated February 26, 2018 (the "Amgen-Cipla Agreement"). D.I. 73 Ex. 1. The Amgen-Cipla Agreement grants Ci-

pla legal rights to sell Cinacalcet Products in various circumstances, some of which are circumstances that are defined by reference to Third Party sales of Cinacalcet Products or rights granted by Amgen to Third Parties.

<u>At Risk Launch Without Non-Infringement Finding</u>. ██████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████

<u>Most Favored Nations Entry Date</u>. ████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████

<u>At Risk Launch With Non-Infringement Finding</u>. ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████ Under the final

judgment in the '853 Action (Second Lansky Decl. Ex. 22), Teva is "not found to have infringed

one or more valid and enforceable claims of the '405 patent" within the meaning of D.I. 73 Ex.

1; and by rejecting Amgen's and Teva's joint bid for a collusive judgment declaring the contrary,

the Court has left Cipla's rights under § 5.6 undisturbed.

On or about December 27, 2018, Teva sold more than ████████████ of Cinacalcet

Products, amounting to ██████████████████████ for the vendees involved.

Second Declaration of Robert G. Cunard, sworn to March 21, 2019 ("Second Cunard Decl.")

¶¶ 5-6; Second Declaration of David E. Lansky, sworn to March 21, 2019 ("Second Lansky

Decl.") Exs. 8, 17, 18. Teva's initial sale of the Teva Products constituted an "At Risk Launch"

██████████████████████████████████████████. And then as now,

under the final judgment in the '853 Action, Teva ████████████████████████

████████████████████████████████████████████████

███████

On January 2, 2019, Amgen issued a press release which stated in part: "Teva has agreed

to stop selling its generic product until its license date in mid-year 2021 or sooner depending on

certain occurrences." On January 2, 2019, Teva issued a press release which stated in part:

"Teva has agreed to stop selling its generic product until its license date in mid-year 2021, or ear-

lier under certain circumstances." In a letter to Cipla dated January 4, 2019, Amgen stated in

part: "the Watson/Teva and Amgen Press Releases . . . make clear that the parties have entered

into an agreement in which Watson has agreed to cease selling its product. Those press releases

provide sufficient details to confirm that Watson has agreed to cease selling its Generic Ci-

nacalcet Product immediately."

The Amgen and Teva statements quoted in the immediately preceding paragraph were false and were known to be false when made. The January 2 Agreement █████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ D.I. 73 Ex. 3 § 7.1a.[1]

The capitalized term ████████████████ being defined as █████████████████

██████████████████████████ *Id.* § 2.3. The ███████████████████████████████

████████ is a proposed collusive judgment that would purport to reverse the final judgment in the '853 Action as to the Teva Products. No such bogus judgment has been entered, and Judge Goldberg has indicated that the Court will not do so. March 8 Hearing Tr. at 9:25-10:5.

In light of the failure of Defendants' attempt to procure a collusive judgment in the '853 Action, the court need not go beyond the second sentence of § 5.6 of the Amgen-Cipla Agreement to conclude that Amgen is not likely to succeed on the merits of its claim for breach of that agreement. That provision was negotiated before the outcome of the '853 Action was known, and it granted Cipla specific rights in the event that a defendant in that case prevailed on non-infringement grounds and subsequently launched a Cinacalcet Product. It is Amgen, not Cipla, which seeks to escape the terms of an agreement it now apparently regrets having made.

In addition to its license rights flowing from Teva's "Launch" under § 5.2(b) of the Amgen-Cipla Agreement, § 5.3 of the Amgen-Cipla Agreement ██████████████████

---

[1] Notwithstanding the clear and express terms of § 7.1a of the Amgen-Teva Agreement, Amgen's recent filings have cryptically suggested that § 7.3 of that agreement can somehow be construed a ████████████████████████████████████████████████████████████████ ████████. The suggestion is fanciful. Section 7.3 states in pertinent part: ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ By li-

censing and permitting Teva to ████████████████████████████

███████████████████████████████████████████████████

the January 2 Agreement is rightly construed as providing Teva with ███████████

███████████████████████████████████████ within

the meaning of § 5.3 of the Amgen-Cipla Agreement.

## ARGUMENT

Amgen must make a "clear showing" involving four factors: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm to the applicant; (3) whether the denial of a preliminary injunction would injure the moving party more than issuance of an injunction would harm the non-moving party; and (4) whether the grant of relief would serve the public interest." *Holland v. Rosen*, 895 F.3d 272, 285-86 (3d Cir. 2018).

## I. AMGEN IS UNLIKELY TO SUCCEED ON ITS PRAYER FOR SPECIFIC PERFORMANCE OF § 7.1(a) OF THE AMGEN-CIPLA AGREEMENT

Amgen is unlikely to succeed on its prayer for specific performance of § 7.1(a) of the Cipla-Amgen Agreement for two distinct reasons: (i) its prayer is barred by substantive principles of equity; (ii) its proposed interpretation of the Amgen-Cipla Agreement is sharply disputed and implausible.

### A. Substantive Equity Principles Bar Amgen's Claim

As noted above, "[s]pecific performance is not of absolute right" but "rests entirely in judicial discretion" and is not rightly ordered where a claimed contractual right is in "doubt," *Hennessy*, 128 U.S. at 42, or where "there has been concealment, misrepresentation or any unfairness." *Pope*, 144 U.S. at 237 (1891) (quoting *Cathcart*, 30 U.S. (5 Pet.) at 276 (Marshall, C.J.));

*accord Keystone Driller*, 290 U.S. at 245 ("The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently or who by deceit or any unfair means has gained an advantage."). Under the facts of this case, and the principles of equity set out in *Hennessy*, *Pope*, *Cathcart*, and *Keystone Driller*, Amgen's deceptive and illegal conduct bars it from obtaining any equitable relief, including the preliminary injunction it currently seeks.

In its answer filed March 11, 2019 (D.I. 120), Amgen did not deny any of the allegations made in paragraphs 42-71, 73-75, 77-79, or 81 of Cipla's First Amended Complaint. At this stage of the proceedings those allegations are admitted (*see* Fed. R. Civ. P. 8(a)(6)) and they stand as a complete bar to equitable relief.[2] "It is now, of course, familiar law that the courts will not aid a patent owner who has misused his patents to recover any of their emoluments accruing during the period of misuse or thereafter until the effects of such misuse have been dissipated, or 'purged' as the conventional saying goes." *U.S. Gypsum Co. v. Nat'l Gypsum Co.,* 352 U.S. 457, 465 (1957) (Harlan, J.).[3]

This case involves two distinct species of patent misuse. First, the final judgment in the '853 Action is currently binding on Amgen. *See Pharmacia and Upjohn Co. v. Mylan Pharms. Inc.,* 170 F.3d 1373, 1381 (Fed. Cir. 1999) ("The law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding."). The final judgment

---

[2] Amgen has asserted that it intends to make a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) as to the second through fifth claims stated in D.I. 73. Such a motion would ask the court to assume the truth of the allegations of D.I. 73.

[3] Amgen's second counterclaim asserts (D.I. 120 ¶¶ 50-55) that the Amgen-Cipla Agreement purportedly bars Cipla from defending Amgen's first counterclaim on grounds of patent misuse. Amgen is wrong. The patent misuse complained of by Cipla is grounded in transactions and events that occurred long after the execution of the Amgen-Cipla Agreement. Furthermore, insofar as Amgen contends that the Amgen-Cipla Agreement obligates Cipla not to challenge conduct that violates 15 U.S.C. § 1, it is unenforceable. *See, e.g., Lear, Inc. v. Adkins*, 395 U.S. 653, 670-71 (1969); *Edward Katzinger Co. v. Chicago Metallic Mfg. Co.*, 329 U.S. 394, 401-02 (1947).

in the '853 Action estops Amgen from contending that the Teva Products embody the claimed invention of the '405 Patent.  In these circumstances, it was *per se* patent misuse for Amgen to condition a license of the '405 Patent on Teva's agreement not to sell Teva Products.  *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 136 (1969) (a patentee "may not condition the right to use his patent on the licensee's agreement . . . not to purchase, use, or sell another article of commerce not within the scope of his patent monopoly."); *Nat'l Lockwasher Co. v. George K. Garrett Co.,* 137 F.2d 255, 256 (3d Cir. 1943) (patent misuse found where licensee undertook not to manufacture products falling outside of licensed patent); *cf. Kimble v. Marvel Entm't, LLC,* 135 S. Ct. 2401, 2411 (2015) (patent license requiring payment of royalties for post-expiration activity was *per se* patent misuse).

Second, by acting in concert to try and expand the scope of the '405 Patent beyond what the '853 Action judgment held was its scope, including by providing Teva with huge financial inducements to flip-flop on whether the Teva Products embodied the claimed invention of the '405 Patent, Amgen and Teva violated 15 U.S.C. § 1 in substantially the same manner as did the defendants in *United States v. Singer Manufacturing Co.*, 374 U.S. 174, 192-97 (1963), *cited and quoted with approval in FTC v. Actavis, Inc.*, 570 U.S. 136, 149 (2013).  In *Singer*, a similar strategic flip-flop occurred; competitors acted in concert to support issuance of broader patent claims than might have issued in the absence of their collusion, and did so for the purpose of using the broader patent claims to exclude competition by third-party rivals (*id.*), just as Amgen and Teva unabashedly did here.  The conduct of Amgen and Teva is far, far more egregious than was held sufficient in *Singer* to violate 15 U.S.C. § 1; and such illegal conduct perforce constitutes patent misuse and bars enforcement of the '405 Patent unless and until the effects of Defendants' unlawful action is "purged."  *U.S. Gypsum*, 352 U.S. at 465.

Defendants' misuse also resembles that which the Supreme Court held unlawful in *U.S. Gypsum*, 333 U.S. at 400-02. There, as here, patent licenses purported to regulate the entire output of an industry and had the effect of maintaining artificially high prices and suppressing sales of products outside the scope of the licensed patents. The Court noted: "it would be sufficient to show that the defendants, constituting all former competitors in an entire industry, had acted in concert to restrain commerce in an entire industry under patent licenses in order to organize the industry and stabilize prices." 333 U.S. at 401. The Court further noted that its "conclusion follows despite the assumed legality of each separate patent license, for it is familiar doctrine that lawful acts may become unlawful when taken in concert." *Id.*

## B. Uncertainty as to Amgen's Interpretation Is a Bar

There are three sources of uncertainty with respect to Amgen's interpretation of the Amgen-Cipla Agreement: Section ████████████████████████████████:



D.I. 73 Ex. 1 § 5.6 (emphasis added). Amgen's argument regarding § 5.6 tellingly omits any reference to the word "notwithstanding" that begins this provision. "[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993); *Deutsche Bank Nat. Trust Co. v. Tucker*, 621 F.3d 460, 464 (6th Cir. 2010) ("the term 'notwithstanding' is defined as without prevention or obstruction from or

by or in spite of") (internal quotations and citations omitted); *Liberty Mar. Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991) (noting the use of "notwithstanding" in statutes is used to indicate that it "supersedes all other laws"); *Record Town, Inc. v. Sugarloaf Mills Ltd. P'ship of Georgia*, 301 Ga. App. 367, 370 (2009) ("because 'notwithstanding' means without prevention or obstruction from or in spite of, the statement in this lease amendment '[n]otwithstanding anything to the contrary in the Lease' means that other provisions in the original lease cannot alter the terms of this amendment") (internal quotations and citations omitted).

In this case, as noted above, ███████████████████████████████████████ because Teva, as this stage, ███████████████████████████████████████ █████████████████████████ Teva's sale of more than ██████████████ of cinacalcet hydrochloride products was a ███████████████████████████ and its magnitude almost certainly reflects its ███████████████████████ status under the final judgment in the '853 Action.

Further, by licensing Teva to sell all of the Cinacalcet Products identified in Annex A to the January 2 Agreement, Amgen effectively provided Teva with ████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████ of the Amgen-Cipla Agreement. This is an independent basis for concluding that Amgen is unlikely to succeed on the merits of its claimed right to prevent pretrial sales of Cipla Products.

Finally, although the Court need not reach the issue in this case, Amgen has failed to carry its burden of demonstrating an ████████████ to Cipla's rights under § 5.2(b) of the Amgen-Cipla Agreement. On its face, the Amgen-Teva Agreement does not satisfy the ████████████ ████████████████ of the Amgen-Cipla Agreement; and Amgen has presented no credible evi-

dence that all Teva affiliates, including Teva manufacturing affiliates, have ███████

Cinacalcet Products.  *See also* D.I. 74 at 9.

## II.    AMGEN HAS FAILED TO SHOW INADEQUACY OF LEGAL REMEDIES

The *Amneal* decision created a market environment similar to that described in *Astra-Zeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015), in which the plaintiff sought and was granted reasonable royalty type damages for alleged infringement in a market characterized by partial generic rivalry.  In the unlikely event that Amgen were to succeed, after trial, in over-coming Cipla's license and patent misuse defenses, it would have an adequate monetary remedy in view of the *AstraZeneca* decision.

Amgen focuses the bulk of its presentation to purported *consequential* damages, but it wholly fails to demonstrate that the alleged damages complained of (for example, price effects caused by *third-party* activity) are rightly deemed "consequences" of Cipla's sales or are com-pensable as consequential damages.  Under Delaware law, "consequential damages in the form of good will, lost future profits, and lost customers" have been consistently found to be too spec-ulative and barred from recovery on breach of contract claims.  *See Chemipal Ltd. v. Slim-Fast Nutritional Foods Intern., Inc.*, 350 F. Supp. 2d 582, 595 (D. Del. 2004) (quoting *Crowell Corp. v. Himont USA, Inc.*, Civ. A. No. 86C-11-125, 1994 WL 762663, at *3 (Del. Super. Ct. Dec. 8, 1994)).

## III.    THE REQUESTED INJUNCTION WOULD CAUSE IRREPARABLE HARM TO CIPLA

The first declaration of Robert Cunard (D.I. 75) confirms what the Court correctly stated during the hearing held January 25, 2019 (D.I. 24 at 52:24-54:4):

> The irreparable harm to the plaintiff follows from all of that, namely, if a third party -- and there allegedly are third parties that have the legal right to do this and the regulatory approval to do it. If another generic launches into the market while

we all are taking our time to further analyze the complaint to file a motion to dismiss, to brief a motion to dismiss, to argue a motion to dismiss, to decide a motion to dismiss, to thereafter serve discovery requests, to thereafter respond to discovery requests. In the meantime, while we're doing all that, which is our ordinary course, and I don't mean to suggest I'm going to deter from the ordinary course very often, in the meantime if a third party genericizes the market, the plaintiff will have irreparably lost an opportunity to launch its product into a non-genericized market, and then at that point, if the plaintiff proves all of its allegations and the defendant is on the hook for damages, the defendants are, as is their right, reserving the opportunity to point the finger at the third-party generic company for having materially altered the market and deprived the plaintiff of all of the money it could have earned from launching into a non-genericized are market.

So when you put it all together, it is very clear to me that that is a cognizable theory of imminent irreparable harm that will not be reparable by damages payment from the defendant.

I think it is analogous to a potential first filer who has the right to be the first generic in a market and might otherwise lose it. But be that as it may, the important point is, I think that that is what is alleged here and it's a cognizable theory of urgent imminent irreparable harm.

## IV. THE PUBLIC INTEREST

As a result of the January 2 Agreement, the price of Cinacalcet Products continues be sky high, with a *wholesale* acquisition cost of $2,420.10 for just a single month's supply of the 90mg version of the branded version of the drug. Second Cunard Decl. Ex. 2. Denial of preliminary injunctive relief to Amgen will immediately bring about increased competition, increased output, and lower prices for Cinacalcet Products. "Restrictions on price and output are the paradigmatic examples of restraints of trade that the Sherman Act was intended to prohibit." *NCAA*, 468 U.S. at 107-08.

There is an additional public interest in preventing public property from being misappropriated by private contracts; and that interest would be advanced by denial of preliminary injunctive relief to Amgen in this case. The final judgment in the '853 Action decision establishes that the '405 Patent does not encompass products having the formulation of the Teva Products, and that formulation is, as a matter of law, "public property" under federal patent law. *Mahn v.*

*Harwood*, 112 U.S. 354, 361 (1884). A private party like Teva cannot contract away the public's right to practice subject matter that federal patent law places in the public domain. *Cf. Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 256-57 (1945) (patent laws "do not contemplate that anyone by contract or any form of private arrangement may withhold from the public the use of an invention for which the public has paid by its grant of a monopoly and which has been appropriated to the use of all.").

The public was not consulted when Amgen and Teva, for their private gain, colluded amongst themselves to ask the *Amneal* court to reverse itself, to withdraw the formulation of the Teva Products from the public domain, and allow its authority to cloak a blatantly anticompetitive scheme with the purported imprimatur of a collusive judgment.

## CONCLUSION

Amgen's motion for preliminary injunction should be denied.

Dated: March 21, 2019

Respectfully submitted,

FARNAN LLP

Of Counsel:

/s/ Michael J. Farnan
Sue L. Robinson (Bar No. 100658)

James W. Dabney
Patrice P. Jean
Dina Hoffer
Deanne K. Cevasco
David E. Lansky
Lynn M. Russo
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6803
james.dabney@hugheshubbard.com
patrice.jean@hugheshubbard.com
dina.hoffer@hugheshubbard.com
deanne.cevasco@hugheshubbard.com
david.lansky@hugheshubbard.com
lynn.russo@hugheshubbard.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

93637945