IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CIPLA LTD. and CIPLA USA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 19-44 (LPS) |
| AMGEN INC. and | ) | |
| TEVA PHARMACEUTICALS USA, INC., | ) | REDACTED - |
| | ) | PUBLIC VERSION |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| AMGEN INC., | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CIPLA LTD. and CIPLA USA, INC., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |
| | ) | |

**AMGEN INC.'S OPENING BRIEF IN SUPPORT OF ITS
EXPEDITED MOTION FOR AN INJUNCTION PENDING APPEAL
PURSUANT TO FED. R. CIV. P. 62(d) OR, IN THE ALTERNATIVE,
A 14-DAY INJUNCTION TO PURSUE AN EXPEDITED MOTION
PURSUANT TO FED. R. APP. P. 8**

OF COUNSEL:

M. Sean Royall
Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 571-2900

Jeffrey T. Thomas
Eric J. Stock
Kate Dominguez
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Original Filing Date: May 3, 2019
Redacted Filing Date: May 6, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD............................................................................................................ 2

ARGUMENT ........................................................................................................................ 3

    I.     Amgen Has A Reasonable Probability Of Success On The Merits ................................... 3

    II.    Amgen Would Be Irreparably Harmed Absent An Injunction ........................................... 8

    III.   The Balance Of The Equities Favors Amgen ................................................................... 11

    IV.   An Injunction Is In The Public Interest............................................................................ 13

    V.    In The Alternative, This Court Should Enter A 14-Day Injunction To
          Permit Amgen To Pursue An Expedited Motion Pursuant To Fed. R. App.
          8 With The Third Circuit ................................................................................................ 14

CONCLUSION.................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Abbott Labs v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008) ................................................................................................9

*Amgen, Inc. v. F. Hoffman-La Roche Ltd.*,
  581 F. Supp. 2d 160 (D. Mass. 2008) ...............................................................................10, 12

*Axis Reinsurance Co. v. HLTH Corp.*,
  993 A.2d 1057 (Del. 2010) ......................................................................................................3

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989) ................................................................................................................13

*Butler v. Thomson*,
  93 U.S. 412 (1875) ....................................................................................................................7

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
  276 F.3d 160 (3d Cir. 2001) .................................................................................................3, 8

*Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*,
  582 F.3d 721 (7th Cir. 2009) ...................................................................................................3

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) .................................................................................................2, 3

*Issa v. Sch. Dist. of Lancaster*,
  847 F.3d 121 (3d Cir. 2017) ...................................................................................................11

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................................................................2

*Noven Pharmaceuticals, Inc. v. Mylan Technologies, Inc.*,
  17-cv-1777, 2018 WL 4007848 (D. Del. Aug. 22, 2018) ......................................................14

*Opera Solutions, LLC v. Schwan's Home Service, Inc.*,
  2016 WL 3606776 (D. Del. July 1, 2016) ...............................................................................4

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*,
  998 F.2d 985 (Fed. Cir. 1993) ................................................................................................13

*Pfizer, Inc. v. Teva Pharm. USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005) ..............................................................................................12

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ............................................................................................2, 3, 8

## TABLE OF AUTHORITIES

*(continued)*

Page(s)

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3d Cir. 1991)......................................................................................................2

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)..............................................................................................12

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., USA*,
    821 F. Supp. 2d 681 (D.N.J. 2011) .........................................................................................9

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225 (1964)................................................................................................................13

*Singer Mgmt. Consultants, Inc. v. Milgram*,
    650 F.3d 223 (3d Cir. 2011) (en banc)................................................................................1, 3

*Walker Digital, LLC v. Expedia, Inc.*,
    950 F. Supp. 2d 729 (D. Del. 2013) .........................................................................................3

**Rules and Statutes**

Del. Code Title 6 § 2-106 ................................................................................................................7

Fed. R. App. P. 8(a)(1)(C) .......................................................................................................14, 15

Fed. R. Civ. P. 62(d) ...........................................................................................................1, 13, 15

## INTRODUCTION

Amgen moves for an injunction pending appeal pursuant to Fed. R. Civ. P. 62(d).  Since approximately March 2, 2019, Cipla has been selling its generic cinacalcet product without authorization, despite admitting that its product infringes Amgen's valid and enforceable patent.  Cipla's sales also are in breach of its Litigation Settlement Agreement with Amgen (the "Amgen-Cipla Agreement").   These sales should be enjoined promptly to avoid continued irreparable harm to Amgen.

Respectfully, despite this Court's ruling yesterday denying Amgen's motion for a preliminary injunction, Amgen submits that an injunction pending appeal is warranted in light of the acknowledged serious and irreparable harm that this Court has already found Amgen would suffer in the absence of an injunction.  An injunction pending appeal would allow the Third Circuit adequate time to appropriately consider the important issues at stake in this litigation, and reinstate the status quo prior to Cipla's unauthorized and unlawful entry.

For the reasons stated in Amgen's prior briefing and as discussed further below, Amgen is likely to succeed on appeal in showing a likelihood of success on the merits of its breach of contract counterclaim—critically, a *lower* standard than showing at the preliminary injunction stage that it is "more likely than not" that Amgen ultimately will succeed on the merits.  *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc).  This Court has further found that all other factors point in favor of injunctive relief.  *See* D.I. 186, at 9.  Amgen has demonstrated that it would suffer irreparable harm in the absence of an injunction.  Any purported harms to Cipla from an injunction pending appeal are inherently minimized by the limited nature of the relief Amgen seeks and the bond Amgen stands ready to post pending appeal, and are drastically outweighed by the substantial harms to Amgen of denying this request.  Nor does the public interest factor upend the balance struck by Congress in the patent

laws.  An injunction pending appeal is particularly warranted because the Court found that the irreparable harm, balance of equities, and public interest factors favored Amgen.  At a minimum, should the Court be inclined to deny an injunction pending appeal, Amgen respectfully requests that the Court enter a short, 14-day injunction to allow Amgen to seek expedited relief from the Third Circuit.

## LEGAL STANDARD

This Court has discretion to grant an injunction pending Amgen's appeal, and should consider (1) whether Amgen is likely to succeed on the merits of its appeal; (2) whether Amgen will suffer irreparable injury absent an injunction; (3) whether an injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *See Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

The first two factors—likelihood of success on appeal and irreparable injury—are the "'most critical'" factors.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).[1]  Amgen need not "prevail on all factors" to obtain relief.  *Id.* at 179.  If the first two "gateway factors are met, a court then considers the remaining two factors and decides in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."  *Id.*

---

[1]  Although *Reilly* involved a discussion of the standard for a preliminary injunction, the standard for obtaining an injunction or a stay pending appeal is essentially the same as that for obtaining a preliminary injunction.  *See Reilly*, 858 F.3d at 177 n.2 ("In the parallel stay-pending-appeal context, where the factors are the same as for the preliminary injunctions, we also follow the analytical path noted above." (citing *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015))).  The Supreme Court and the Third Circuit have relied on cases regarding stays pending appeal in cases seeking an injunction.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (observing "substantial overlap" between factors for a stay and "factors governing preliminary injunctions" because "similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined"); *Reilly*, 858 F.3d at 178-79 (applying *Nken*).

**ARGUMENT**

**I.       Amgen Has A Reasonable Probability Of Success On The Merits**

An injunction pending appeal is warranted in the first place because Amgen is likely to succeed in its appeal from this Court's ruling on the preliminary injunction.  To establish the first factor for an injunction pending appeal, Amgen need only show that it has a "reasonable chance, or probability, of winning" to be granted relief.  *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc).  Critically, a "'likelihood' does not mean more likely than not."  *Id.*; *Reilly*, 858 F.3d at 179 n.3 (collecting cases); *In re Revel AC, Inc.*, 802 F.3d 558, 568–69 (3d Cir. 2015) (same); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (observing that "the plaintiff need only prove a prima facie case, not a certainty that he or she will win").  Further, "'[h]ow strong a claim on the merits is enough depends on the balance of the harms:  the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief.'"  *Reilly*, 858 F.3d at 179 (quoting *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)).

Although this Court concluded that Cipla's interpretation of the settlement agreement was more persuasive on the merits, Amgen should still be granted an injunction pending appeal because it has shown at least a "reasonable chance" of prevailing, which is all that is required to meet the likelihood of success on the merits factor.  *Singer*, 650 F.3d at 229.  This Court concluded that sentence [2] of Section 5.6 has "the effect of precluding Amgen from obtaining the relief it is seeking," based on the nature of its "[n]otwithstanding" clause.  D.I. 186, at 13.  At the same time, however, an agreement must be construed to give effect to all its provisions and avoid unreasonable results.  *See Walker Digital, LLC v. Expedia, Inc.*, 950 F. Supp. 2d 729, 734 (D. Del. 2013); *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010).

Moreover, the goal of contract interpretation is to "effectuate the intent of the parties." *Opera Sols., LLC v. Schwan's Home Serv., Inc.*, 2016 WL 3606776, *4 (D. Del. July 1, 2016). Respectfully, the Court's interpretation of Section 5.6 would undermine the overall contractual scheme, render other provisions of the contract superfluous, and lead to a result that neither party anticipated or intended.

By its own terms, sentence [2] of Section 5.6 must be read and understood in connection with the other provisions of the Amgen-Cipla Agreement. The sentence applies only in the event of an "At Risk Launch"—specifically, where a Third Party has made an At Risk Launch but "is not found to have infringed" or "has not ceased or agreed to cease selling" "following an At Risk Launch." Amgen-Cipla Agreement § 5.6 (D.I. 73-1, Ex. 1). The term "At Risk Launch" is defined in Section 5.5 as a third party launch made without authorization from Amgen and without a "Final Court Decision" of non-infringement. This Court has already concluded that the circumstances of this case "satisfy" those conditions—Teva "launched a generic product . . . without authorization from Amgen," and there has not "been a 'Final Court Decision' of non-infringement, as Amgen's appeal from Judge Goldberg's final judgment of non-infringement by Teva remains pending." D.I. 186, at 25–26.

Accordingly, because Teva's launch was an At Risk Launch, it did not accelerate Cipla's "Entry Date" under Section 5.2(b). *See* Amgen-Cipla Agreement §§ 5.2(b), 5.5; D.I. 186, at 25 ("[A]s Amgen correctly explains, '[i]n section 5.2(b), the [Amgen-Cipla] [A]greement provides that a launch by another generic manufacturer will ***not*** trigger Cipla's entry date if the launch falls under the exception set out in section 5.5.'" (citation omitted)). Yet if Cipla's interpretation of Section 5.6 were accepted, then Teva's At Risk Launch—on which there has *not* been a Final Court Decision of non-infringement—*would* effectively accelerate Cipla's Entry Date because

4

Cipla is now free to sell its product without *any* recourse by Amgen. That would in essence grant a license to Cipla, by virtue of the precise kind of third party At Risk Launch that the Amgen-Cipla Agreement specifically carved out of its "License" provisions. When viewed in context, this single sentence from Section 5.6 should not reasonably be read to render the rest of the Amgen-Cipla Agreement's licensing and acceleration structure superfluous, and it is implausible to conclude that the parties intended that result.

Moreover, the Amgen-Cipla Agreement ensures that Cipla is on the same footing as other third parties who launch at risk. Thus, under Section 5.5, if Amgen is unable or unwilling to promptly stop a third party At Risk Launch via agreement or preliminary injunctive relief, it may not seek preliminary injunctive relief against Cipla's subsequent at risk launch. *See* § 5.5(a). But if the initial third party launcher "ceases or agrees to cease selling . . . whether by mutual agreement or otherwise," then Cipla is also obligated to do this same. *Id.* Similarly, under Section 5.5(b), if Amgen loses or withdraws a preliminary injunction motion against the initial third party launcher, then it may not seek preliminary injunctive relief against Cipla, given certain conditions. *See* § 5.5(b). Yet, even then, if the initial third party launcher "ceases or agrees to cease selling . . . whether by mutual agreement or otherwise," then Cipla must also cease. *Id.*; *see also* § 5.5(c) (similar). Similarly, under Section 5.2(b), if an authorized third party launch occurs, or one for which there has been a "Final Court Decision" of non-infringement, then Cipla's "Entry Date" is accelerated accordingly. Under Section 5.3, if Amgen provides more favorable terms to another third party with respect to its Entry Date, then Cipla is given the same favorable terms.

But under Cipla's and the Court's reading of Section 5.6, this carefully structured system of parity among third-party generic manufacturers is rendered superfluous. Under the Court's

construction, even though Teva launched only *at risk*, and even though Teva has admitted infringement, paid damages, and ceased selling its product, Cipla in effect would be granted an accelerated license.  This conclusion is not compelled by a reasonable reading of Section 5.6 and is contrary to the rest of the Amgen-Cipla Agreement.  That the second sentence of Section 5.6 applies "[n]otwithstanding anything to the contrary in this Settlement Agreement," D.I. 186, at 14 (emphasis omitted), does not mean that it can be read in isolation and out of its proper context.

Amgen's reading is more faithful to the text of the entire contract and more reasonably gives effect to the parties' evident intent.  Judge Goldberg's non-infringement decision cannot reasonably be the kind of non-infringement finding referenced in sentence [2] of Section 5.6.  Sentence [1] makes clear that the relevant context is an At Risk Launch that is "*later* found to infringe."  *See* § 5.6 (emphasis added).  Judge Goldberg's non-infringement decision, in contrast, *predates* Teva's launch and did nothing to cure its at-risk status.  Teva's launch was and remains an At Risk Launch, with all of the attendant consequences described above.  To maintain the structure established by the rest of the Amgen-Cipla Agreement, the kind of non-infringement decision referenced in sentence [2] of Section 5.6 must be a *subsequent* decision of non-infringement that enlarges the rights of Teva, *and thereby* enlarges the rights of Cipla in order to maintain parity among third parties.  Because no such decision has been rendered, the "not found to have infringed" condition of sentence [2] has not been satisfied.[2]

_____

[2]   Sentence [2]'s qualification that its conditions "follow[] an At Risk Launch" support this reading of the agreement.  Although this Court held that that language "modifies only its last antecedent[,] namely, 'has not agreed to cease selling,'" D.I. 186, at 19, Amgen respectfully submits that there is at least a "reasonable chance" that it also modified the "not found to have infringed" condition.  First, such a reading would comport with the overall structure of the agreement, as discussed above.  Second, the "has not agreed to cease selling" condition *does not require* the modification of "following an At Risk Launch."  A third party could *only* "agree[] to cease selling" "following" its At Risk Launch.  The modifier thus makes far

In addition, Teva *has* agreed to stop selling and *has actually* ceased selling, thereby negating condition [ii] of sentence [2].  Amgen presented unrebutted sworn testimony to this effect.  D.I. 125 ¶ 7 (Ragan Decl.).  Cipla's argument that it was permitted to launch because Teva continues to engage in "indirect sales," *see, e.g.*, Sealed Hr'g Tr. at 24:22–26:7, is precluded by Delaware law.  The law is clear that a "sale" requires transfer of title, *see, e.g.*, *Butler v. Thomson*, 92 U.S. 412, 415 (1875) ("The essential idea of a sale is that of an agreement . . . by which a title passes from one, and vests in another."); Del. Code Tit. 6 § 2-106 (a "sale" consists "in the passing of title from the seller to the buyer for a price"), and there is no dispute that Teva has not transferred title of its generic product since January 2, 2019.  That certain intermediaries conceded by Cipla to have no affiliation with Teva whatsoever may continue to distribute the generic product does not effectuate further "sales" by Teva.  *See* Sealed Hr'g Tr. at 25:24–26:21; *see also id.* at 39:23–41:6.[3]

The most reasonable reading of Section 5.6, in light of the first sentence of that section and the Amgen-Cipla Agreement more broadly, is that it provides multiple avenues through which Amgen remains able to obtain relief against Cipla, including in the absence of a final court

more sense when applied to the non-infringement decision, which is a condition whose contours are actually clarified by the timing modification.  Indeed, as this Court noted, "qualifying words or phrases modify the words or phrases immediately preceding them and nor words or phrases more remoted, *unless the extension is necessary from the context or the spirit of the entire writing*."  D.I. 186, at 19 (quoting *Black's Law Dictionary*).  Here, both the "context" and "spirit of the entire writing" reasonably attaches the "following an At Risk Launch" modifier to the "not found to have infringed" condition.

[3] Because Teva *actually* ceased its sales, Cipla is obligated also to cease its at-risk sales regardless of whether the Amgen-Teva Agreement required Teva to do so.  D.I. 73-1, Ex. 1 § 5.5(a) ("Defendants [Cipla] . . . agree that such temporary selling . . . shall end on the date the last such Third Party [Teva] ceases or agrees to cease selling [its generic], whether by mutual agreement or otherwise.").  But, in any event, Section 7.3 of the Amgen-Teva Agreement clearly required Teva to agree to cease its sales.  *See id.* § 7.3; D.I. 186, at 21 ("The Court agrees.  The plain language of Section 7.3 covers Teva's conduct both before signing the Amgen-Teva Agreement and after signing it and up until the Effective Date of the Agreement.").

decision of non-infringement subsequent to an At Risk Launch, or if, as here, the third party

agreed to cease or has ceased selling its product.  *See* Sealed Hr'g Tr. at 13:5–15:15; 44:5–19.

Amgen has shown a reasonable likelihood of prevailing on that argument on appeal.[4]

Finally, this Court's ruling that the balance of equities favors Amgen further supports

Amgen's showing on the first factor.  *See* D.I. 186, at 9.  Given Amgen's showing that the

balance of equities favor an injunction, *see infra* Section III, injunctive relief pending appeal is

appropriate even assuming a comparatively weaker showing on the merits than may otherwise be

required in a case where the balance of harms counseled against an injunction.  *See Reilly*,

858 F.3d at 179.

## II.     Amgen Would Be Irreparably Harmed Absent An Injunction

An injunction pending appeal is also warranted because, as this Court already found,

"Amgen has demonstrated it will suffer irreparable harm in the absence of a preliminary

injunction."  D.I. 186, at 29.  To prevail on this second "gateway" factor, Amgen must show that

it is "more likely than not to suffer irreparable harm in the absence of preliminary relief."  *Reilly*,

858 F.3d at 179.  As the Court concluded, "Amgen has met its burden to show irreparable harm."

D.I. 186, at 31.

Amgen is irreparably harmed absent an injunction because, in the present posture, the

Court's order allows Cipla to sell generic cinacalcet in competition with Amgen, despite Cipla's

agreement not to do so.  This Court recognized that, in the absence of a preliminary injunction,

Amgen would "experience irreversible price erosion, long-term loss of market share, harm to its

---

[4] For the same reasons, Section 5.5 of the Amgen-Cipla Agreement does not bar Amgen's
requested relief.  This Court determined that the first two conditions of that Section were
satisfied, D.I. 186, at 25-26, and Amgen provided compelling argument and evidence in
support of the remaining conditions.  Nor is it the case that any "uncertainties must be
resolved against Amgen at this stage."  D.I. 186, at 26; *see Highmark, Inc. v. UPMC Health
Plan, Inc.*, 276 F.3d 160, 173 ("certainty" not required to prevail on likelihood of success).

goodwill, and other non-quantifiable harms, such as potential layoffs of experienced staff." D.I. 186, at 29.  This finding is consistent with the holdings of other courts, which conclude that the entry of a new competitor results in loss of market share, harm to reputation, and price erosion—all of which support the irreparable harm Amgen faces and the inadequacy of legal remedies.  *See, e.g.*, *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1361–62 (Fed. Cir. 2008); *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., USA*, 821 F. Supp. 2d 681, 693– 94 (D.N.J. 2011), *aff'd and remanded sub nom. Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*, 748 F.3d 1354 (Fed. Cir. 2014).

Moreover, this Court's conclusion on Amgen's irreparable harm was supported by detailed information in the "record," D.I. 186, at 29 n.18, including factual declarations confirming that irreparable injury is inevitable if Cipla's launch is not promptly enjoined.  *See* D.I. 122, at 16; D.I. 123 (Georghiou Decl.); D.I. 124 (Hausman Decl.).  Among other harms, these declarations established the likelihood of:

- price erosion on sales of SENSIPAR® long *after* Cipla's market exit;[5]
- lost SENSIPAR® market share and sales volume that would persist long *after* Cipla's market exit[6]; and
- loss of goodwill, reductions in R&D, and possible layoffs that Amgen would likely suffer, thus preventing Amgen, even after Cipla's exit, from competing as effectively and earning the profits it would have earned if Cipla had never engaged in a sustained launch at all.[7]

This Court further recognized that these harms would be "quite steep in this case," and would not be remedied by money damages or a reasonable royalty as Cipla has suggested.  D.I. 186, at 29– 30.

---

[5]   Hausman Decl. (D.I. 124) ¶¶ 17–18, 31–33; Georghiou Decl. (D.I. 123) ¶¶ 13, 16–17.

[6]   Hausman Decl. (D.I. 124) ¶¶ 14–16, 21–30; Georghiou Decl. (D.I. 123) ¶¶ 14, 18–20.

[7]   Hausman Decl. (D.I. 124) ¶¶ 34–36; Georghiou Decl. (D.I. 123) ¶¶ 28–33.

Nor is the harm limited to just one additional competitor.  Absent an injunction pending appeal, Cipla's launch "could encourage other would-be infringers to attempt to gain access, resulting in significant litigation expenses and uncertainty about the value of Amgen's patents." *Amgen, Inc. v. F. Hoffman-La Roche Ltd.*, 581 F. Supp. 2d 160, 212 (D. Mass. 2008), *vacated in part on other grounds sub nom. Amgen Inc. v. F. Hoffman-La Roche Ltd*, 580 F.3d 1340 (Fed. Cir. 2009).   Again, Amgen provided substantial evidence for the threat posed by a sustained launch by Cipla, which would inevitably lead to launch by other generics.  *See, e.g.*, Hausman Tr. 54:11–21 ("If Cipla enters, it could well be that other generic[s] are going to enter right away. . . . I don't see why the other generics are going to let Cipla enter and not themselves enter."); Amgen-Teva Agreement (D.I. 73-1 Ex. 3) § 5.5(a) (allowing Teva to enter, *inter alia*, upon the sustained launch of a generic cinacalcet product by a third party).  In that scenario, the value of Amgen's patents, the "'foundation of Amgen's business,'" would "be greatly diminished." *Amgen*, 581 F. Supp. 2d at 212 (internal quotation marks omitted).   These "immense and unquantifiable harms," *id.*, require entry of an injunction pending appeal.

What is more, Cipla has already entered into a consent judgment holding in relevant part that all pertinent "claims and demands for relief prayed for by Amgen against Defendants in this action are deemed to be satisfied."  Consent Judgment, D.I. 320, at 3, *Amgen Inc. v. Aurobindo Pharma Ltd., et al.*, 16-cv-853 (MSG) (D. Del. Mar. 5, 2018) (consolidated case including *Amgen Inc. v. Cipla Limited et al.*, 16-cv-880 MSG (D. Del.)).  Amgen's "claims" in that action included the allegation that "Amgen will be substantially and irreparably harmed by the infringing activities" absent an injunction, and that "Amgen has no adequate remedy at law." Complaint, D.I. 1, at 8, *Amgen Inc., v. Cipla Ltd. et al.*, 16-cv-880 MSG (D. Del. Sept. 26, 2016). And among the "demands for relief" prayed by Amgen against Cipla was an "order permanently

enjoining Defendants" from using the products at issue until after the relevant expiration of the '405 patent. *Id.* at 9. The parties have thus already agreed and it has been adjudged that *permanent* injunctive relief is proper because Amgen would suffer irreparable harm if Cipla were permitted to use their products prior to the time period for the expiration of the '405 patent. The consent judgment provides an even stronger basis for the *temporary* injunctive relief pending appeal that Amgen now seeks.

## III.    The Balance Of The Equities Favors Amgen

Although Amgen is not required to prevail on all four factors to obtain an injunction, the balance of equities in this case "favors Amgen," D.I. 186, at 31, and thus also supports an injunction pending appeal. In balancing the equities, this Court looks to "the potential injury to [Amgen] without this injunction versus the potential injury to [Cipla] with it in place." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017).

Here, an injunction restores the status quo prior to Cipla's most recent lawsuit and unauthorized launch. Again, the Consent Decree is instructive. In it, Cipla agreed that, except as otherwise provided in the settlement agreement, "all other claims and demands for relief prayed for by Amgen against Defendants in this action are deemed to be satisfied." Consent Judgment, D.I. 320, at 3. Cipla further admitted that Amgen's '405 patent "is enforceable and valid," and agreed to be "enjoined under the Amgen Patent" from infringement. *Id.* at 2–3. Cipla is unable to support its claim to have lost its first-mover advantage as a purported harm, D.I. 163, at 21— indeed, it entered into the settlement agreement precisely to avoid further litigation, and in the process "voluntarily agreed to forego whatever opportunity it might otherwise have had to be the sole, first, or (likely) the predominant generic participant in the cinacalcet market." D.I. 186, at 33. It has no vested interest now in leap-frogging those manufacturers that litigated the infringement of their particular products and obtained a judgment of non-infringement. Further

this Court has observed that any opportunity to enter the market first "may very well be fleeting, given the potential entry of other generic challengers."  D.I. 186, at 32.  Nor has Cipla made any substantial showing at this stage of patent misuse or other conduct that should alter the balance in any respect.  *See* D.I. 186, at 33–34 ("Cipla has not persuaded this Court that it is likely to prevail on the merits of its patent misuse defense (an issue on which Cipla will ultimately bear the burden of proof).").

In contrast, the harms to Amgen of Cipla's launch are immense.  "[B]ecause Amgen's paten[t] [is] valid, enforceable, and infringed, and in light of the potential harms described above, there can be little doubt that the balance of hardships favors Amgen."  *Amgen*, 581 F. Supp. 2d at 212; *see also Robert Bosch LLC v. Pylon Mfg. Corp*., 659 F.3d 1142, 1156 (Fed. Cir. 2011) (finding balance of harms favored patentee); *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("[A]n alleged infringer's loss of market share and customer relationships, without more, does not . . . overcome the loss of exclusivity experienced by a patent owner due to infringing conduct."); D.I. 186, at 32 (same).

Moreover, the balance of equities provides even stronger support for Amgen's motion for an injunction pending appeal than it did for the preliminary injunction motion.  An injunction pending appeal, and in particular an expedited appeal as anticipated by Amgen, would be of a limited duration, and thus pose limited harm to Cipla.  A preliminary injunction before the district court, in contrast, may last for months or even years while the lawsuit progresses toward its conclusion.  Further, any harm to Cipla would be reduced by Amgen's willingness to post bond in a reasonable amount as deemed sufficient by this Court to protect Cipla's interests during the pendency of the appeal.  *See* Fed. R. Civ. P. 62(d) (injunction pending appeal may be granted "on terms for bond or other terms that secure the opposing party's rights").

IV.     **An Injunction Is In The Public Interest**

Finally, the public interest further supports an injunction pending appeal.  *See* D.I. 186, at 9 ("The public interest also somewhat favors granting the requested relief.").  "From their inception, the federal patent laws have embodied a careful balance between the need to promote innovation and the recognition that imitation and refinement through imitation are both necessary to invention itself and the very lifeblood of a competitive economy."  *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989).  "The federal patent system thus embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years."  *Id.* at 150–51.  Patents are thus "meant to encourage invention by rewarding the inventor with the right, limited to a term of years fixed by the patent, to exclude others from the use of his invention."  *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229 (1964).  Just as state laws may not "second-guess" how "the patent laws strike that balance in a particular circumstance," *Bonito Boats*, 489 U.S. at 152, so this Court should not ignore the balance struck by Congress in providing for a period of exclusivity for Amgen's patent.  This is particularly true where, as here, Cipla has entered into a consent judgment acknowledging that Amgen's '405 patent "is enforceable and valid."  Consent Judgment, D.I. 320, at 2–3.

Cipla's reference to the public interest in low prices for a patented drug, D.I. 163, at 21, is not a basis to deny an injunction pending appeal.  If it were, "most injunctions would be denied because copiers universally price their products lower than innovators."  *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993).  The balance struck by Congress, as well as by the parties through the consent judgment, should be maintained pending a judgment on appeal of this Court's ruling.

**V.     In The Alternative, This Court Should Enter A 14-Day Injunction To Permit Amgen To Pursue An Expedited Motion Pursuant To Fed. R. App. 8 With The Third Circuit**

As stated above, Amgen is entitled to an injunction during the entirety of the appellate process.  In any event, given the "urgency and high-stakes nature" of the issues involved in this case, D.I. 186, at 1, if this Court declines to enter an injunction for the entire pendency of the appellate process, it should enter a 14-day injunction to permit Amgen to pursue its rights on an expedited basis before the Third Circuit.

This Court approved a similar alternative request last year in *Noven Pharmaceuticals, Inc. v. Mylan Technologies, Inc.*, 17-cv-1777, 2018 WL 4007848 (D. Del. Aug. 22, 2018).  In *Noven*, this Court entered an injunction allowing the moving party 10 days in total to pursue an "expedited appeal and to seek additional relief from the Federal Circuit," despite this Court's rejection of any "injunction for the pendency of the appeal."  *Id.* at *1–2.  Amgen's alternative request for a limited injunction is stronger than the request in *Noven*.  In *Noven*, the court determined that the showing off irreparable harm was merely "sufficient, but not overwhelming," and found that the balance of the equities and public interest factors counseled *against* injunctive relief.  *Id.* at *1.  In contrast, this Court has already concluded that the final three factors *favor* Amgen's request for injunctive relief.  D.I. 186, at 9.

As in *Noven*, Amgen is willing and able to comply with reasonable conditions in support of this alternate request for relief to preserve the status quo.  Like the appeal in *Noven*, 2018 WL 4007848, at *2, Amgen would move to expedite any appeal before the Third Circuit, including any motion practice regarding an injunction pending the resolution of the appeal pursuant to Fed. R. App. P. 8(a)(1)(C).  Amgen's request for a 14-day injunction is based on Amgen's best estimate of the minimum time frame needed for the Third Circuit to resolve an emergency

14

motion pursuant to FRAP 8.[8]  Moreover, Amgen is willing to post bond in a reasonable amount as deemed sufficient to protect Cipla's interests during the pendency of the appeal. *See* Fed. R. Civ. P. 62(d).

## CONCLUSION

For the foregoing reasons, the Court should enjoin Cipla pending appeal from making, having made, using, selling, offering to sell, or distributing its generic cinacalcet product in the United States, or importing the its product into the United States.  In the alternative, this Court should enter a 14-day injunction to permit Amgen to pursue an expedited appeal and motion for an injunction pending appeal before the Third Circuit.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

M. Sean Royall
Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201-6912
(214) 571-2900

Jeffrey T. Thomas
Eric J. Stock
Kate Dominguez
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

May 3, 2019

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

---

[8]  Upon any filing of a Rule 8 motion before the Third Circuit, Amgen anticipates receiving further guidance regarding the timing of a decision on that motion.  If needed, Amgen reserves the right to revisit the length of its alternate requested injunction with this Court.