IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: SENSIPAR (CINACALCET HYDROCHLORIDE TABLETS) ANTITRUST LITIGATION | MDL No. 19-2895 (LPS) |
| CIPLA LTD. and CIPLA USA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AMGEN INC. and TEVA PHARMACEUTICALS USA, INC.,<br><br>Defendants. | C.A. No. 19-cv-44-LPS |

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANTS' PARTIAL MOTIONS TO DISMISS**

*Of Counsel:*
James W. Dabney
Patrice P. Jean
Richard M. Koehl
Dina Hoffer
Deanne K. Cevasco
David E. Lansky
Lynn M. Russo
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6803
james.dabney@hugheshubbard.com
patrice.jean@hugheshubbard.com
richard.koehl@hugheshubbard.com
dina.hoffer@hugheshubbard.com
deanne.cevasco@hugheshubbard.com
david.lansky@hugheshubbard.com
lynn.russo@hugheshubbard.com

Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

Dated: December 6, 2019

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ............................................................... 1

SUMMARY OF ARGUMENT ................................................................................................ 1

STATEMENT OF FACTS ....................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

I.  CIPLA HAS ALLEGED INJURY-IN-FACT. ............................................................. 5

    A.  Amgen Wrongly Traverses Cipla's Allegations of Injury ..................................... 5

    B.  Teva Inappropriately Asserts a Purported Estoppel Defense ................................ 5

II.  CIPLA HAS ALLEGED DIRECT "ANTITRUST" INJURY. .................................... 6

III.  CIPLA HAS ALLEGED A VIOLATION OF 15 U.S.C. § 1. ...................................... 8

    A.  The FAC Alleges That the Amgen-Teva Agreement and Its Implementation Were Anticompetitive in Purpose and Effect. .............................. 8

    B.  Defendants Erroneously Conflate Their Alleged Violation of 15 U.S.C. § 1 With Overt Acts Taken in Furtherance Thereof. ................................................. 11

        1.  The "Pre-Suit Letter" Argument ................................................................. 11

        2.  The "Patent Misuse" Argument .................................................................. 12

        3.  The "Relevant Market" Argument .............................................................. 12

IV.  THE FAC ALLEGES CALIFORNIA STATE STATUTORY CLAIMS....................... 13

V.  THE FAC STATES A CLAIM FOR FRAUD. .......................................................... 14

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                             **Page(s)**

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ............................................................................................................. 8

*AT&T Mobility LLC v. AU Optronics Corp.*,
    707 F.3d 1106 (9th Cir. 2013) ............................................................................................. 13

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*,
    909 F. Supp. 162 (S.D.N.Y. 1995) ....................................................................................... 13

*Blue Shield of Va. v. McCready*,
    457 U.S. 465 (1982) ..................................................................................................... 2, 6, 7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ............................................................................................................. 7

*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989) ............................................................................................................. 14

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986) ............................................................................................................. 8

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) ................................................................................................... 13

*Cipla Ltd. v. Amgen Inc.*,
    386 F. Supp. 3d 386 (D. Del.), *aff'd,* 778 F. App'x 135 (3d Cir. 2019) .......................... passim

*Conroy v. Regents of the Univ. of Cal.*,
    203 P.2d 1127 (Cal. 2009) ................................................................................................. 15

*FTC v. Actavis, Inc.*,
    570 U.S. 136 (2013) .................................................................................................. 9, 10, 11

*Goldman v. General Accident Insurance Co.*,
    2007 WL 2781935 (D.N.J. May 24, 2007) ........................................................................ 11

*Hospira, Inc. v. Sandoz Inc.*,
    2014 WL 794589 (D.N.J. Feb. 27, 2014) .......................................................................... 11

*Janssen Products, L.P. v. Lupin Ltd.*,
    2016 WL 1029269 (D.N.J. Mar. 15, 2016) ........................................................................ 11

*King Drug Co. v. Smithkline Beecham Corp.*,
    791 F.3d 388 (3d Cir. 2015) ............................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
    359 U.S. 207 (1959)......................................................................................................................7

*In re Lipitor Antitrust Litigation*,
    868 F.3d 231 (3d Cir. 2017).....................................................................................................7, 11

*In re Loestrin 24 FE Antitrust Litig.*,
    538 F.3d 538 (1st Cir. 2016)........................................................................................................11

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010)..........................................................................................................4

*NCAA v. Bd. of Regents of Univ. of Okla.*,
    468 U.S. 85 (1984)..........................................................................................................2, 3, 9, 10

*Ohio v. Am. Express Co*,
    138 S. Ct. 2274 (2018).................................................................................................................12

*Princo Corp. v. Int'l Trade Comm'n*,
    616 F.3d 1318 (Fed. Cir. 2010)...................................................................................................12

*Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*,
    364 U.S. 656 (1961)............................................................................................................ *passim*

*Rolite, Inc. v. Wheelabrator Envt'l Sys., Inc.*,
    958 F. Supp. 992 (E.D. Pa. 1997) ...............................................................................................13

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*,
    513 U.S. 18 (1994).......................................................................................................................11

*United States v. Singer Mfg. Co.*,
    374 U.S. 174 (1963).....................................................................................................................10

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010).................................................................................................7, 8, 13

*Zeneca Ltd. v. Pharmachemie B.V.*,
    37 F. Supp. 2d 85 (D. Mass 1999) ..............................................................................................11

## TABLE OF AUTHORITIES

**Statutes and Rules**                                                                  **Page(s)**

15 U.S.C. § 1 .................................................................................................................... *passim*

15 U.S.C. § 15 ....................................................................................................................8, 9, 13

15 U.S.C. § 26 .........................................................................................................................8, 9

Cal. Bus. & Prof. Code § 16720 ..............................................................................................3, 13

Cal. Bus. & Prof. Code § 17200 ...........................................................................................3, 5, 14

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................1, 4

Cipla Ltd. and Cipla USA, Inc. ("Cipla") submit this brief in opposition to the partial motions to dismiss (D.I. 238; D.I. 240) filed by Amgen Inc. ("Amgen") and Teva Pharmaceuticals USA, Inc. ("Teva"). The motions should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

Cipla commenced this action on January 8, 2019. D.I. 1. Cipla filed a First Amended Complaint ("FAC") on February 25, 2019. D.I. 73. On March 11, 2019, Amgen filed a partial answer to the FAC (D.I. 120), joining issue on the allegations of Cipla's First Claim for Relief and asserting two counterclaims against Cipla for alleged breach of contract. On March 26, 2019, Cipla served its answer to Amgen's counterclaims. D.I. 162.

In an Order issued May 2, 2019 (D.I. 186), this Court ruled that Amgen was unlikely to succeed on the merits of its counterclaims and, largely for that reason, was not entitled to a preliminary injunction. *See Cipla Ltd. v. Amgen Inc.*, 386 F. Supp. 3d 386 (D. Del.), *aff'd,* 778 F. App'x 135 (3d Cir. 2019). On June 21, 2019, this Court issued a Scheduling Order. D.I. 217. On July 31, 2019, this Court issued a notice that MDL 1:19-md-2895 had been opened and assigned to Chief Judge Stark. D.I. 227.

On October 15, 2019, Amgen and Teva filed motions to dismiss Cipla's Second, Third, Fourth, and Fifth Claims for Relief for alleged "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This is Cipla's response to Defendants' motions to dismiss.

## SUMMARY OF ARGUMENT

The FAC alleges that "Amgen and Teva acted in concert to restrain trade by deceiving and deterring Cipla . . . from entering into competition with them in the sale of Cinacalcet Products." D.I. 73 ¶ 63. Amgen and Teva accomplished this deception by means of a sham "admission" of infringement by Teva (*id*. ¶ 33) which Defendants jointly published and jointly used as a basis for seeking "a collusive judgment purporting to declare, falsely, that the Teva Products embodied the

claimed invention of U.S. Patent No. 9,375,405 (the "'405 Patent")" (*id*. ¶ 54), when that was not the case. Amgen and Teva are alleged to have "specifically intended to exclude Cipla from entering the market for Cinacalcet products" and to have "acted in concert to mislead and deceive Cipla into not entering that market for a period of several weeks." *Id*. ¶ 67.

Contrary to Defendants' suggestions, the FAC plainly alleges both injury-in-fact and "antitrust" injury. Wrongful exclusion from a market, as alleged by Cipla, is a classic form of antitrust injury that a federal court may redress. *See, e.g., Radiant Burners, Inc. v. Peoples Gas Light & Coke Co*., 364 U.S. 656, 659–60 (1961). Exclusion of Cipla competition was, further, "the very means by which it is alleged that [Defendants] sought to achieve [their] illegal ends." *Blue Shield of Va. v. McCready*, 457 U.S. 465, 479 (1982). That Cipla *eventually* started selling Cinacalcet Products, after Judge Goldberg announced his refusal to issue the collusive consent judgment sought by Amgen and Teva (D.I. 73 ¶ 54), is fully consistent with Cipla having suffered actionable antitrust injury prior to that announcement and with Cipla being threatened with future antitrust injury as Amgen continues to invoke Teva's sham "admission" of infringement in Appeal Nos. 19-1650, -1770 (Fed. Cir.). Parts I and II, *infra*.

The FAC also alleges a violation of 15 U.S.C. § 1. As this Court has observed, "it seems plausible that Amgen and Teva may have colluded to divide up the market for cinacalcet, in order to share supracompetitive profits and deter true generic competition." *Cipla*, 386 F. Supp. 3d at 409. "Restrictions on price and output are the paradigmatic examples of restraints of trade that the Sherman Act was intended to prohibit." *NCAA v. Bd. of Regents of Univ. of Okla*., 468 U.S. 85, 107–08 (1984). Insofar as the Amgen-Teva Agreement (D.I. 73 Ex. 3) obligated Teva to cease direct sales of Teva Cinacalcet Products, as Amgen has successfully argued (*see Cipla*, 386 F. Supp. 3d at 401), that agreement was subject to strict scrutiny under 15 U.S.C. § 1 and imposed

2

on Amgen and Teva "a heavy burden of establishing an affirmative defense which competitively justifies this apparent deviation from the operations of a free market." *NCAA*, 468 U.S. at 113. Cipla was not required to anticipate and rebut Amgen's purported defenses to liability under 15 U.S.C. § 1. And although unnecessary to state a horizontal violation of 15 U.S.C. § 1, *see Radiant Burners*, 364 U.S. at 659–60, the FAC also clearly alleges that Cinacalcet Products constitute a "relevant market." Part III, *infra*.

The FAC states a claim for violation of Cal. Bus. & Prof. Code § 16720 for the same reason as it states a claim for violation of 15 U.S.C. § 1. The FAC states a claim for unfair competition under Cal. Bus. & Prof. Code § 17200 for the same reason as it states a claim for violation of 15 U.S.C. § 1, and for the further reason that Amgen and Teva are alleged to have conspired to misuse the '405 Patent and to exclude Cipla competition by deceptive means. Part IV, *infra*.

The FAC also states a claim for fraud. Teva is alleged to have effectively accepted an enormous payoff (D.I. 73 ¶ 32) in exchange for a sham "admission" of infringement (*id*. ¶ 33); Amgen and Teva are alleged to have publicized this purported "admission" (*id*. ¶ 54) for the purpose of "deceiving and deterring Cipla . . . from entering into competition with them" (*id*. ¶ 63); and Defendants' false statements are alleged to have misled and deceived Cipla into not entering the cinacalcet market "for a period of several weeks." *Id*. ¶ 67. Part V, *infra*.

## STATEMENT OF FACTS

Amgen and Teva are direct horizontal competitors in the sale of pharmaceutical products comprising cinacalcet ("Cinacalcet Products") in the United States. D.I. 73 ¶ 44. There are no other drugs that are reasonably interchangeable with Cinacalcet Products for the treatment of hyperparathyroidism. *Id*. ¶¶ 44–51.

On January 2, 2019, Amgen and Teva entered into an agreement (the "Amgen-Teva Agreement"; D.I. 73 Ex. 3). The purpose and effect of the Amgen-Teva Agreement was to restrict supplies of, and to maintain artificially high prices for, Cinacalcet Products sold in United States commerce, and to share in monopoly profits that would have been lost to competition if Defendants had not colluded with one another as they did and if the Defendants had not intentionally misled Cipla with false press releases and other false public communications. D.I. 73 ¶¶ 52–62.

The Amgen-Teva Agreement was specifically designed and intended to cut off Cipla's rights to sell Cinacalcet Products by means of (i) a sham public "admission" of patent infringement by Teva (D.I. 73 ¶ 33), which Amgen procured by secretly ceding approximately $200 million in sales revenues to Teva (*id.* ¶ 32; *see Cipla*, 386 F. Supp. 3d at 391, 409 & n.25); and (ii) a public joint motion seeking issuance of a "consent judgment" purporting to declare, falsely, that Cinacalcet Products sold by Teva ("Teva Products") embodied the claimed invention of the '405 Patent. D.I. 73 ¶ 54; *see Cipla*, 386 F. Supp. 3d at 395–400. Defendants' deceptive joint actions caused Cipla to delay its launch of Cinacalcet Products for several weeks. D.I. 73 ¶¶ 62–69.

Cipla has been injured in its business and property, and is threatened with injury to its business and property, by reason of the Amgen-Teva Agreement and Defendants' continuing attempts to exploit Teva's sham "admission" of infringement. D.I. 73 ¶¶ 66, 70, 74, 78.

## ARGUMENT

Defendants seek dismissal of Cipla's Second, Third, Fourth, and Fifth Claims for Relief for alleged "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Defendants' motions, the Court must "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

## I. CIPLA HAS ALLEGED INJURY-IN-FACT.

### A. Amgen Wrongly Traverses Cipla's Allegations of Injury

Notwithstanding that the FAC expressly alleges injury-in-fact (D.I. 73 ¶¶ 66, 70, 74, 78), Amgen asserts that the Court should ignore these allegations because "Cipla has in fact launched." D.I. 241 at 6. But the fact of Cipla's having *eventually* started selling Cinacalcet Products in March 2019 is fully consistent with Cipla having been wrongfully misled and deterred, by Teva's sham "admission" of infringement (D.I. 73 ¶ 33) and Amgen's and Teva's joint bid for issuance of a collusive judgment of infringement (*id.* ¶ 54), to delay the start of its sales of Cipla Products, and with the value of Cipla Product inventory having declined during the period of delay. Cipla is also threatened with future injury as Amgen, in Appeal Nos. 19-1650, -1770 (Fed. Cir.), continues to rely on Teva's sham "admission" of infringement. For the Court's ease of reference, Cipla herewith attaches, as Exhibit 1, a copy of its publicly filed brief in Appeal Nos. 19-1650, -1770.

### B. Teva Inappropriately Asserts a Purported Estoppel Defense

Teva asserts that, even if the FAC alleges actual and threated injury-in-fact, Cipla purportedly is "estopped from arguing that it has suffered *any* injury" (D.I. 239 at 9) because Cipla successfully argued that § 5.6 of the Amgen-Cipla Agreement entitled it to sell Cinacalcet Products after Teva launched the Teva Products. Teva's assertion is incorrect.

Teva's purported estoppel defense ignores the theory of Cipla's complaint, which is: "Amgen and Teva . . . acted in concert to mislead and deceive Cipla into not entering that market for a period of several weeks" (D.I. 73 ¶ 67), including by jointly publishing a sham "admission" of infringement by Teva (*id.* ¶ 33) and jointly using that "admission" as a spurious basis for an application to cut off Cipla's then-existing rights to sell Cinacalcet Products in competition with Amgen and Teva. *See Cipla*, 386 F. Supp. 3d at 395–400. There is no inconsistency whatsoever between (i) the contractual rights that the Court recognized in its May 2, 2019 Order (D.I. 186);

and (ii) Cipla's claim that Amgen and Teva attempted to destroy those rights and, by deceptive means, succeeded in causing Cipla to delay sales of Cinacalcet Products "for a period of several weeks." D.I. 73 ¶ 67.

## II.   CIPLA HAS ALLEGED DIRECT "ANTITRUST" INJURY.

Defendants alternatively assert (D.I. 239 at 9–13; D.I. 241 at 6–9) that the injury complained of by Cipla purportedly is not "direct" "antitrust" injury. Defendants are wrong.

The FAC alleges that Amgen and Teva acted in concert to exclude Cipla from selling Cinacalcet Products, and indeed, that excluding Cipla competition was "the very means by which it is alleged that [Defendants] sought to achieve [their] illegal ends." *McCready*, 457 U.S. at 479. In these circumstances, Defendants' assertion that Cipla does not complain of a "competition-reducing" effect of their conduct is insupportable. The FAC alleges that "Amgen and Teva specifically intended to exclude Cipla from entering the market for Cinacalcet Products" and succeeded in doing so "for a period of several weeks." D.I. 73 ¶ 67.

Concerted action to exclude a rival from entering a market is a classic form of antitrust injury. *See Radiant Burners*, 364 U.S. at 659–60. "As a general matter, the class of plaintiffs capable of satisfying the antitrust-injury requirement is limited to *consumers* and *competitors* in the restrained market and to those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 102 (3d Cir. 2010) (emphasis added). The FAC easily satisfies this standard: Cipla is a competitor in the restrained market, and Cipla's exclusion by Defendants is alleged to be the means by which Defendants sought to achieve their anticompetitive ends.

Cipla's claimed injury also falls squarely within the concept of "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which

6

makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Cipla's alleged injury "reflect[s] the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* Preventing Cipla from selling Cinacalcet Products was the "anticompetitive effect . . . of the violation," *id.*, and that effect was and is a classic "type" of injury that "the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.*; *see also Radiant Burners*, 364 U.S. at 659–60.

Where, as here, an alleged conspiracy "clearly has, by its 'nature' and 'character,' a 'monopolistic tendency,' . . . it is not to be tolerated merely because the victim is just one [manufacturer]." *Radiant Burners*, 364 U.S. at 660 (quoting *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 213 (1959)). Defendants' "antitrust" injury arguments do not cite *Radiant Burners*, *McCready*, or the antitrust law principles that they embody. In a case where a competitor's exclusion is "the means by which the defendants seek to achieve their anticompetitive ends," *W. Penn*, 627 F.3d at 102, it is irrelevant that its injury is not "shared by the overall market." D.I. 239 at 11.

Equally unavailing are Defendants' assertions (D.I. 239 at 12–14; D.I. 241 at 9) that Cipla's claimed injuries are purportedly too remote to be actionable under 15 U.S.C. § 15. The FAC alleges, to the contrary, that Cipla was a direct and specifically intended target of the Defendants' conspiracy. D.I. 73 ¶ 67 ("Amgen and Teva specifically intended to exclude Cipla from entering the market for Cinacalcet Products, and acted in concert to mislead and deceive Cipla into not entering that market for a period of several weeks."). Antitrust injury does not get more "direct" than that.

For the same reason, recognition of Cipla's claimed injury as "antitrust" injury would not pose any risk of duplicative recoveries (D.I. 239 at 13) or complex theories of causation. *Cf. Assoc.*

7

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519 (1983) (no standing where claim of injury was remote from alleged violation). Defendants' motions also ignore Cipla's claim for injunctive relief under 15 U.S.C. § 26, whose standing requirements are less stringent than those for damages claims under 15 U.S.C. § 15. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110–11 (1986).

Defendants cite no authority that California would deny a remedy to a Plaintiff in Cipla's position alleging that it was misled and deceived by a sham public "admission" of patent infringement that was designed and intended to cut off Cipla's rights to compete. *See Cipla*, 386 F. Supp. 3d at 395–400.

## III. CIPLA HAS ALLEGED A VIOLATION OF 15 U.S.C. § 1.

### A. The FAC Alleges That the Amgen-Teva Agreement and Its Implementation Were Anticompetitive in Purpose and Effect.

Not unlike the complaint held sufficient in *Radiant Burners*, 364 U.S. 656 (1961), the FAC alleges that Amgen and Teva acted in concert to exclude Cipla from selling Cinacalcet Products in competition with them. D.I. 73 ¶¶ 52–61. Without addressing the FAC's specific allegations of anticompetitive intent and effect, Defendants assert (D.I. 239 at 13–16; D.I. 241 at 10–13) that the Amgen-Teva Agreement is purportedly immunized from antitrust scrutiny by the Supreme Court's decision in *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013), such that no discovery or trial is needed to determine the antitrust legality of that agreement. Defendants are incorrect, and wrongly conflate a purported patent-based defense with what a private antitrust plaintiff must allege to state a claim under 15 U.S.C. §§ 15 and 26.

The FAC alleges that Amgen ceded $200 million to Teva (D.I. 73 ¶ 32) in exchange for a "sham" Teva "admission" of infringement (*id.* ¶ 33) and an agreement by Teva to support issuance of "a collusive judgment purporting to declare, falsely, that the Teva Products embodied the

8

claimed invention of U.S. Patent No. 9,375,405." *Id.* ¶ 54; *see Cipla*, 86 F. Supp. 3d at 409 & n.25.  The alleged purpose and effect of the Amgen-Teva Agreement was to restrict the supply of, and to maintain artificially high prices for, Cinacalcet Products sold in United States commerce (D.I. 73 ¶¶ 55–61), and to accomplish this result in part by cutting off Cipla's legal ability to sell Cinacalcet Products by pressing Teva's sham admission on Judge Goldberg.  *Id.* ¶¶ 54, 67.

In the face of these allegations, Defendants bear "a heavy burden of establishing an affirmative defense which competitively justifies this apparent deviation from the operations of a free market."  *NCAA*, 468 U.S. at 113.  Teva's unexplained purported flip-flop on the issue of infringement, following Amgen's agreement to cede $200 million in revenues to Teva (D.I. 73 ¶ 32), is fully consistent with corruption and illegality.  Whatever Amgen's and Teva's subjective motives might have been for acting as they did, it is "well settled that good motives will not validate an otherwise anticompetitive practice."  *NCAA*, 468 U.S. at 101 n.23.  At all events, Amgen's and Teva's purported patent-based defense to this action is just that, a defense, not something that Cipla was required to anticipate and negate in its complaint.

*Actavis* held an agreement to settle patent litigation is not immunized from antitrust scrutiny by the fact of an accused product being within the "scope" of a patent's claims.  This holding is of no aid to Defendants here.  The FAC alleges that the suppressed Teva Products *do not* embody the claimed invention of the '405 Patent, but that Amgen ceded "up to hundreds of millions" in order to induce Teva to make a sham contrary "admission."  D.I. 73 ¶¶ 31–33.  Further, in a brief filed November 4, 2019, Teva effectively repudiated the "admission" of infringement that it earlier attempted to foist on the Court and the country.  *See* Exhibit 2 hereto (excerpts from Brief for Appellees in Appeal No. 19-1650, -1770 (Fed. Cir.)).

9

*Actavis* did not overrule but, to the contrary, cited and followed earlier precedents, including *United States v. Singer Manufacturing Co.*, 374 U.S. 174 (1963).  By acting in concert to try and expand the scope of the '405 Patent beyond what the 16-853 Case judgment held, Amgen and Teva violated 15 U.S.C. § 1 in substantially the same manner as did the defendants in *Singer*.  *See* 374 U.S. at 192–97 (1963).  Teva's unexplained (and since repudiated, *see* Exhibit 2 hereto) flip-flop on the issue of infringement, which purported to expand the scope of the '405 Patent, is similar to the conduct held to violate 15 U.S.C. § 1 in *Singer*.  In *Singer*, a party to an interference proceeding abandoned a claim of priority so as to facilitate issuance of broader patent claims to its opponent, and it did so with a view to (i) its being licensed under the broader claims and (ii) the broader claims being used to exclude competition from third-party competitors for the benefit of itself and its licensor.

Even when compared with the scenario discussed in *Actavis*, Amgen's cession of $200 million to Teva (*Cipla*, 386 F. Supp. 3d at 409 n.25) far exceeds any conceivable "traditional settlement considerations, such as avoided litigation costs or fair value for services," *Actavis*, 570 U.S. at 156, takes this settlement out of the range of "familiar settlement forms," *id.* at 152, and "provide[s] strong evidence that the patentee seeks to induce the generic challenger to abandon its claim with a share of the monopoly profits that would otherwise be lost in the competitive market." *Id*. at 154.

In *In re Lipitor Antitrust Litigation*, 868 F.3d 231 (3d Cir. 2017), the Third Circuit reversed a district court's dismissal of a complaint and held that a release of liability for potential damages accrued in an at-risk launch could be treated as a "payment" for purposes of antitrust analysis under *Actavis*.  Amgen's cession of approximately $200 million to Teva is similar to consideration treated as a "payment" in *Lipitor.  See id.* at 253–54 ("the release of potential liability in *Accupril*

far exceeded any of Pfizer's saved litigation costs or any services provided by Ranbaxy."); *see also King Drug Co. v. Smithkline Beecham Corp.*, 791 F.3d 388, 394 (3d Cir. 2015); *In re Loestrin 24 FE Antitrust Litig.*, 538 F.3d 538, 549–50 (1st Cir. 2016).

Most of the purportedly "similar settlement agreements" that Amgen identifies (D.I. 241 at 12) were made *prior* to final judgment. Of the remainder, Amgen identifies only one instance of a federal appellate court "vacat[ing] [a] district court judgment in favor of alleged infringer after the parties reached settlement while on appeal" (*id.* at 13), but that vacatur occurred before the Supreme Court put a stop to such practices in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994). *See Zeneca Ltd. v. Pharmachemie B.V.*, 37 F. Supp. 2d 85, 90 n.14 (D. Mass 1999).[1] At all events, the extent to which the '405 Patent may provide a defense to Amgen is just that, a defense that Amgen must plead and prove, not Cipla.

### B. Defendants Erroneously Conflate Their Alleged Violation of 15 U.S.C. § 1 With Overt Acts Taken in Furtherance Thereof.

#### 1. The "Pre-Suit Letter" Argument

Amgen asserts (D.I. 241 at 14) that sending a letter does not violate 15 U.S.C. § 1. The FAC does not make any such claim. Amgen's sending of a letter to Cipla which falsely described terms of the Amgen-Teva Agreement (D.I. 73 ¶ 68) is alleged to have been an act *in furtherance of* Amgen's and Teva's unlawful "conspiracy to restrict supplies of, and to maintain artificially high prices for, Cinacalcet Products sold in United States commerce." D.I. 73 ¶ 53.

---

[1] In *Janssen Products, L.P. v. Lupin Ltd.*, 2016 WL 1029269, at *3 (D.N.J. Mar. 15, 2016), the district court did ***not*** modify its earlier findings of fact and conclusions of law. In *Hospira, Inc. v. Sandoz Inc.*, 2014 WL 794589, at *4 (D.N.J. Feb. 27, 2014), the court (perhaps incorrectly) looked only at the prior court ruling's effect as legal *precedent* rather than for the judgment's *preclusive effects*. *Goldman v. General Accident Insurance Co.*, 2007 WL 2781935 (D.N.J. May 24, 2007) was not a patent case and did not implicate taking a non-infringing composition out of the public domain.

### 2. The "Patent Misuse" Argument

Amgen asserts (D.I. 241 at 14–17) that its complained of conduct cannot be constituted patent misuse and "respectfully disagrees" with this Court's ruling (*Cipla*, 386 F. Supp. 3d at 408 n.23) that Cipla may raise patent misuse as a defense to Amgen's counterclaims. Amgen's discussion of patent misuse is extraneous to whether the FAC alleges a violation of 15 U.S.C. § 1. Cipla notes, however, that even under the principal case cited by Amgen, this case involves conduct involving "impermissibly broaden[ing] the physical . . . scope of the patent." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010).

### 3. The "Relevant Market" Argument

Amgen asserts (D.I. 241 at 17–18) that the FAC does not allege a "relevant market." This assertion is no basis for dismissal, for two separate reasons. First, an agreement can violate 15 U.S.C. § 1 if it "interferes with the natural flow of interstate commerce [and] clearly has, by its 'nature' and 'character,' a 'monopolistic tendency.'" *Radiant Burners*, 364 U.S. at 660. *Radiant Burners* rejected essentially the same argument as Amgen makes here. "Relevant market" is a concept necessary to determining if a monopoly has been created, but is not a requirement for *pleading* a *horizontal* violation of 15 U.S.C. § 1. *See Ohio v. Am. Express Co*, 138 S. Ct. 2274, 2285 n.7 (2018); *Radiant Burners*, 364 U.S. at 660.

At all events, the FAC contains specific allegations that Cinacalcet Products do, in fact, constitute a "relevant market" (D.I. 73 ¶¶ 43–50) including: "As shown by Amgen's ability to raise prices and earn supracompetitive profits on SENSIPAR® over a 14-year period from 2004 through 2018, without attracting any successful entry by any other close substitute in oral dosage form before Teva launched its generic substitute in December 2018, Cinacalcet Products constitute a 'relevant market' for purposes of antitrust and patent misuse analysis." D.I. 73 ¶ 50.

Where required (and they are not required in cases involving horizontal competitor agreements not to compete, *see Ohio*, 138 S. Ct. at 2285 n.7), allegations of a "relevant market" need merely give notice of a party's position, *see W. Penn*, 627 F.3d at 100–01, and a basis on which a court may "determine that the relevant market should be defined as narrowly." *Rolite, Inc. v. Wheelabrator Envt'l Sys., Inc.*, 958 F. Supp. 992, 997 (E.D. Pa. 1997) (distinguishing *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162 (S.D.N.Y. 1995)). Amgen's extremely high gross margins—"in the region of 98%" (D.I. 73 ¶ 49)—and its ability to raise prices and earn supra-competitive profits on SENSIPAR® over a 14-year period from 2004 through 2018, when it had more than $1 billion in sales (*id.* ¶¶ 47–50)—set forth an "economically viable and plausible market[]," *Rolite*, 958 F. Supp. at 998–99, establishing Amgen's market power in the market so defined. *See* D.I. 73 ¶¶ 42–53.

## IV. THE FAC ALLEGES CALIFORNIA STATE STATUTORY CLAIMS.

For substantially the reasons that the Amgen–Teva Agreement violates 15 U.S.C. § 1, it also violates Cal. Bus. & Prof. Code § 16720. Further, the California statute grants private standing to litigants who could not invoke 15 U.S.C. § 15. *See California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989) (holding that California antitrust law permitting recovery by indirect purchasers was not preempted even though federal antitrust law did not authorize such persons to sue).

The California state antitrust statute "reaches deep in proscribing anticompetitive conduct," "beyond the Sherman Act to threats to competition in their incipiency," and proscribes "the full extent of incipient conspiratorial conduct described in section 16720 of the Act." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1110 (9th Cir. 2013); Cal. Bus. & Prof. Code § 16720(e)(1)–(4) (proscribing conduct). Defendants' "direct" injury arguments are no defense to liability under the California state antitrust statute.

Amgen's and Teva's challenged conduct also falls within the broad scope of "unlawful, unfair or fraudulent business act[s] or practice[s]" under California Bus. & Prof. Code § 17200. This statute "borrows" other laws and authorizes injunctive relief against conduct that is "unlawful," "unfair," or "fraudulent." *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999). On full trial, the complained of conduct of Amgen and Teva could easily be deemed to fall within these terms, whether or not Defendants might be able to mount a defense to antitrust liability.

## V. THE FAC STATES A CLAIM FOR FRAUD.

Teva is alleged to have accepted an enormous payoff from Amgen (D.I. 73 ¶ 32) in exchange for a sham "admission" of infringement (*id.* ¶ 33); Amgen and Teva are alleged to have publicized this purported "admission" (*id.* ¶ 54) for the purpose of "deceiving and deterring Cipla . . . from entering into competition with them (*id.* ¶ 63); and Teva's sham "admission" of infringement is alleged to have misled and deceived Cipla into not entering the cinacalcet market "for a period of several weeks." *Id.* ¶ 67. Amgen and Teva are further alleged to have publicly misrepresented the terms of the Amgen-Teva Agreement. *Id.* ¶¶ 18–23.

Especially in view of Teva's recent repudiation (*see* Exhibit 2) of the purported "admission" of infringement that Amgen and Teva previously put forward as a basis for issuance of a federal court judgment, the FAC plausibly alleges that Amgen and Teva conspired to deceive and mislead regulators, courts, and competitors as to both the state of the (largely confidential) record of the 16-853 Case and the terms of the Amgen-Teva Agreement, and to bring about the very effect that the FAC alleges Defendants intended to cause, namely, misleading and deterring Cipla from selling Cinacalcet Products despite Teva's at-risk launch on December 28, 2018. The FAC alleges that Cipla relied to its detriment on Amgen's and Teva's allegedly false statements. D.I. 73 ¶¶ 24,

14

67–68. These allegations satisfy all of the elements of a claim for fraud under California law. *See, e.g., Conroy v. Regents of Univ. of Cal.*, 203 P.2d 1127, 1135 (Cal. 2009) ("The elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage.").

## CONCLUSION

Defendants' motions to dismiss should be denied. In the alternative, Cipla should be granted leave to re-plead to cure any pleading deficiency the Court may find.

Dated: December 6, 2019

Of Counsel:

James W. Dabney
Patrice P. Jean
Richard M. Koehl
Dina Hoffer
Deanne K. Cevasco
David E. Lansky
Lynn M. Russo
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6803
james.dabney@hugheshubbard.com
patrice.jean@hugheshubbard.com
richard.koehl@hugheshubbard.com
dina.hoffer@hugheshubbard.com
deanne.cevasco@hugheshubbard.com
david.lansky@hugheshubbard.com
lynn.russo@hugheshubbard.com

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*