IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: SENSIPAR (CINACALCET HYDROCHLORIDE TABLETS) ANTITRUST LITIGATION | ) ) ) MDL No. 19-2895 (LPS) |
| CIPLA LTD. and CIPLA USA, INC., Plaintiffs, v. AMGEN INC. and TEVA PHARMACEUTICALS USA, INC., Defendants. | ) ) ) ) ) ) C.A. No. 19-44 (LPS) ) ) ) ) ) |
| AMGEN INC., Counterclaim-Plaintiff, v. CIPLA LTD. and CIPLA USA, INC., Counterclaim-Defendants. | ) ) ) ) ) ) ) ) ) |

**AMGEN INC.'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS CIPLA LTD. AND CIPLA USA INC.'S FIRST AMENDED COMPLAINT**

OF COUNSEL:

Eric J. Stock
Kate Dominguez
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201
(214) 698-3100

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant Amgen Inc.*

January 10, 2020

**TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................................. 1

I. Cipla Has Not Alleged Article III Standing ...................................................................... 1

II. Cipla Has Not Established Antitrust Standing .................................................................. 2

III. Cipla Fails To State A Sherman Act Claim ...................................................................... 6

IV. Cipla Has Not Adequately Pled a Relevant Market .......................................................... 9

V. Cipla's California Claims Fail .......................................................................................... 9

VI. Cipla's Fraud Claim Fails ................................................................................................ 10

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alberta Gas Chems. Ltd. v. E.I. Du Pont De Nemours & Co.*,
826 F.2d 1235 (3d Cir. 1987)......................................................................................................5

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006).....................................................................................................................5

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)................................................................................................................4, 5

*AT&T Mobility LLC v. AU Optronics Corp.*,
707 F.3d 1106 (9th Cir. 2013) ....................................................................................................5

*Blue Shield of Va. v. McCready*,
457 U.S. 465 (1982)................................................................................................................3, 4

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977).....................................................................................................................3

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986).....................................................................................................................6

*Dang v. S.F. Forty Niners*,
964 F. Supp. 2d 1097 (N.D. Cal. 2013) .....................................................................................5

*FTC v. Actavis, Inc.*,
570 U.S. 136 (2013)...........................................................................................................7, 8, 9

*Gatt Commc'ns, Inc. v. PMS Assocs., LLC*,
711 F.3d 68 (2d Cir. 2013)....................................................................................................3, 4

*Goldman v. Gen. Accident Ins. Co. of Am.*,
2007 WL 2781935 (D.N.J. May 24, 2007) ................................................................................7

*Hospira, Inc. v. Sandoz Inc.*,
2014 WL 794589 (D.N.J. Feb. 27, 2014) ..................................................................................7

*In re Lipitor Antitrust Litig.*,
868 F.3d 231 (3d Cir. 2017).................................................................................................7, 8

*In re Loestrin 24 Fe Antitrust Litig.*,
814 F.3d 538 (1st Cir. 2016) ......................................................................................................8

# TABLE OF AUTHORITIES *(continued)*

Page(s)

*In re Wellbutrin XL Antitrust Litig.*,
  868 F. 3d 132 (3d Cir. 2017)..................................................................................................6

*Janssen Prods., L.P. v. Lupin Ltd.*,
  2016 WL 1029269 (D.N.J. Mar. 15, 2016)............................................................................7

*King Drug Co. of Florence, Inc. v. Smithkline Beecham Corp.*,
  791 F.3d 388 (3d Cir. 2015)...................................................................................................8

*Lifewatch Servs. Inc. v. Highmark Inc.*,
  902 F.3d 323 (3d Cir. 2018)...................................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...............................................................................................................4

*Ohio v. American Express Co.*,
  138 S. Ct. 2274 (2018)...........................................................................................................9

*Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*,
  123 F.3d 111 (3d Cir. 1997)...................................................................................................2

*Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*,
  364 U.S. 656 (1961)...............................................................................................................4

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011).....................................................................................................2

*SAS of P.R., Inc. v. P.R. Tel. Co.*,
  48 F.3d 39 (1st Cir. 1995)......................................................................................................4

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)...........................................................................................................1

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
  513 U.S. 18 (1994).................................................................................................................7

*United States v. Singer Mfg. Co.*,
  374 U.S. 174 (1963)...........................................................................................................8, 9

*Whitmore v. Ark.*,
  495 U.S. 149 (1990)...............................................................................................................2

*Zeneca Ltd. v. Pharmachemie B.V.*,
  37 F. Supp. 2d 85 (D. Mass. 1999)........................................................................................7

# TABLE OF AUTHORITIES *(continued)*

Page(s)

**Rules and Statutes**

California Health & Safety Code § 134002(a)(1).......................................................................9, 10

# ARGUMENT

Cipla's Opposition to Amgen's motion to dismiss relies on assertions found nowhere in the First Amended Complaint ("FAC") and on language from case law that is divorced from its context and therefore inapplicable. Nothing in the FAC alleges *any* injury to Cipla now that it has launched and is selling its generic version of Sensipar. Accordingly, Cipla lacks Article III standing. Cipla also fails to meaningfully confront Amgen's argument that it lacks antitrust standing, either by demonstrating that its allegations claim an injury that results from the impact of Amgen's conduct on competition, or by pointing to plausible allegations that any injury Cipla suffered—had it suffered one—was sufficiently direct. On the merits, both Cipla's federal and state law claims fail to state a claim. Accordingly, Counts 2-5 of Cipla's FAC should be dismissed.

## I.     Cipla Has Not Alleged Article III Standing

Cipla does not dispute the bedrock proposition that Article III standing requires an injury in fact, and that "an injury in fact must be both concrete *and* particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Yet Cipla does not plead in the FAC an injury in fact, and nothing in its Opposition can or does remedy that failing.

Cipla concedes that it has already entered the market from which it claims it was excluded and has already made tens of millions of dollars from that entry. Cipla's Opposition attempts for the first time to theorize a *different* injury—that Cipla's launch was "delay[ed]" for a few "weeks" and the "value of Cipla Product inventory [] declined during the period of delay." Opp. 5. But Cipla must plead this theory—and facts that suggest it is plausible—in the FAC, not simply assert it without any supporting factual allegations in opposition to the motion to dismiss. Cipla launched when the only generic launch had been Teva's already-ceased launch, and therefore received the benefits of exclusivity that it sought. Cipla's Opposition does not explain why or to what extent the value of its inventory supposedly declined, and the FAC never even *alleges* such a decline.

Cipla also claims, in one vague sentence, that it is "threatened with future injury" because Amgen's appeal against Teva is still live. Opp. 5. But "[a]llegations of 'possible future injury' are not sufficient to satisfy Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). Instead, to have standing, a plaintiff must allege an injury that is "certainly impending." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 122 (3d Cir. 1997). This "imminence requirement ensures that courts do not entertain suits based on speculative or hypothetical harms." *Id.* Moreover, Cipla has not pled this theory in the FAC. And Cipla certainly has not pled any such theory that accounts for the Federal Circuit's recent decision affirming the finding that Piramal did not infringe (a finding that should be important under Cipla's theory).

Because Cipla has not "clearly and specifically set forth facts sufficient to satisfy these Art[icle] III standing requirements," its Complaint cannot survive a motion to dismiss. *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990).

## II. Cipla Has Not Established Antitrust Standing

Cipla's Opposition does not rebut Amgen's argument that Cipla's alleged "exclusion" from the market did not "flow" from any anticompetitive conduct, but rather was a product of Cipla's *own decision making* about its contract with Amgen. As discussed in Amgen's Opening Brief, the FAC itself explicitly states that Cipla "would have" launched "but for the January 4, 2019, letter from Amgen with its threat of further litigation." FAC ¶ 68; Opening Br. 6-8. The FAC is thus clear that Cipla's own fear of litigation and uncertainty as to its contractual rights led to its "delay" in launching, *not* its reliance on "Teva's sham 'admission' of infringement and Amgen's and Teva's joint bid for issuance of a collusive judgment of infringement." Opp. 5 (citations omitted).

Moreover, Cipla's alleged delay in entering the market is the result of the operation of its own contract with Amgen, not a result of any adverse impact on competition that resulted from the Amgen-Teva Agreement. The FAC alleges that the Amgen-Teva Agreement harmed Cipla *only*

2

because that Agreement prevented Cipla from invoking a provision in *its separate* contract with Amgen that would have allowed it to launch its product early at-risk without facing a motion for preliminary injunctive relief. Cipla's supposed "injury" thus simply does not flow from the effect of Teva's exit on *competition* in the market (i.e., the reduction of competition between Amgen and Teva). By definition, such an injury is contractual injury, not antitrust injury. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487–88 (1977); *Gatt Commc'ns, Inc. v. PMS Assocs., LLC*, 711 F.3d 68, 77 (2d Cir. 2013) (even if termination of plaintiff's dealership resulted from antitrust violation, plaintiff lacked antitrust injury because its injuries did not flow from anticompetitive consequences of the antitrust violation, i.e., higher consumer prices).

Rather than confront the standard laid out in *Brunswick* for when a plaintiff has alleged the required antitrust injury, Cipla offers soundbites from inapposite Supreme Court cases that do not change the antitrust standing requirement. Cipla repeatedly quotes the Court's statement in *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982), that a plaintiff could sue where denying the plaintiff reimbursement for services was "the very means by which it is alleged that [the insurer] sought to achieve its illegal ends." *Id*. at 466. In *McCready*, the alleged conspiracy between the insurance company and a group of psychiatrists to deny reimbursement for treatment by psychologists directly harmed those psychologists, but *also* directly harmed those insured individuals—like plaintiff—whom the defendant refused to reimburse. Here, Cipla was not being paid by Amgen and any injury it suffered would bear no resemblance to the defendant's direct refusal to pay the *McCready* plaintiff. Finding antitrust standing where, absent the alleged conspiracy, a plaintiff would have directly received a payment from the defendant does not suggest antitrust standing exists for a plaintiff like Cipla whose claimed harm stemmed from its independent decision not to launch its product based on the contents of its own contract. And the legality of the

3

Amgen-Teva Settlement is an independent question under the antitrust laws that does not, and should not, turn on the interpretation of the terms of Amgen's separate contract with Cipla.[1]

Neither *McCready* nor any other case invoked by Cipla addresses whether a plaintiff has antitrust standing where its alleged harm stems from the effect of challenged conduct on the terms of a contract that the plaintiff itself entered. That issue does not concern the antitrust laws. *See, e.g.*, *SAS of P.R., Inc. v. P.R. Tel. Co.*, 48 F.3d 39, 46 (1st Cir. 1995) (no antitrust standing where claim was really one for breach of contract); *Gatt*, 711 F.3d at 77 (2d Cir. 2013). Instead, the impact of the Amgen-Teva Agreement on a separately negotiated contract is a potential contractual harm that is not germane to whether the Amgen-Teva Agreement was an unlawful collusive agreement between Amgen and Teva to reduce competition between them.

If anything, as explained in Amgen's Opening Brief, Cipla, as a competitor, would ordinarily have *benefited* from the reduction in competition between Amgen and Teva caused by the Amgen-Teva settlement because Teva's exit resulted in "making supracompetitive pricing more attractive." Opening Br. 8-9 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986)). It is only the operation of Cipla's contract that causes a different result. Indeed, because other manufacturers, unlike Cipla, adhered to their contracts and did not launch when Teva exited, Cipla *benefited* from any increase in prices that resulted from the Amgen-Teva agreement, reaping tens of millions of dollars. *See* Opening Br. 9.

Cipla lacks antitrust standing for an additional, independent reason—because other, more "direct victims of the conspiracy" exist. Opening Br. 9 (quoting *Assoc. Gen. Contractors of Cal.,*

---

[1] *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*, 364 U.S. 656 (1961), is even further afield. It considered the allegation of a *per se* antitrust violation—a group boycott. It concluded only that a group boycott was unlawful even in the absence of allegations that competition was harmed. *Id.* at 659. It therefore was not an antitrust standing case at all and provides no authority for the conclusion that Cipla has antitrust standing.

4

*Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542 n.47 (1983)). Here again, Cipla does not contest that if Cipla had adequately pled that the Amgen-Teva Settlement reduced competition between Amgen and Teva, purchasers from Amgen, not a competitor like Cipla, would have been its direct victims. Cipla, without any legal support, simply quotes its conclusory allegation that Amgen "intended to exclude Cipla" and claims that to be a "direct" antitrust injury. Opp. 6. But the antitrust standing question is not whether impact on certain parties was foreseeable or intended; instead, "standing analysis is employed to search for the most effective plaintiff from among those who have suffered loss." *Alberta Gas Chems. Ltd. v. E.I. Du Pont De Numours & Co.*, 826 F.2d 1235, 1240 (3d Cir. 1987). *Cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458–61 (2006) (directness requirement derived from antitrust law prohibits even foreseeable victims from suing where more direct victims exist). Here, to the extent that the Amgen-Teva Agreement resulted in any actionable *competition reducing* effects, such as "artificially high prices" or a reduction in drug supply, FAC ¶ 62, it is *drug purchasers*—not Cipla—that are the most directly harmed and thus the most effective plaintiffs to bring a claim (assuming there were a viable claim, which Amgen does not believe to be true, *see* D.I. 28, MDL No. 19-2895, at 7-14).[2]

Finally, Cipla's last-ditch argument that the antitrust standing requirements for its injunction claim are "less stringent than those for damages" is incorrect and cannot salvage the FAC. Opp. 8. While a claim for injunctive relief requires a showing only of "threatened" loss or damage, rather than actual injury, the Supreme Court held, in the very case cited by Cipla, that a plaintiff seeking

---

[2] Cipla argues that this "direct" injury argument is "no defense" under the California Cartwright Act because that statute reaches "beyond the Sherman Act to threats to competition in their incipiency." Opp. 13 (quoting *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1110 (9th Cir. 2013). But *AT&T* concerned the scope of conduct proscribed by the Cartwright Act, not antitrust standing. Cipla's failure to establish antitrust standing under the federal standard also dooms its California antitrust claim. *See Dang v. S.F. Forty Niners*, 964 F. Supp. 2d 1097, 1110 (N.D. Cal. 2013) (antitrust standing required under the Clayton and Cartwright Acts).

injunctive relief must still establish antitrust standing, that is, that the "threatened loss or damage" is "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986). Setting aside the fact that Cipla has not adequately alleged any "threatened loss" in the first place, *see supra* Section I, its failure to allege that any loss "flows from that which makes defendants' act unlawful" is as true for its injunction claim as its damages claim.

### III. Cipla Fails To State A Sherman Act Claim

Cipla's antitrust claims also fail on the merits. In particular, the only conduct on which Cipla now bases its claim—Amgen and Teva allegedly entering into a "sham" settlement and petitioning the court for a "collusive judgment," Opp. 8—is not actionable as pled.

First, despite Cipla's repeated assertions that Teva made a "sham" admission of infringement, Amgen and Teva engaged in petitioning activity protected by the *Noerr-Pennington* doctrine when they entered the settlement agreement and petitioned the Court to implement it. Opening Br. 13. While "sham" petitioning may not be entitled to protection, a "sham" requires a showing that the defendant injured the plaintiff merely by *making* the petition, not the outcome of the petition. *In re Wellbutrin XL Antitrust Litig.*, 868 F. 3d 132, 148 (3d Cir. 2017). Moreover, Cipla has pled no theory of how the supposed "sham" admission even impacted it, particularly since Judge Goldberg denied the motion for indicative ruling that Cipla criticizes. And, as noted, Cipla pleads no theory of harm from Teva's admission that takes into account the Federal Circuit's ruling affirming the finding that Piramal did not infringe.

Moreover, Cipla pleads no factual basis for the apparent assertion that the admission of infringement, or the motion for an indicative ruling, was a sham, i.e., legally baseless. The implicit basis for that allegation appears to be Teva's obtaining a non-infringement finding from the district court before settling on appeal. *See* Opp. at 11. But there is simply no reason—and Cipla provides

6

none—to hold that any party who settles on appeal, even after succeeding below, is somehow engaged in a sham. Parties can and do settle while a case is on appeal as a matter of course, and vacatur of decisions after a settlement is an accepted form of relief within the discretion of the court. *See* Opening Br. 12-13; *Janssen Prods., L.P. v. Lupin Ltd.*, 2016 WL 1029269, at *3 (D.N.J. Mar. 15, 2016); *Hospira, Inc. v. Sandoz Inc.*, 2014 WL 794589, at *5 (D.N.J. Feb. 27, 2014); *Goldman v. Gen. Accident Ins. Co. of Am.*, 2007 WL 2781935, at *1 (D.N.J. May 24, 2007); *Zeneca Ltd. v. Pharmachemie B.V.*, 37 F. Supp. 2d 85, 90 (D. Mass. 1999).[3]

Second, as explained in Amgen's Opening Brief, under *FTC v. Actavis, Inc.*, 570 U.S. 136, 158 (2013), a patent settlement only becomes potentially unlawful where the patentee has provided a "large and unjustified" payment to the alleged infringer. Opening Br. 10-13. Therefore, as the Third Circuit has explicitly stated, "to survive a motion to dismiss" post-*Actavis*, "plaintiffs [challenging a patent settlement] ***must allege*** facts sufficient to support the legal conclusion that the settlement at issue involves a ***large and unjustified reverse payment*** under *Actavis*." *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 251–52 (3d Cir. 2017) (emphasis added). Contrary to Cipla's contention, Amgen is not asserting some "patent-based defense" that its settlement with Teva is "immunized from antitrust scrutiny" because Teva's product is "within the 'scope' of [the '405 patent's] claims."

---

[3] Cipla's attempts to distinguish these cases fail. Opp. 11 & n.1. Cipla suggests that *Hospira* is "perhaps incorrect[]" but does not explain why that is so. Its characterization of that case as looking only to a vacated prior judgment as "precedent" as opposed to as "preclusive" is incomprehensible. Insofar as Cipla is contending that a vacated district court judgment would still estop a party from holding a contrary position, that would eviscerate the purpose of *any* vacatur. That *Janssen* did not modify the prior findings of fact and conclusions of law does not change the fact that the court *did* otherwise modify its prior judgment consistent with the parties' settlement while the case was on appeal. While *Goldman* is not a patent case, Cipla cannot dispute that it is yet another example of a court vacating a prior judgment pursuant to a settlement reached during pendency of appeal. Finally, although *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994), halted the procedure of circuit courts directly vacating district court judgments by virtue of settlement, that does not mean that settlement on appeal and subsequent vacatur (by the district court) is either impossible or a result of misconduct.

Opp. 8. Instead, Amgen's argument is that, as required by *Actavis* and *Lipitor*, Cipla's attack on the Amgen-Teva settlement must be dismissed because Cipla has failed to ***affirmatively plead*** a "large and unjustified reverse payment." *Lipitor*, 868 F.3d at 252.

Cipla's belated attempt to conjure up such a "large and unjustified reverse payment" fails. Amgen did not "cede $200 million in revenues to Teva" in reverse payments. Opp. 9. Rather, Amgen and Teva settled Amgen's at-risk damages claim against Teva for its early entry in precisely the way that *Actavis*, the FTC, and the State of California have endorsed. *See* D.I. 28, MDL No. 19-2895, at 7-14; D.I. 99, MDL No. 19-2895 at 3-7; *infra* 9-10.[4] Given that Cipla itself insists that Teva did not infringe and its stipulation of infringement was a "sham," it can hardly be heard to contend that there is anything surprising or suspect about Teva retaining a substantial portion of the revenues that it earned through its at-risk launch.

Cipla's reliance on *United States v. Singer Mfg. Co.*, 374 U.S. 174 (1963), is unavailing. There, the conduct at issue involved three competitors "settl[ing] their patent-related disagreements while assigning the broadest claims to the firm best able to enforce the patent against yet other potential competitors." *Actavis*, 570 U.S. at 149 (citing *Singer*, 374 U.S. at 190–92). *Singer* held that "the Sherman Act will not permit" one firm enforcing a patent to benefit its co-conspirators by

---

[4] The cases on which Cipla relies do not change this outcome. Opp. 10-11. *Lipitor* involved a brand manufacturer who released its damages claim against a generic with respect to one drug, in exchange for that generic's agreeing to delay its entry with respect to a different drug in a different case. 868 F.3d at 244. That is not the case here. *See* D.I. 28, MDL No. 19-2895, at 7-14; D.I. 99, MDL No. 19-2895 at 4. *King Drug Co. of Florence, Inc. v. Smithkline Beecham Corp.* held that a brand's agreement not to produce an "authorized generic" of a drug (a "no-AG agreement") can be a reverse payment under *Actavis*. 791 F.3d 388, 394 (3d Cir. 2015). No "no-AG agreement" is at issue here, and *King Drug* emphasized *Actavis*'s holding that, contrary to improper reverse payment settlements, "commonplace forms" of settlement "such as tender by an infringer of less than the patentee's full demand" are acceptable. 791 F.3d at 402. This "commonplace" "tender" is precisely what Cipla claims is actionable anticompetitive conduct—an argument rejected by *King Drug* and *Actavis*. *Cf. In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 549–50 (1st Cir. 2016) (cited at Opp. 11) (holding on an issue of no relevance here that reverse payments under *Actavis* are not limited to monetary payments).

8

excluding common competitors. 374 U.S. at 194–95. Nothing of the sort has occurred here. The Amgen-Teva Agreement did not effectuate an assignment of patents from Teva to Amgen, or vice versa, or require or allow Amgen to wield its patent (or anyone else's) to prevent Cipla from entering the market over and above what Cipla had *already agreed to* in its settlement agreement with Amgen. Indeed, *Actavis* itself distinguished *Singer* from "commonplace" damages settlements like the Amgen-Teva Agreement. 570 U.S. at 149, 151–52.

## IV. Cipla Has Not Adequately Pled a Relevant Market

Cipla's contention that it need not plead a relevant market is incorrect. Opp. 12. A rule-of-reason Section 1 claim alleging horizontal concerted action must adequately define the relevant market. *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 336 (3d Cir. 2018). While the Supreme Court has noted that certain horizontal restraints may not need to "precisely define" the relevant market, *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018), the Third Circuit clarified that this applies to horizontal restraints analyzed under the "quick look" standard, rather than the rule-of-reason analysis, *Lifewatch*, 902 F.3d at 336 n.8, which applies here. *Actavis*, 570 U.S. at 158–59 (alleged reverse payment settlements must be analyzed under the "rule-of-reason").

On the merits, Cipla's Opposition does nothing to salvage its inadequate allegations. Cipla simply quotes the same allegations that Amgen has already identified as insufficient. Opp. 12-13. Those allegations fail to plead a relevant market. *See* Opening Br. 17-18.

## V. Cipla's California Claims Fail

As Cipla concedes, its Cartwright Act claim is "substantially" the same as its Sherman Act claim. Opp. 13. Cipla has no response to Amgen's argument that, as such, the Cartwright Act claim fails for the same reasons as its Sherman Act claim. Opening Br. 18. Indeed, California's recent enactment of California Health & Safety Code § 134002(a)(1) makes this conclusion all the more clear. *See* D.I. 99, MDL No. 19-2895, at 5. That far-reaching law specifically exempts from

9

antitrust scrutiny certain settlement agreements precisely like the Amgen-Teva Agreement, demonstrating California's manifest rejection of Cipla's antitrust theory. *See id.*

Cipla's Opposition likewise cannot save Cipla's UCL claim. While Cipla may be correct that "unlawful," "unfair," or "fraudulent" activity may encompass more than antitrust misconduct, Opp. 14, that is irrelevant to Cipla's UCL allegations here, which are premised entirely on the allegations underlying its Sherman Act claims and fail for the same reasons. FAC ¶¶ 76-79; Opening Br. 18-19, 20 n.5. Cipla's Opposition provides no explanation for how its allegations could otherwise state a UCL claim, and thus does nothing to salvage that claim.

## VI. Cipla's Fraud Claim Fails

Cipla's recitation of the FAC's conclusory allegations of fraud does not address, much less rebut, Amgen's arguments that Cipla failed to plead any actionable "misrepresentation" or "reliance." *See* Opp. 14-15; Opening Br. 19-20. Indeed, Cipla once again ignores the fact that it *expressly pleaded* that it was "prepared to begin selling its [generic product] . . . and *would have done so but for the January 4, 2019, letter from Amgen with its threat of further litigation*." FAC ¶ 68 (emphasis added). In other words, it was not some "reliance" on Amgen's statements regarding Teva's cessation of sales that prevented Cipla from launching; rather, Cipla's own allegations reveal that it was going to launch *regardless* of such statements and held back only because of its fear of litigation. Nor does Cipla even attempt to respond to Amgen's arguments that the alleged "misrepresentation" is at most a nonactionable opinion, and that the FAC lacks any non-conclusory allegation that Amgen believed the representation was false when made. Opening Br. 19-20. Cipla has not pled the elements of fraud, and its claim must be dismissed.

## CONCLUSION

The Court should dismiss the FAC's second through fifth causes of action with prejudice.

<table>
<tr><td>

OF COUNSEL:

Eric J. Stock
Kate Dominguez
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Suite 2100
Dallas, TX 75201
(214) 698-3100

January 10, 2020

</td><td>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant Amgen Inc.*

</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 10, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Sue L. Robinson, Esquire<br>Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | VIA ELECTRONIC MAIL |
| James W. Dabney, Esquire<br>Patrice P. Jean, Esquire<br>Dina Hoffer, Esquire<br>Deanne K. Cevasco, Esquire<br>David E. Lansky, Esquire<br>Lynn M. Russo, Esquire<br>Richard M. Koehl, Esquire<br>HUGHES HUBBARD & REED LLP<br>One Battery Park Plaza<br>New York, NY  10004<br>*Attorneys for Plaintiffs* | VIA ELECTRONIC MAIL |
| John W. Shaw, Esquire<br>Karen E. Keller, Esquire<br>David M. Fry, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant Teva Pharmaceuticals USA, Inc.* | VIA ELECTRONIC MAIL |

2

Henninger S. Bullock, Esquire  
Richard A. Spehr, Esquire  
Karen W. Lin, Esquire  
MAYER BROWN  
1221 Avenue of the Americas  
New York, NY  10020  
(212) 506-2500  
*Attorneys for Defendant Teva Pharmaceuticals USA, Inc.*

*VIA ELECTRONIC MAIL*

                                                      /s/ *Brian P. Egan*
                                                      _____
                                                      Brian P. Egan (#6227)