IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIPLA LTD. and CIPLA USA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AMGEN INC. and TEVA PHARMACEUTICALS USA, INC.,<br><br>Defendants. | C.A. No. 19-cv-00044-LPS<br><br>**CONFIDENTIAL FILED UNDER SEAL** |

**PLAINTIFFS' BRIEF IN OPPOSITION TO AMGEN'S EXPEDITED MOTION FOR AN INJUNCTION PENDING APPEAL**

Of Counsel:

James W. Dabney
Patrice P. Jean
Dina Hoffer
Deanne K. Cevasco
David E. Lansky
Lynn M. Russo
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6803
james.dabney@hugheshubbard.com
patrice.jean@hugheshubbard.com
dina.hoffer@hugheshubbard.com
deanne.cevasco@hugheshubbard.com
david.lansky@hugheshubbard.com
lynn.russo@hugheshubbard.com

Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

Dated: May 7, 2019

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 4

SUMMARY OF ARGUMENT ........ 9

I. AMGEN HAS FAILED TO MAKE ANY STRONG SHOWING THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL........ 11

A. Amgen Now Runs Away From the Text of Section 5.6 ........ 11

B. Teva's Continuing Indirect Sales Are an Independent Bar to Relief........ 13

C. Amgen and Teva Have Likely Engaged in Patent Misuse ........ 14

II. AMGEN HAS FAILED TO SHOW INADEQUACY OF LEGAL REMEDIES........ 15

III. THE REQUESTED INJUNCTION WOULD CAUSE IRREPARABLE HARM TO CIPLA ........ 16

IV. THE PUBLIC INTEREST........ 17

V. A 14-DAY INJUNCTION IS WHOLLY UNWARRANTED........ 17

CONCLUSION........ 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
42 F.3d 1421 (3d Cir. 1994).....11

*Amgen Inc. v. Amneal Pharmaceuticals LLC*,
328 F. Supp. 2d 373 (D. Del. 2018).....9, 12, 18

*Amgen Inc. v. Azar*,
No. 17-1006, 2018 WL 1990521 (D.D.C. Feb. 22, 2018).....17

*Berlanbach v. Anderson and Thompson Ski Co.*,
329 F.3d 782 (9th Cir. 1964).....16

*FTC v. Actavis, Inc.*,
570 U.S. 136 (2013).....5, 15

*Hilton v. Braunskill*,
481 U.S. 770 (1987).....10, 11

*Holland v. Rosen*,
895 F.3d 272 (2018).....11

*Mahn v. Harwood*,
112 U.S. 354 (1884).....18

*Nat'l Lockwasher Co. v. George K. Garrett Co.*,
137 F.2d 255 (3d Cir. 1943).....16

*Noven Pharms., Inc. v. Mylan Techs Inc.*,
No. 17-1777-LPS, 2018 WL 4007848 (D. Del. Aug. 22, 2018).....11, 18

*Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*,
693 F.3d 417 (3d Cir. 2012).....8

*Republic of the Phillipines v. Westinghouse Elec. Corp.*,
949 F.2d 653 (3d Cir. 1991).....10

*Scott Paper Co. v. Marcalus Mfg. Co.*,
326 U.S. 249 (1945).....18

*Singer Management Consultants, Inc. v. Milgram*,
650 F.3d 223 (3d Cir. 2011) (en banc).....11

*U.S. Gypsum Co. v. Nat'l Gypsum Co.*,
352 U.S. 457 (1957) (Harlan, J.).....15, 16

**TABLE OF AUTHORITIES**
**Cont'd**

**Cases** **Page(s)**

*United States v. Singer Mfg. Co.*,
374 U.S. 174 (1963)....5, 11, 15

*United States v. U.S. Gypsum Co.*,
333 U.S. 364 (1948)....15, 16

*Winter v. Nat. Res. Def. Council*,
555 U.S. 7 (2008)....11

**Statutes and Rules**

15 U.S.C. § 1....5, 15

## INTRODUCTION

It is no surprise Amgen, once again, in this action, seeks delay. Delay has been Amgen's tactic the life of this case. It began at the start when Amgen sought to delay any expedited schedule for months to allow briefing and argument on its motion to dismiss and it continues here. Because Amgen's motives are clear, Cipla respectfully submits that the Court should not entertain Amgen's latest attempt to delay, and hence handsomely profit off, its tactics.

By Order issued February 1, 2019 (D.I. 35), the Court scheduled a hearing on March 8, 2019, to consider Cipla's license and patent misuse defenses to Amgen's then-threatened claims of right to "injunctive relief, breach of contract, treble damages, and sanctions." D.I. 8 Ex. F at 3. Following a further hearing held February 15, 2019 (D.I. 109), the Court rejected Amgen's bid for delay and called for briefing on Cipla's license and patent misuse defenses. D.I. 52. On February 21, 2019, Amgen stipulated that specified Cipla in-house counsel could review the Amgen documents produced in this case. D.I. 67. Amgen attempted, and failed (D.I. 129), to prevent discovery in this action from being used to oppose Amgen's then-pending application for a collusive judgment in C.A. No. 16-853-MSG (the "'853 Action").

On February 25, 2019, Cipla provided Amgen with formal written notice of its intent to begin selling the pharmaceutical products identified in its FDA-approved Abbreviated New Drug Application No. 208915 ("Cipla Products"). D.I. 79 Ex. 1. Cipla's notice letter stated in part:

> Please be advised that Cipla has decided to begin selling the pharmaceutical products identified in its FDA-approved Abbreviated New Drug Application No. 208915 ("Cipla Products"). Cipla's sales are expected to begin following the court's ruling on whether Amgen has any right to object to pretrial sales of the Cipla Products following the hearing set for March 8, 2019. Should Amgen wish to test, by motion for preliminary injunction, the purported claims threatened in its January 4 Letter, Cipla has no objection to any such motion being heard on March 8 together with Cipla's pending motion for interim declaratory relief.

Concurrently with the above-quoted notice, Cipla filed an amended complaint (D.I. 73) and moved for preliminary declaratory relief. D.I. 74, 75, 76. On February 26, 2019, Amgen filed a letter application (D.I. 77) which argued for indefinite delay in any preliminary ruling on Cipla's license and patent misuse defenses. Amgen did not seek to bring on any application for preliminary injunction and did not even mention Cipla's February 25 notice letter. *Id*.

On March 1, 2019, having persuaded the Court to put off hearing Cipla's application for preliminary declaratory relief (D.I. 90), Amgen sent Cipla a letter which stated in part: "Cipla's vague statements concerning possible sales, which were tied to the outcome of the March 8th hearing, are meaningless now that the hearing has been converted to a status hearing and the Court has stated that issues previously identified as appropriate for highly accelerated resolution will not be heard at or around the March 8th status hearing." D.I. 103 Ex. B.

By letter dated March 2, 2019 (D.I. 103 Ex. C), Cipla provided Amgen with formal written "notice of its intent to commence selling, immediately, the pharmaceutical products identified in Cipla's FDA-approved Abbreviated New Drug Application No. 208915 ('Cipla Products')." Cipla's notice was made "without prejudice to Cipla's pending claims for monetary, injunctive, and declaratory relief against Amgen, including its rights to relief based on §§ 5.3 and 5.6 of the aforesaid agreement." *Id*.

On March 5, 2019, Amgen filed a letter (D.I. 103) which stated in part: "Amgen is unaware of marketplace evidence suggesting that Cipla has in fact taken steps to prepare to launch; as such, Amgen plans to monitor marketplace events and determine how to respond to any actual launch by Cipla." Amgen put forward extensive argument (*id*. at 2-5) that the Court should not make any preliminary ruling on Cipla's license and patent misuse defenses. Teva similarly op-

posed any preliminary ruling on Cipla's license and patent misuse defenses. D.I. 100. Amgen and Teva profit handsomely from delaying Cipla's entry. *See* D.I. 75.

On March 6, 2019, Amgen abruptly reversed field and argued that the Court should, after all, make a prompt preliminary ruling on whether Cipla is currently licensed or privileged to sell the Cipla Products. D.I. 112 at 1. Two days later, on March 8, 2019, Amgen confirmed in open court that it was abandoning the Due Process, Seventh Amendment, and other arguments for delay put forward in D.I. 103:

> THE COURT: Right. So I recognize things have changed in just recent days. The letter briefs were full of concerns on your behalf that were weighing on me, candidly, the due process, we need discovery. This is not amenable to a speedy hearing.
>
> MR. ROYALL: Yes.
>
> THE COURT: What I'm understanding is that all of that, at least most of it, is related to the procedural, let's say, novelty of the plaintiffs sort of driving this boat. And at this point, when we look at your motion Monday, there won't be any dispute that you can -- that this is a normal procedural mechanism in a situation like this. And further, Amgen is prepared to move quickly without any further discovery, no concerns about due process. And I take it, but I want to understand this, the motion to dismiss can sit to the side, too, because it's not directed to count 1.
>
> MR. ROYALL: Yes.
>
> THE COURT: And so what I'm hearing, but help me make sure I've got this right, don't worry about all those things that were legitimate worries just days ago. Things have changed. Resolve count 1 in our compulsory counterclaim as quickly as possible. Is that where we are?
>
> MR. ROYALL: Your Honor, I believe that we have taken a consistent position throughout. You are right a lot of our concerns previously did stem from the procedural irregularity of what was being proposed by Cipla . . . .
>
> THE COURT: But as you stand here, you are confident that you can get that all resolved in time for a hearing on March 26th?
>
> MR. ROYALL: Yes, Your Honor. We believe we can.

March 8, 2019, Hearing Tr. at 37:5-39:11.

On March 11, 2019, Amgen served a paper styled "Amgen Inc.'s Partial Answer and Counterclaims to Cipla's First Amended Complaint." D.I. 120. Amgen asserted two counter-claims for alleged breach of Litigation Settlement Agreement dated February 26, 2018 (the "Amgen-Cipla Agreement"). On March 21, 2019, Cipla filed its answer to Amgen's counter-claims. D.I. 162. Cipla's answer re-pleaded its previously asserted patent misuse defense and raised an additional defense of unclean hands.

Concurrently with the filing of its answer pleading, Amgen moved for a preliminary in-junction for specific performance of § 7.1(a) of the Amgen-Cipla Agreement, which provides in part: "*Unless otherwise permitted under this Settlement Agreement* . . . neither Defendants nor their Affiliates will, directly or indirectly, . . . at any time beginning with the Effective Date of this Settlement Agreement and ending at 12:01 a.m. on the Entry Date, . . . sell . . . the Defend-ants' Product or any other Generic Cinacalcet Product." D.I. 73-1 § 7.1(a) (emphasis added). Section 5.6 of the Amgen-Cipla Agreement provides in part:

> [2] ***Notwithstanding*** anything to the contrary in this Settlement Agreement, ***if*** [i] any Third Party that has made an At Risk Launch of a Generic Cinacalcet Product (where such At Risk Launch is before or after an at risk launch by Defendants) ***is not found to have infringed*** one or more valid and enforceable claims of the '405 patent ***or*** [ii] ***has not ceased or agreed to cease selling*** such Generic Cinacalcet Product following an At Risk Launch, ***then Amgen shall not be entitled to seek or recover any relief*** from Defendants for Defendants' at risk sales, offers for sale, distribution, or importation of Defendants' Product.

D.I. 186 at 11 (emphasis and numerals added by the Court).

In both its opening (D.I. 122 at 15) and reply briefs (D.I. 170 at 3), Amgen asserted that the above-quoted provision should be read as if the word "or" was struck out and replaced with the word "and." D.I. 186 at 12-13, 16-17. The Court rightly rejected Amgen's position, stating: "the Court is not permitted to rewrite the parties' clear and unambiguous contractual language." *See Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir.

2012) ('The parties have a right to make their own contract, and it is not the function of the court to rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used.')." D.I. 186 at 17. It is undisputed that Teva was "not found to infringe" the '405 Patent in *Amgen Inc. v. Amneal Pharmaceuticals LLC*, 328 F. Supp. 2d 373 (D. Del. 2018).

The Court further concluded that "[t]he Amgen-Cipla Agreement is silent (and ambiguous) as to whether 'selling' includes indirect sales or is limited to direct sales." D.I. 186 at 23. "If . . . 'selling' covers both direct and indirect sales, then Teva's undisputed ongoing indirect sales mean that Teva has not actually ceased selling its product." *Id*. The Court continued: "Without more evidentiary development - as to, for instance, whether 'selling' has an accepted meaning in the pharmaceutical industry, whether Teva does or does not consider transactions other than its direct sales to be 'indirect sales' by Teva, whether and to what extent the transactions that occur after Teva's direct sales impact the amount of revenues Teva ultimately realizes for its sales of Teva Product - the Court is unable to determine whether Teva has ceased or agreed to cease 'selling' the Teva Product within the meaning of the Amgen-Cipla Agreement." *Id.* The Court identified several "issues that are unclear and may impact the construction of 'selling'" including "the extent to which the 'buyer' can return the product without consequence." *Id*. at n.13.

The Court rightly concluded that, by reason of Teva having been "not found to infringe" the '405 Patent in the '853 Action, Amgen was barred from seeking relief against Cipla under the clear and unambiguous terms of Section 5.6 of the Amgen-Cipla Agreement. D.I. 186 at 17-20. The Court also rightly concluded, as a separate and independent ground for denying Amgen's motion, that the record evidence supported a finding that Teva had not ceased or agreed to cease "selling" Cinacalcet Products, with the result that Amgen was separately barred from

seeking relief against Cipla under Section 5.6 of the Amgen-Cipla Agreement. *Id*. at 24. The same uncertainty triggered a separate bar to relief in Section 5.5(a) of the Amgen-Cipla Agreement. *Id*. at 26.

The Court further concluded that "the balance of the equities *narrowly* favors Amgen" (*id*. at 36; emphasis added)[1] and "the public interests favoring Amgen *slightly* exceed those favoring Cipla, under the circumstances of this case." *Id*. at 37 (emphasis added). The Court noted that "the public also has a strong interest in enforcing contractual rights and encouraging the widespread distribution of life-saving pharmaceuticals to patients in need of them, an interest fostered by careful adherence to the laws permitting approval and marketing of less expensive generic versions of drugs." *Id*. at 36.

On May 2, 2019, Amgen filed a Notice of Appeal from the Court's Order denying its motion for preliminary injunction. D.I. 188. On May 3, 2019, Amgen moved for an injunction pending appeal. D.I. 193. On May 6, 2019, the Court directed that any response to Amgen's motion be filed by noon on May 7, 2019. D.I. 195. This is Cipla's brief in opposition to Amgen's expedited motion for an injunction pending appeal.

## SUMMARY OF ARGUMENT

Amgen's motion for an injunction pending appeal should be denied. Tellingly absent from Amgen's motion is any citation to *Hilton v. Braunskill*, 481 U.S. 770 (1987), the seminal authority on the subject which requires that a litigant in Amgen's position make "a *strong showing* that he is likely to succeed on the merits." *Id*. at 776 (emphasis added); *accord Republic of the Phillipines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658, 663 (3d Cir. 1991) (quoting *Hil-*

[1] Cipla submits that footnote 20 of the Court's opinion contains a miscalculation. The Court there noted Cipla's statement that it has "the ability to make 'a nine-figure sale into the market,' i.e., at least $1 billion." D.I. 186 at 30 n.20. Cipla's nine-figure sale is at least $100 million, as opposed to $1 billion. The "nine-figure sale" referred to amounts to a very small fraction of Amgen's reported 2018 SENSIPAR® sales of $1.774 billion. *See* D.I. 164 Ex. 4 at 26 (2018 SENSIPAR® sales summary).

*ton* and concluding: "Westinghouse has not made a *strong enough* showing that it is likely to succeed on the merits of this case to warrant a stay.") (emphasis added); *Noven Pharms., Inc. v. Mylan Techs Inc.*, No. 17-1777-LPS, 2018 WL 4007848 (D. Del. Aug. 22, 2018) (citing and following *Hilton*).

Amgen has failed to make the requisite "strong showing that it is likely to succeed on appeal." *Hilton*, 481 U.S. at 776. Amgen erroneously asserts (D.I. 194 at 1) that "critically, a *lower* standard" purportedly governs its current motion as compared with its failed motion for preliminary injunction. Amgen is incorrect. The legal standard for issuance of injunctions pending appeal is, if anything, more stringent, not less stringent, than is the legal standard for issuance of preliminary injunctions. *Compare Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (applicant for preliminary injunction must establish that "he is likely to succeed on the merits") *with Hilton*, 481 U.S. at 776 ("whether the stay applicant has made a *strong showing* that he is likely to succeed on the merits.") (emphasis added). Contrary to Amgen's suggestion (D.I. 194 at 1), the decision in *Singer Management Consultants, Inc. v. Milgram*, 650 F.3d 223 (3d Cir. 2011) (en banc), does not address the legal standard for injunctions pending appeal, but rather concerns the meaning of "prevailing party" for purposes of a fee-shifting statute. *Singer* has no bearing on this case whatsoever.

"A preliminary injunction 'is an extraordinary remedy . . . which should be granted only in limited circumstances.'" *Holland v. Rosen*, 895 F.3d 272, 285 (2018) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994). In this case, the Court's thorough, 37-page opinion (D.I. 186) makes clear that the Court's denial of preliminary injunctive relief was grounded in correct legal standards and an eminently reasonable exercise of equitable discretion, which took account of relevant factors and should not be disturbed.

# I. AMGEN HAS FAILED TO MAKE ANY STRONG SHOWING THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL

## A. Amgen Now Runs Away From the Text of Section 5.6

Tellingly absent from Amgen's motion is any quotation of the text of the second sentence of Section 5.6 of the Amgen-Cipla Agreement, which text this Court twice quoted in full, construed, and applied to the record evidence on pages 10-20 of its Memorandum Opinion.

Amgen's motion abandons its original contention, made in both its opening (D.I. 122 at 15) and reply (D.I. 170 at 3) briefs, that the word "or" in Section 5.6 should be judicially rewritten to read "and." It is, thus, conceded at this stage that the second sentence of Section 5.6 prescribes two distinct circumstances in which Amgen is barred from seeking relief against Cipla following an "At Risk Launch" by a "Third Party," to wit: (1) a finding of non-infringement; or (2) continued selling of Cinacalcet Products by a Third Party following an At-Risk Launch.

Amgen does not dispute that, under the existing final judgment in the *Amneal* case, Teva "is not found to have infringed" the '405 patent, within the clear and unambiguous meaning of that language in the second sentence of Section 5.6 of the Amgen-Cipla Agreement. *See* D.I. 186 at 17-18. The Court rightly rejected Amgen's theory (D.I. 194 at 6), notably omitted from both its opening (D.I. 122) and reply (D.I. 170) briefs, that the contractual phrase "is not found to have infringed" purportedly excludes Teva because the final judgment in *Amneal* preceded, rather than followed, Teva's At-Risk Launch. The phrase "following an At Risk Launch" does not modify the phrase "is not found to have infringed," as the Court rightly held. D.I. 186 at 18-19. At all events, in part due to Judge Goldberg's refusal to enter a collusive judgment of infringement (*see id*. at 35 n.25), Teva today still "is not found to have infringed" the '405 patent, within the clear and unambiguous language of the second sentence of Section 5.6 of the Amgen-Cipla Agreement.

In lieu of any text-based arguments for its position, Amgen asserts (D.I. 194 at 3-6) that the second sentence of Section 5.6 of the Amgen-Cipla Agreement should not be enforced *as written*, because to do so purportedly would "undermine the overall contractual scheme, render other provisions of the contract superfluous, and lead to a result that neither party anticipated or intended." *Id*. at 4. The Court rightly rejected this argument (D.I. 186 at 17), as "the Court is not permitted to rewrite the parties' clear and unambiguous contractual language." *Id*. The Court also rightly rejected this argument because enforcement of Section 5.6 as written does not, in fact, render "superfluous" any other provisions in the agreement. *Id*. at 14-15, 26 & n.15.

Amgen asserts that "if Cipla's interpretation of Section 5.6 were accepted, then Teva's At Risk Launch – on which there has *not* been a Final Court Decision of non-infringement – *would* effectively accelerate Cipla's Entry Date." D.I. 194 at 4 (emphasis in original). Amgen is wrong: Cipla's rights under the second sentence of Section 5.6 were triggered, not by Teva's mere "At Risk Launch," but by the final judgment in the '853 Action rendering Teva "not found to have infringed" the '405 Patent. D.I. 186 at 16. With its preamble, "Notwithstanding anything to the contrary in this Settlement Agreement," the second sentence of Section 5.6 bars Amgen from seeking any relief against Cipla for "at risk sales, offers for sale, distribution, or importation of Defendants' Product." *Id*. Further, and consistently with § 5.4, Section 5.6[2] does not use the defined term "Final Court Decision," but encompasses findings contained in a district court judgment.

Equally unavailing is Amgen's argument that the Amgen-Cipla Agreement purportedly "ensures that Cipla is on *the same footing* as other third parties who launch at risk." D.I. 194 at 5 (emphasis added). The record shows that the Amgen-Cipla Agreement contains terms that have no counterparts in at least some other settlement agreements Amgen has put before the Court. At

the hearing held April 2, 2019 (D.I. 181, 182), Amgen proffered two previously unproduced settlement agreements that Amgen entered into regarding cinacalcet hydrochloride with generic pharmaceutical companies [REDACTED]. *See* Defendant's Exhibit #4 (AM10788-0000001528-1555) and Defendants' Exhibit #5 (AM10788-0000001556-1583)). [REDACTED]. Amgen's suggestion that there supposedly exists a "structured system of parity among third-party generic manufacturers" (D.I. 195 at 5) is unsupported and contrary to the record evidence in this case.

Section 5.4 of the Amgen-Cipla Agreement grants Cipla pre-commercialization rights [REDACTED]. Consistently with the rights granted in the second sentence of Section 5.6, Cipla's pre-commercialization rights were triggered by "a decision of the U.S. District Court . . . of non-infringement, invalidity and/or unenforceability with respect to then-asserted claims of the '405 patent against a Third Party. D.I. 73-1 § 5.4. Sections 5.4 and 5.6 of the Amgen-Cipla Agreement together granted Cipla both pre-commercialization and related selling rights. The former were triggered by the final judgment in the '853 Action; the latter were triggered by the combination of the '853 Action final judgment and Teva's At-Risk Launch. Amgen's assertion that Cipla purportedly did not "intend" to bargain for the rights it was granted in the Amgen-Cipla Agreement is insupportable. It is Amgen, not Cipla, which seeks to escape the clear and unambiguous terms of the Amgen-Cipla Agreement.

**B. Teva's Continuing Indirect Sales Are an Independent Bar to Relief**

Citing a 144-year old pre-*Erie* decision (D.I. 194 at 7), Amgen asserts for the first time that the term "selling" purportedly excludes the selling activity that the Court described and discussed on pages 20-24 of its Memorandum Opinion. Amgen's argument is without merit. Even

if, as Amgen asserts, "selling" implies transferring title to goods, nothing in the word "selling" excludes the types of transactions that the Court described, in which Teva apparently engaged one or more third-parties to make sales on its behalf, and which Teva even characterized as "indirect sales." The Court rightly concluded (D.I. 186 at 22-24) that Amgen failed to make any clear showing that Teva had, in fact, ceased "selling" Cinacalcet Products in view of the record evidence.

### C. Amgen and Teva Have Likely Engaged in Patent Misuse

The Court has noted: "There are features of the Amgen-Teva Agreement that give rise to patent misuse concerns." D.I. 186 at 35 n.25. As Cipla has previously briefed to the Court (D.I. 163 at 17), by acting in concert to try and expand the scope of the '405 Patent beyond what the '853 Action final judgment held was its scope, including by providing Teva with huge financial inducements to flip-flop on whether the Teva Products embodied the claimed invention of the '405 Patent (*see* D.I. 186 at 35 n.25), Amgen and Teva violated 15 U.S.C. § 1 in substantially the same manner as did the defendants in *United States v. Singer Manufacturing Co.*, 374 U.S. 174, 192-97 (1963), *cited and quoted with approval in FTC v. Actavis, Inc*., 570 U.S. 136, 149 (2013). In *Singer*, a similar strategic flip-flop occurred; competitors acted in concert to "settle" litigation to support issuance of broader patent claims than might have issued in the absence of their collusion, and did so for the purpose of using the broader patent claims to exclude competition by third-party rivals (*id*.), just as Amgen and Teva unabashedly did here.

The admitted and undisputed conduct of Amgen and Teva is far more egregious than was the "settlement" held sufficient in *Singer* to violate 15 U.S.C. § 1; and such illegal conduct perforce constitutes patent misuse and bars enforcement of the '405 Patent unless and until the effects of Defendants' unlawful action is "purged." *U.S. Gypsum Co. v. Nat'l Gypsum Co.,* 352 U.S. 457, 465 (1957) (Harlan, J.). Defendants' misuse also resembles that which the Supreme

Court held unlawful in *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 400-02 (1948). There, as here, patent licenses purported to regulate the entire output of an industry and had the effect of maintaining artificially high prices and suppressing sales of products outside the scope of the licensed patents. The Court noted: "it would be sufficient to show that the defendants, constituting all former competitors in an entire industry, had acted in concert to restrain commerce in an entire industry under patent licenses in order to organize the industry and stabilize prices." 333 U.S. at 401. The Court further noted that its "conclusion follows despite the assumed legality of each separate patent license, for it is familiar doctrine that lawful acts may become unlawful when taken in concert." *Id*.

Amgen ironically has pointed to the existence of licenses it has entered with other putative generic rivals as somehow justifying its dealings with Teva. Under *U.S. Gypsum* and the precedents it cites, those other licenses are an aggravation, not an exculpation, and reinforce a conclusion that Amgen has acted in concert with Teva to restrict output and raise prices of SENISIPAR® and SENISIPAR®-equivalent products, to the detriment of Cipla and consumers of such products. Defendants' misuse warrants denial of any equitable relief to them. *Cf. Berlanbach v. Anderson and Thompson Ski Co*., 329 F.3d 782, 783-85 (9th Cir. 1964) (misuse resulted in consent decree being unenforceable); *Nat'l Lockwasher Co. v. George K. Garrett Co.*, 137 F.2d 255, 256 (3d Cir. 1943) (patent misuse found where licensee undertook not to manufacture products falling outside of licensed patent).

## II. AMGEN HAS FAILED TO SHOW INADEQUACY OF LEGAL REMEDIES

The Court has ruled that "Amgen has met its burden to show irreparable harm" (D.I. 186 at 31), but this ruling was based in part on a miscalculation. The Court referred to "the quantities of generic product Cipla appears to have sold and is willing and able to sell in the absence of a

preliminary injunction" (*id*. at 30 & n.20) and calculated it to be "at least $1 billion." *Id*. at 30 n.20. In fact, the "nine-figure sale" the Court referred to is only at least $100 million, a full order of magnitude smaller than the $1 billion the Court calculated. Further, during its most recent earnings call, Amgen made clear that its forecast SENSIPAR® revenues had built into them the reality of generic competition. *See* Exhibits 1 and 2 hereto. Amgen further reported on the transition to PARSABIV® (*id*.), a successor drug to SENSIPAR®. *See* D.I. 164 Exs. 4-5.

In *Amgen Inc. v. Azar*, No. 17-1006, 2018 WL 1990521 (D.D.C. Feb. 22, 2018), the court denied an injunction pending appeal of the dismissal of Amgen's suit against the FDA to block approval of generic equivalents to SENSIPAR®. The court considered and rejected "irreparable harm" arguments substantially identical to those that Amgen now puts forward. *See id*. at *2 ("on Amgen's own theory of harm, the public would be required to pay more for cinacalcet hydrochloride if the Court were to grant Amgen an emergency injunction.").

Cipla respectfully submits that, when viewed in light of (i) the actual magnitude of Cipla's challenged activity and (ii) Amgen's ability, over the New Year's weekend, to put a price tag on Teva's massive and ongoing indirect sales of Cinacalcet Products, the Court's denial of preliminary injunctive relief rests on even firmer ground than the Court articulated in its Memorandum Opinion.

## III. THE REQUESTED INJUNCTION WOULD CAUSE IRREPARABLE HARM TO CIPLA

This Court has repeatedly found that an injunction would cause Cipla irreparable harm and that Cipla's damages would not be recoverable from Amgen or from anyone else. D.I. 186 at 31-32. In its opinion, however, the Court found that the balance of equities "narrowly favors Amgen." D.I. 186 at 36. To the extent the "magnitude of the harm to Amgen" referenced in the

Court's opinion (D.I. 186 at 32) was informed by the mistaken belief that Cipla would have "at least $1 billion" effect on the market, Cipla requests that the Court reconsider its analysis.

## IV. THE PUBLIC INTEREST

In its opinion, the Court found that "the public interests favoring Amgen slightly exceed those favoring Cipla." D.I. 186 at 37. Cipla maintains, and the Court agreed, that there is a "strong interest in enforcing contractual rights." *Id*. at 36. The Court has agreed with Cipla that the Amgen-Cipla Agreement provides multiple independent grounds all for barring Amgen's claim. Additionally, the final judgment in the *Amneal* decision establishes that the '405 Patent does not encompass products having the formulation of the Teva Products, and that formulation is, as a matter of law, "public property" under federal patent law. *Mahn v. Harwood*, 112 U.S. 354, 361 (1884). A private party like Teva cannot contract away the public's right to practice subject matter that federal patent law places in the public domain. *Cf. Scott Paper Co. v. Marcalus Mfg. Co*., 326 U.S. 249, 256-57 (1945) (patent laws "do not contemplate that anyone by contract or any form of private arrangement may withhold from the public the use of an invention for which the public has paid by its grant of a monopoly and which has been appropriated to the use of all.").

The public was not consulted when Amgen and Teva, for their private gain, colluded amongst themselves to ask the *Amneal* court to reverse itself, to withdraw the formulation of the Teva Products from the public domain, and allow its authority to cloak a blatantly anticompetitive scheme with the purported imprimatur of a collusive judgment.

## V. A 14-DAY INJUNCTION IS WHOLLY UNWARRANTED

Amgen's motion, in the alternative, for a 14-day injunction should also be denied. Amgen asserts that its alternative motion purportedly is "stronger than the request in *Noven*."

D.I. 193 at 14. But in *Noven*, the Court had already granted a limited temporary restraining order against Mylan's launch, and the Court enjoined Mylan's launch for additional 8 days while Noven sought its expedited appeal. Here, not only has Cipla already launched, but there is no temporary restraining order in place. Amgen having failed to make any strong showing of likelihood of success on the merits, its motion for injunction pending appeal should be denied.

**CONCLUSION**

Amgen's expedited motion for an injunction pending appeal, or a 14-day injunction in the alternative, should be denied.

Dated: May 7, 2019

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300 (Telephone)
(302) 777-0301 (Facsimile)
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

Of Counsel:

James W. Dabney
Patrice P. Jean
Dina Hoffer
Deanne K. Cevasco
David E. Lansky
Lynn M. Russo
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6803
james.dabney@hugheshubbard.com
patrice.jean@hugheshubbard.com
dina.hoffer@hugheshubbard.com
deanne.cevasco@hugheshubbard.com
david.lansky@hugheshubbard.com
lynn.russo@hugheshubbard.com